UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CR-20 |
| | ) | |
| MARK HAZELWOOD, | ) | |
| SCOTT WOMBOLD, | ) | |
| JOHN FREEMAN, | ) | |
| VICKI BORDEN, | ) | (THAPAR / GUYTON) |
| JOHN SPIEWAK, | ) | |
| KATY BIBEE, | ) | |
| HEATHER JONES, and | ) | |
| KAREN MANN, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on December 16, 2016, for a motion hearing on Defendant Scott Wombold and Defendant Vicki Borden's Motion to Dismiss Counts 1 Through 10 on Grounds of Due Process [Doc. 82], filed on September 30, 2016, and Motion to Dismiss Counts 1-10 of the Superseding Indictment [Doc. 100], filed on October 12, 2016. All codefendants have joined in these motions. Assistant United States Attorneys F.M. Hamilton, III, and David P. Lewen appeared on behalf of the Government. Attorneys Russell Hardin, Jr., Anthony Douglas Drumheller, and Jennifer E. Brevorka represented Defendant Hazelwood. Attorneys Eli Richardson and Robert Platt represented Defendant Wombold.

1

Attorney Roger W. Dickson and Zachary Greene represented Defendant Freeman. Attorneys Joseph E. Costner and Sara Bean Smith appeared on behalf of Defendant Borden. Attorneys James P. Fleisher, Joseph Oehlers, and Michael Rieman represented Defendant Spiewak. Attorney Richard Lewis Tennent appeared for Defendant Bibee. Attorneys Benjamin J. Vernia and Cullen M. Wojcik represented Defendant Jones, and Attorney Jonathan D. Cooper appeared on behalf of Defendant Mann. The Defendants were excused from attending the motion hearing. The Court heard argument on the motions and took the issues under advisement.

For the reasons discussed herein, the undersigned finds that the Defendants' arguments fail both legally and factually. The Government's non-binding sentencing recommendations in the plea agreements of the seven named coconspirators are not stipulations of fact with regard to these coconspirators' relevant conduct in the conspiracy to commit mail and wire fraud. Thus, the Government's sentencing recommendations cannot be the basis for a due process violation or for inconsistent theories of prosecution. Accordingly, the Court **RECOMMENDS** that the Defendants' motions be denied.

## I. POSITIONS OF THE PARTIES

The Defendants are charged [Doc. 98] with conspiracy to commit mail and wire fraud (Count One) between February 1, 2008, and April 2013. The Defendants, who were employed by Pilot Travel Centers LLC ("Pilot"), are alleged to have participated in a scheme to defraud trucking companies out of diesel fuel discounts to which the trucking companies were entitled by agreement with Pilot. In addition to conspiring with each other, the Defendants are alleged to have conspired with seven other Pilot employees (the "coconspirators"), who are listed

2

but not charged in the Superseding Indictment: Arnie Ralenkotter, Jay Stinnett, Chris Andrews, Kevin Clark, Janet Welch, Holly Radford, and Lexie Holden.[1] These individuals were charged separately, have entered into plea agreements, and are cooperating with the Government. The Defendants contend that the plea agreements of these seven previously-charged coconspirators limit each coconspirator's liability under the conspiracy to the amount of loss and/or the number of victims with whom the coconspirator had personal involvement.

The Defendants argue that the instant charges[2] violate the due process of law because the conspiracy alleged in the Superseding Indictment is based on a theory of the conspiracy that is inconsistent with the Government's theory as to the seven previously-charged coconspirators, who are all charged with the same crime. The Defendants contend that the Government's theory underlying Counts One through Ten of the Superseding Indictment is that all of the charged Defendants participated with each other and with the seven named coconspirators in a single conspiracy to commit mail and wire fraud. The Defendants maintain, however, that this theory of the conspiracy is inconsistent with the Government's theory expressed in the plea agreements of the seven previously-charged coconspirators, which agreements state that these seven employees had limited roles in the conspiracy. The Defendants argue that this inconsistency between the theory behind the Superseding Indictment and the theory behind the plea agreements violates the due process of law and warrants the dismissal of the Superseding Indictment.

---

[1] Brian Mosher is also listed but not charged in the Superseding Indictment, but the Defendants do not raise a due process challenge with regard to him. [See Doc. 83, pp.4-5 & n.4]

[2] Although the Defendants raised this argument prior to the filing of the Superseding Indictment, they state [Doc. 100] that their factual and legal arguments are the same with regard to the Superseding Indictment.

The Government responds that the Defendants' motion should be denied because its exercise of prosecutorial discretion in reaching plea agreements with cooperating coconspirators, which include non-binding sentencing recommendations, does not violate due process. It argues that the informations, plea agreements, and plea colloquies for the seven previously-charged coconspirators reveal that the Government has charged them consistently with the charges against the Defendants in the Superseding Indictment. Second, the Government contends that differences among coconspirators in government-recommended sentencing calculations regarding amount of loss or number of victims cannot give rise to a due process violation, because neither actual monetary loss, nor the existence of an actual victim, is an element of the charged fraud offenses. Finally, the Government maintains that it may properly make sentencing recommendations related to quantity that vary between indicted and unindicted, cooperating conspirators.

## II. ANALYSIS

"No person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const., Amt. V. The Defendants argue that the institution of the instant Superseding Indictment deprives them of the due process of law because the theory of prosecution underpinning Counts One through Ten contradicts the theories of prosecution the Government espouses in the plea agreements of seven named coconspirators. Count One of the Superseding Indictment alleges that the Defendants and the seven coconspirators conspired to commit wire fraud and mail fraud by defrauding interstate trucking companies of rebates to which they were contractually entitled and thereby obtained money through materially false and fraudulent

4

pretenses through use of wire transmission and deliveries by mail or commercial interstate carrier. In contrast, in the plea agreements for the seven coconspirators, the Government agreed to recommend at sentencing that each coconspirator's liability be limited to those fraudulent rebate reductions and/or to those victim trucking companies for which the coconspirator personally took action. The Defendants contend that the Government's theories of limited liability for the named coconspirators in the plea agreements conflict with the allegations in the Superseding Indictment that allege the coconspirators agreed with the Defendants and each other to pursue the broad goals of the conspiracy and to participate in conduct transcending their own personal acts. The Defendants argue that this inconsistency between the prosecution's theory in the Superseding Indictment and its theories in the coconspirator plea agreements is cause to dismiss the Superseding Indictment, particularly because the Government has used the favorable terms in the plea agreements to induce the coconspirators to cooperate to the Defendants' detriment.

For the reasons discussed below, the Court holds that an inconsistency between a defendant's charges in an indictment and the government's sentencing recommendations with regard to a coconspirator cannot constitute a violation of due process. The Court also finds that the Government has not espoused inconsistent theories of prosecution in the instant case.

**A.** Due Process

The Court turns first to the question of whether an inconsistency[3] between sentencing recommendations for unindicted and cooperating coconspirators and the charges

---

[3] In the instant case, the parties agree that the cooperating coconspirators are charged in separate Informations with the same conspiracy as that alleged in the Superseding Indictment. In other words, the charges against the cooperating coconspirators and the Defendants are the same. The

5

against other indicted members of a conspiracy constitutes a violation of due process. Due process requires "that the government prosecute fairly in a search for truth[.]" Smith v. Groose, 205 F.3d 1045, 1053 (8th Cir. 2000). Our Supreme Court has elaborated on the unique role the prosecutor plays in insuring the fairness of a criminal prosecution:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88 (1935). In light of this unique role, several appellate courts have held that a prosecutor's use of inconsistent theories of prosecution to convict two or more defendants for the same offense arising out of the same event can violate due process. Smith, 205 F.3d at 1049-1052; Thompson v. Calderon, 120 F.3d 1045, 1058-59 (9th Cir. 1997) (en banc) (plurality), vacated on other gnds 523 U.S. 538 (1998); Drake v. Kemp, 762 F.2d 1449, 1479 (11th Cir. 1985) (Clark, J., specially concurring). But see Bradshaw v. Strumpf, 545 U.S. 175, 190 (2005) (Thomas, J., concurring) (observing that the Supreme Court "has never hinted, much less

---

Defendants argue that the Government's sentencing recommendations, which are set out in the coconspirators' plea agreements, necessarily reveal a theory of prosecution with regard to the coconspirators that is inconsistent with the theory of prosecution expressed in the charges in Counts One through Ten of the Superseding Indictment. In this section, the Court examines whether an inconsistency, if one exists, between sentencing recommendations and a separate indictment violates due process. The Court will analyze whether inconsistent prosecutorial theories actually exist in this case in section B. below.

6

held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories"); Koehler v. Wetzel, No. 3:12–CV–00291, 2015 WL 2344932, *30 (M.D. Penn. May 14, 2015) (observing that the Supreme Court has not held that inconsistent prosecutorial theories constitute a due process violation). When the prosecutor's arguments against each of the defendants is inconsistent factually and when those inconsistent facts make up "the core of the prosecutor's cases against defendants for the same crime[,]" then the prosecution is fundamentally unfair. Smith, 205 F.3d at 1052.

"Whether the use of inconsistent theories of prosecution amounts to a denial of Due Process has not been settled[]" in this Circuit. United States v. Gravley, 587 F. App'x 899, 913 (6th Cir. 2014). In Coley v. Bagley, the Court of Appeals for the Sixth Circuit addressed the issue of whether a prosecutor's use of inconsistent theories as to which of two defendants was the shooter constituted prosecutorial misconduct[4] that infused the trial with unfairness to the extent that it caused a violation of due process. 706 F.3d 741, 753 (6th Cir. 2013). Defendant Coley argued that the prosecutor "argued in Green's trial that Green was the shooter, but argued in Coley's trial that Coley was the shooter[.]" The court held that, assuming that the defendant's summary of the arguments was correct and "assuming for the sake of argument that such inconsistent arguments violate due process," the defendant's claim still failed because classifying the defendant as the shooter or as an aider and abettor made no difference as to his guilt. Id. at 755-56.

Five months later, in Strumpf v. Robinson, our appellate court, sitting *en banc*, discerned no due process violation from a prosecutor's argument at a sentencing hearing that the

---

[4] In the instant case, the Defendants state that they are not alleging any misconduct on the part of the Government.

7

judge could infer that the defendant was the trigger man, despite the prosecutor's prior argument at the separate trial of a codefendant that the codefendant was the trigger man. 722 F.3d 739, 742 (6th Cir. 2013) (*en banc*). The court held that "[n]othing misleading or deceitful" occurred in the case: The prosecutor did not "present a different and incomplete set of facts in support of different theories of culpability for the same crime[,]" "offer different (and contradictory) testimony from the same witness . . . without acknowledging the contradiction[,]" or "omit evidence of [either codefendant's] guilt or innocence from its presentation." Id. at 749. Instead, the prosecution presented all of the available evidence at both defendants' proceedings and left it for the fact finder to decide. Id. Counsel for both codefendants were able to point out the inconsistencies to the fact finders. Id. at 750. The appellate court held that the prosecution's presentation of inconsistent *arguments* did not violate due process. Id. at 750-51.

In Gravley, our appellate court again "assume[d] without deciding that the use of inconsistent theories amounts to a denial of Due Process." 587 F. App'x at 913 n.8. Gravley argued that the government espoused inconsistent theories with regard to the murder of his and Milburne's cellmate by entering into a plea agreement with Milburne for a charge of second degree murder of the cellmate, while charging Gravley with the premeditated murder of the same man. Id. at 913. The appellate court determined that there was no core inconsistency or inherent *factual* contradiction between Milburne's plea agreement and Gravley's charges, because Milburne's plea agreement did not state that he acted alone. Id. Moreover, the appellate court agreed with the trial court that when the government drops charges in a plea agreement, "'it is not admitting that those "dropped" charges were baseless.'" Id. Thus, the court held that Gravley had not been denied due process. Id.

8

Finally, in United States v. Collins, our appellate court quoted the holding of the Eighth Circuit in Smith that "'inconsistent prosecutorial theories can, in certain circumstances, violate due process rights[.]'" 799 F.3d 554, 581 (6th Cir. 2015). However, the court held that the government's use of the same pseudoephedrine purchase logs to convict two different groups of defendants in separate trials of participating in rival methamphetamine conspiracies did not constitute the use of inconsistent theories of prosecution, because the pseudoephedrine purchase logs could yield enough pseudoephedrine to prove two separate conspiracies. Id. at 581-82. In other words, the core facts produced at both trials were not inconsistent.

In all four of these cases, the Court of Appeals for the Sixth Circuit emphasized that if inconsistent prosecutorial theories could ever amount to a violation of due process, they could only do so if the prosecutor relied upon inconsistent *facts* to convict defendants of the same crime in separate proceedings (whether by trial or guilty plea), if the trier of fact had no opportunity to know of both theories of the inconsistent facts, and the facts were ones that were material to the defendant's conviction.[5] In the instant case, as discussed in detail in the next section, the Defendants argue that the facts alleged in the Superseding Indictment conflict with the Government's sentencing recommendations in the cooperating coconspirators' plea agreements. The Government's sentencing recommendations are not facts, much less core facts necessary to convict the coconspirators of the conspiracies alleged in their Informations. The Defendants point to no case in which the prosecutor's sentencing recommendation in a plea agreement was held to

---

[5] In Strumf, the court examined whether an inconsistency in the prosecutor's argument at the sentencing hearing for the imposition of an aggravating circumstance (that Strumf was the shooter) in support of the imposition of the death penalty violated due process. 722 F.3d at 743-48. Although the alleged inconsistency in Strumf occurred at sentencing, it was still with regard to a sentencing "fact," Id. at 749, rather than a sentencing recommendation.

9

be an inconsistent theory conflicting with a coconspirator's charged offense, despite the numerous cases in which the government recommends a coconspirator in a drug conspiracy be responsible for a certain quantity of drugs that is less than the quantity charged in the drug conspiracy. Instead, as the Government points out, the Court of Appeals for the Sixth Circuit has expressly approved the Government's ability to recommend that codefendants convicted in the same conspiracy be sentenced based upon different amounts of loss. United States v. Coker, 514 F.3d 562, 569 (6th Cir. 2008) (holding that "the government's decision to stipulate to different loss amount with Walsh than it argued for at Coker's sentencing hearing was not only not prosecutorial *misconduct*, but was legitimate and acceptable prosecutorial conduct").

The other Circuits cited by the Defendants also found a due process violation for inconsistent prosecutorial theories when the inconsistency was with regard to material facts. Smith, 205 F.3d at 1052; Thompson, 120 F.3d at 1056 (observing that in the two trials, the prosecutor presented and argued inconsistent "critical facts" with regard to which of the two defendants had a motive and was present at the time of the crimes); Drake, 762 F.2d at 1479 (finding that prosecutor attacked Campbell's testimony that Drake was the murderer at Campbell's trial and argued that Campbell committed the murder alone, then presented Campbell as the main witness to convict Drake of murder at Drake's trial). The instant Defendants rely heavily on the Eighth Circuit's decision in Smith. In that case, a cooperating codefendant gave conflicting statements with regard to whether Defendant Smith was present burglarizing the house at the time of the homeowners' murders and as to which other codefendant perpetrated the murders. Smith, 205 F.3d at 1047-48. The prosecutor used the cooperator's second statement to convict Defendant Smith of felony murder for the actions of Bowman; and, in a separate trial, used the cooperator's

10

first statement to convict Cunningham of the murders of the same victims. Id. at 1048. The appellate court held that the prosecutor's use of factually inconsistent theories to convict Smith and Cunningham violated due process: "We do not hold that prosecutors must present precisely the same evidence and theories in trials for different defendants. Rather, we hold only that the use of inherently *factually* contradictory theories violates the principles of due process." Id. at 1052 (emphasis added). Moreover, "[t]o violate due process, an inconsistency must exist at the core of the prosecutor's cases against the defendants for the same crimes." Id. The undersigned finds that like in Coley, Strumpf v. Robinson, Gravley, and Collins, the court in Smith held that a core or material factual inconsistency is necessary for a due process violation. Thus, the Court finds that the cited case law from the Eighth, Ninth, and Eleventh Circuits does not support the Defendants' contentions that the instant Superseding Indictment should be dismissed.

The Defendants argue that the sentencing limitations recommended by the Government with regard to the coconspirators go to the core of the instant charges because the Sentencing Guidelines require that each coconspirator be held responsible for all relevant conduct. The Court disagrees that the Sentencing Guidelines regarding relevant conduct convert the Government's sentencing recommendations into core facts. As argued by the Government, differences in its loss recommendations with regard to members of the same conspiracy cannot give rise to a due process violation because neither monetary loss, nor the existence of an actually harmed victim is an element of the charged fraud offenses. To convict a defendant of mail or wire fraud, the government must prove (1) that "'the defendant devised or willfully participated in a scheme to defraud[,]'" (2) that the defendant used an interstate wire communication or the mail to further the scheme, and (3) that the defendant "'intended to deprive a victim of money or

11

property.'"  United States v. Rogers, 769 F.3d 372, 377 (6th Cir. 2014) (quoting United States v. Faulkenberry, 614 F.3d 573 581 (6th Cir. 2010)); see United States v. Kennedy, 714 F.3d 951, 958 (6th Cir. 2013) (observing that the elements of mail fraud and wire fraud are the same, except for the use of the mail vs. a wire communication).  Actual loss by the intended victim is not an element of mail or wire fraud.  United States v. Warshak, 631 F.3d 266, 313 (6th Cir. 2010) (mail fraud); United States v. Haque, 315 F. App'x 510, 526 (6th Cir. 2009) (wire fraud).  The elements of conspiracy to commit mail or wire fraud are that (1) two or more individuals conspired to commit mail or wire fraud and (2) the defendant knowingly and voluntarily joined the conspiracy.  Rogers, 769 F.3d at 379-80.  Thus, in the instant case the Government does not have to prove actual loss with regard to either the Defendants or the cooperating coconspirators.   If actual loss is not an element of the charged offenses, then even assuming that the Government's sentencing recommendations for the coconspirators is inconsistent with the charges in the Superseding Indictment, that inconsistency would not violate due process because it does not go to a material fact. See Bradshaw v. Strumpf, 545 U.S. at 184-86 (holding that inconsistency in the prosecutor's argument with regard to which defendant was the triggerman was not a basis for vacating Strumpf's conviction because "the precise identity of the triggerman was immaterial to Strumpf's conviction for aggravated murder").  In the words of the Eighth Circuit in Smith, the amount of loss or number of victims are not facts that are at "the core of the prosecutor's cases against defendant[.]"  205 F.3d at 1052.

Because the inconsistency alleged in the instant case does not go to a core fact, the Court finds that it cannot constitute a violation of due process.

12

**B.** Inconsistent Theories

The Defendants argue that the Government's sentencing recommendations in the coconspirators' plea agreements reveal a theory of prosecution with regard to the coconspirators that is inconsistent with the Government's theory of prosecution underpinning the Superseding Indictment. They argue that § 1B1.3(a)(1)(B)[6] of the United States Sentencing Guidelines requires that a defendant's guideline range be determined based upon all relevant conduct. The Defendants contend that because the Government recommends in the coconspirators' plea agreements that their guideline range be based upon the losses and/or number of victims that they each personally caused or defrauded, rather than the losses/victims of the entire conspiracy (i.e., all relevant conduct under the Sentencing Guidelines), then the Government must necessarily espouse a theory

---

[6] Section 1B1.3(a)(1) provides that a defendant's base offense level for the purpose of calculating his or her guideline range shall be determined based upon

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
> > (i) within the scope of the jointly undertaken criminal activity,
> >
> > (ii) in furtherance of that criminal activity, and
> >
> > (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

of limited liability with regard to the coconspirators. The Defendants maintain that this prosecutorial theory of limited liability with regard to the coconspirators who are named but not charged in the Superseding Indictment is inconsistent with the allegations with regard to the coconspirators' conduct in the Superseding Indictment. The Government responds that the informations, plea agreements, and plea colloquies of the coconspirators reveal that it is prosecuting the coconspirators consistently with the charges in the Superseding Indictment. The Court finds that the facts and relevant law support the Government's position.

First, the Court finds that the charges in the coconspirators' informations, the language in the plea agreements between the Government and the coconspirators, and the admonitions to the coconspirators at their change of plea hearings reveal no inconsistency between the Government's theories of prosecution of the coconspirators and of the Defendants. First, the parties agree that the coconspirators' informations and the charges in the Superseding Indictment charge the Defendants and the coconspirators with the same overarching conspiracy to defraud the victim trucking companies. The plea agreements of the cooperating coconspirators bear this out.[7] Second, although each of the coconspirator's plea agreements contains an agreement by the Government that *for sentencing purposes*, the amount of loss and/or the number of victims for which the Government will seek to hold coconspirator responsible is limited to the fraudulent rebate reductions personally approved or the customers for whom the coconspirator personally approved a fraudulent rebate reduction, each plea agreement also states that the coconspirator

---

[7] See United States v. Christopher W. Andrews, 3:13-CR-173, Doc. 4; United States v. Kevin Clark, 3:13-CR-70, Doc. 4; United States v. Lexie Holden, 3:13-CR-175, Doc. 4; United States v. Holly Radford, 3:13-CR-69, Doc. 3; United States v. Arnold Ralenkotter, 3:13-CR-63, Doc. 1; United States v. James S. Stinnett, 3:13-CR-68, Doc. 3; United States v. Janet Welch, 3:13-CR-78, Doc. 4.

14

understands that the Court's sentencing determination will be based upon the entire scope of the coconspirator's criminal conduct, among other factors.[8] Moreover, each coconspirator's plea agreement provides that the Government's sentencing recommendations do not limit the amount of restitution owed by the coconspirator and that the Court may impose joint and several liability for any restitution it orders.[9] Third, the plea colloquies at the coconspirators' change of plea hearings confirm that all parties know that the Government's sentencing recommendations are not binding on the Court.[10]

All of the facts listed in the preceding paragraph reveal that the Government is not espousing different theories of *prosecution* for the Defendants and the coconspirators. Instead, the Court discerns the Government's theory of prosecution to be that both the coconspirators and the Defendants participated in the conspiracy to commit mail and wire fraud. However, in

---

[8] See United States v. Christopher W. Andrews, 3:13-CR-173, Doc. 13, ¶¶3(n)-(o) & 5(c); United States v. Kevin Clark, 3:13-CR-70, Doc. 16, ¶¶3(l)-(m) & 5(c); United States v. Lexie Holden, 3:13-CR-175, Doc. 7, ¶¶3(k)-(l) & 5(c); United States v. Holly Radford, 3:13-CR-69, Doc. 7, ¶¶3(n)-(o) & 5(c); United States v. Arnold Ralenkotter, 3:13-CR-63, Doc. 13, ¶¶3(r)-(s) & 5(c); United States v. James S. Stinnett, 3:13-CR-68, Doc. 12, ¶¶3(r)-(s) & 5(c); United States v. Janet Welch, 3:13-CR-78, Doc. 12, ¶¶3(m)-(n) & 5(c).

[9] See United States v. Christopher W. Andrews, 3:13-CR-173, Doc. 13, ¶11; United States v. Kevin Clark, 3:13-CR-70, Doc. 16, ¶11; United States v. Lexie Holden, 3:13-CR-175, Doc. 7, ¶11; United States v. Holly Radford, 3:13-CR-69, Doc. 7, ¶11; United States v. Arnold Ralenkotter, 3:13-CR-63, Doc. 13, ¶11; United States v. James S. Stinnett, 3:13-CR-68, Doc. 12, ¶11; United States v. Janet Welch, 3:13-CR-78, Doc. 12, ¶11.

[10] United States v. Christopher W. Andrews, 3:13-CR-173, Doc. 14, Trans. of Change of Plea Hg, pp.17-19; United States v. Kevin Clark, 3:13-CR-70, Doc. 35, Trans. of Change of Plea Hg, pp.19-21 & 50-52; United States v. Lexie Holden, 3:13-CR-175, Doc. 17, Trans. of Change of Plea Hg, pp.17 & 20-21; United States v. Holly Radford, 3:13-CR-69, Doc. 30, Trans. of Change of Plea Hg, pp.16 & 40-42; United States v. Arnold Ralenkotter, 3:13-CR-63, Doc. 14, Trans. of Change of Plea Hg, pp.17-23; United States v. James S. Stinnett, 3:13-CR-68, Doc. 31, Trans. of Change of Plea Hg, pp.17-18 & 49-50; United States v. Janet Welch, 3:13-CR-78, Doc. 30, Trans. of Change of Plea Hg, pp.16 & 27-28.

15

Case 3:16-cr-00020-CLC-HBG Document 141 Filed 02/24/17 Page 15 of 19 PageID #: 1456

consideration for the coconspirators' guilty pleas and their cooperation in a complex fraud case, the Government will make certain nonbinding recommendations with regard to the losses and victims at the coconspirators' *sentencing hearings*. These sentencing recommendations are for the purpose of arriving at the coconspirators' sentences, not for the purpose of prosecuting the coconspirators, who have already entered guilty pleas to the conspiracy.

The Defendants argue that the Government has exceeded the scope of its plea bargaining discretion by agreeing not to seek application of the mandatory relevant conduct provisions of the Sentencing Guidelines to the coconspirators. However, the Government points out that the Sentencing Guidelines do not bar its non-binding sentencing recommendations in the coconspirators' plea agreements. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Government may recommend a particular sentence or guideline range or may recommend that a particular Sentencing Guideline or policy statement does not apply. The instant coconspirators have entered into plea agreements under Rule 11(c)(1)(B). Thus, the Government may properly make sentencing recommendations that do not conform to a provision of or policy statement in the Sentencing Guidelines. These sentencing recommendations are not binding on the Court.

The Defendants also argue that the policy reflected in the commentary to § 6B1.2 argues against the Government entering into plea agreements that restrict the relevant conduct to be considered with regard to convictions. However, as the Government points out, the language to which the Defendants refer is applicable to Rule 11(c)(1)(A) plea agreements. "In the case of a plea agreement that includes a nonbinding recommendation (Rule 11(c)(1)(B)), the court may accept the recommendation if the court is satisfied either that: (1) the recommended sentence is within the applicable guideline range; or (2)(A) the recommended sentence is outside the

16

applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form." USSG § 6B1.2(b). With regard to Rule 11(c)(1)B) plea agreements, like those of the coconspirators in this case, the commentary states that "the court should accept a recommended sentence or a plea agreement requiring imposition of a specific sentence only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence is outside the applicable guideline range for justifiable reasons and those reasons are set forth with specificity in the statement of reasons form." Thus, the Government's sentencing recommendations do not conflict with the policy behind § 6.1B2. Moreover and more importantly, the Defendants' policy arguments do not alter the undersigned's conclusion that the Government's sentencing recommendations with regard to the cooperating coconspirators are not a theory of prosecution.

Finally, the Government's ability to enter into plea agreements to gain cooperation in complex cases is well-established. See Coker, 514 F.3d at 569 (holding that "the government has no obligation to stipulate to identical [monetary] loss amounts with co-conspirators"). The restriction on the Government's discretion advocated by the Defendants (that all coconspirators must be sentenced for the losses incurred by the entire conspiracy) would render the Government's ability to enter into plea agreements in conspiracy cases meaningless, because the Government would have nothing to offer to cooperating coconspirators. See United States v. Christian, 342 F.3d 744, 748 (7th Cir. 2003) (holding that "the government would be left with nothing of value to offer cooperating defendants," if precluded from offering to reduce the charges or drop counts as to cooperating codefendants); see also United States v. Delgado, 903 F.2d 1495, 1499 (11th Cir. 1990) (observing that "by holding that the government admits innocence when it dismisses charges

17

under a plea agreement, we would effectively put an end to the use of plea agreements to obtain the assistance of defendants as witnesses against alleged co-conspirators"), cert. denied 498 U.S. 1028 (1991). The Government's ability to recommend that coconspirators receive a reduced sentence in exchange for their agreement to enter a guilty plea and to cooperate is necessary for plea bargaining to exist. Even the instant Defendants do not suggest that plea bargaining should be altogether eliminated in complex conspiracy cases. [See Doc. 115, Defendants' Reply Brief, p.20 (stating that "Wombold realizes the vital role that plea bargaining plays in the American system of justice, and he fully understands and supports the policy objectives supporting the inclusion of *appropriate* plea concessions in plea agreements") (emphasis in original)]

Accordingly, the Court finds that the Defendants have failed to show that the Government espouses inconsistent theories of prosecution with regard to the cooperating coconspirators and the Defendants.

### III. CONCLUSION

The Court finds that the Defendants have failed to establish a violation of due process, both as a matter of law and with regard to the specific facts and theories in this case. Accordingly, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss Counts 1 Through 10 on Grounds of Due Process [**Doc. 82**] and the Motion to Dismiss Counts 1-10 of the Superseding Indictment [**Doc. 100**] be denied.[11]

Respectfully submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[11] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).