UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION
KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Criminal No. 16-20-ART-HBG |
| v. | ) |
| MARK HAZELWOOD, et al., | ) **ORDER** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

The government charges the defendants with, among other things, wire fraud and conspiracy to commit mail and wire fraud. R. 97 ¶¶ 1–31. The defendants move to dismiss those charges on due-process grounds, arguing that "they are based on a [prosecution] theory inconsistent with [the] prosecutors' theory as to different defendants charged with the same crime." R. 82 at 1. Because they are not, the Court will adopt Magistrate Judge Guyton's recommendation that the motion be denied.

**I.  Background**

The defendants worked sales at Pilot, which operates hundreds of truck stops across the country. Those hundreds of truck stops sell billions of gallons of fuel a year. R. 97 ¶ 1. A truck stop would be of little use if it did not. According to the indictment,[1] the defendants tried to leverage trucking companies' constant need for fuel into more customers for Pilot, conspiring "to increase Pilot's market share," "to maximize Pilot's profit," "to maximize"

---

[1] Although the Court uses "the indictment" for shorthand, all citations are to the Superseding Indictment.

their own commissions, and to "achieve recognition among each other. *Id*. ¶ 25. As stated, there is nothing wrong with those goals. But, allegedly, there is something wrong with how the defendants went about achieving them: by "identifying trucking companies" that were "unlikely to detect" false promises, "inducing" them to buy their fuel from Pilot through the promise of discounts, withholding portions of those discounts, and then covering their tracks with false explanations. *Id*. ¶ 26.

The defendants apparently had numerous co-conspirators in Pilot's sales department; the indictment lists seven in specific. *Id*. ¶ 12.[2] These seven have also been indicted—although in separate cases—and have already pled guilty. Their plea agreements mirror the indictment in this case, detailing the discount scheme, the withholding, the false excuses, and so on. As an example, the plea agreement for Chris Andrews, a Pilot regional sales manager, states that he "conspired and agreed with other Pilot employees to commit" mail fraud by "approv[ing] the sending of fraudulently reduced rebate checks" and to commit wire fraud by assuring victim customers that they "were in fact receiving their agreed upon diesel price discount" when they in fact were not. *United States v. Andrews*, 3:13-CR-173, D.E. 13 ¶ 3(l) (E.D. Tenn.). Andrews took "numerous overt acts" to further the conspiracy, but the lawyers who negotiated the plea bargain decided not to kill too many trees; instead they highlighted two instances: one where Andrews had an underling explain to a customer via email that Pilot's failure to give the customer its full rebate was "inadvertent[]," and another where Andrews was required to attend a "break-out session" with a Pilot sales director who taught Andrews the tricks of the fraud trade, so to speak. *Id*. ¶ 3(m).

---

[2] It actually lists eight, but the defendants do not care about one of them. R. 83 at 4 n.4. So for present purposes, the Court does not either.

Although these seven other defendants have "acknowledge[d] that the[ir] sentencing determination will be based upon the entire scope of the[ir] criminal conduct," *id.* ¶ 5(c), their pleas did include a carrot. Normally defendants are sentenced based on the "reasonably foreseeable" losses that they "knew" or "should have known" would result from the offense. U.S.S.G. § 2B1.1 cmt. n.3(A)(iv). When their offense is a conspiracy, their sentence will be based on the losses that resulted from the entire conspiracy, not just their contributions to it. *See id.* § 1B1.3(a)(1)(B) (defining "relevant conduct" as all the reasonably foreseeable acts of the co-conspirators); *United States v. Bandy*, 172 F.3d 49, at *2 (6th Cir. 1999) (table) ("Pursuant to USSG § 2B1.1, the amount of loss is determined in accordance with USSG § 1B1.3, the relevant conduct provision[.]"). But for the seven bargainers, "the United States will seek to hold [them] responsible" for a more "limited" sphere—specifically, those losses in which they personally had a hand, not "every [loss] caused by the entire conspiracy." *Andrews*, 3:13-CR-173, D.E. 13 ¶ 3(n). Likewise, the government will seek to hold them responsible for only the particular victims whom they personally duped. *Id.* ¶ 3(o).

Some would say those defendants struck a pretty good deal, all things considered. The defendants here say the deal creates a due-process violation—not for the plea bargainers, but for the defendants who have not pled. The Sixth Circuit has assumed, without deciding, "that the use of inconsistent theories of prosecution amounts to a denial of Due Process." *United States v. Gravley*, 587 F. App'x 899, 913 n.8 (6th Cir. 2014). *But see id.* ("Whether the use of inconsistent theories of prosecution amounts to a denial of Due Process has not been settled."). The defendants here argue that the government is guilty of inconsistency by leniency. The argument runs like this: the "linchpin" of the government's conspiracy theory "is that all [the instant] defendants participated with others, including seven [who have pled],

3

in a single conspiracy"; yet in its plea agreements with the seven, the government appears to concedes that their "role in the conspiracy was quite limited"; and it is "entirely inconsistent" to say (in an indictment) that a group of Pilot employees joined in a conspiracy while saying (in plea agreements) that members of that group joined in a more limited way. R. 82 at 1–2. The defendants in this case therefore moved to dismiss the parts of the indictment accusing them of wire fraud and conspiracy to commit wire fraud. *Id.*; R. 100.

Magistrate Judge Guyton recommends denying their motion. R. 141. He gives two grounds: one categorical, the other more case-specific. First, "an inconsistency between a defendant's charges in an indictment and the government's sentencing recommendations with regard to a coconspirator *cannot*," he concludes, "constitute a violation of due process." *Id.* at 5 (emphasis added). Second, he concludes that, at any rate, the government "*has not* espoused inconsistent theories of prosecution*" here. *Id.* (emphasis added). Both grounds are thoroughly supported and well-reasoned. The defendants object to both. R. 150.

**II.     Discussion**

The Court reviews *de novo* those portions of a magistrate judge's recommendation to which a defendant objects. Fed. R. Crim. P. 59(b)(3).

But the Court will not review more than it needs to. In their first two objections, the defendants debate the categorical ground, contending that an inconsistency between a plea agreement and an indictment *can* violate due process. R. 150 at 5. If the government *has not* pursued inconsistent theories in these specific cases, however, it has not violated due process, regardless of whether it could have done so. The Court will therefore just cut to the chase: Has the government pursued inconsistent theories of prosecution against the defendants here and the seven defendants who have pled?

4

It has not. As discussed, the government has charged the defendants in this case with bilking Pilot customers through the promise of discounts at those customers never enjoyed (or at least, never fully enjoyed). At the same time, the government has convinced Andrews, one of their seven alleged co-conspirators, to plead guilty to the *exact same kind of conduct*. *See Andrews*, 3:13-CR-173, D.E. 13 ¶¶ 3(a)-(m). And the other six pleas are just like his. *See United States v. Ralenkotter*, 3:13-CR-63, D.E. 13 ¶¶ 3(a)-(q) (E.D. Tenn.); *United States v. Stinnett*, 3:13-CR-68, D.E. 12 ¶¶ 3(a)-(q) (E.D. Tenn.); *United States v. Radford*, 3:13-CR-69, D.E. 7 ¶¶ 3(a)-(m) (E.D. Tenn.); *United States v. Clark*, 3:13-CR-70, D.E. 16 ¶¶ 3(a)-(k) (E.D. Tenn.); *United States v. Welch*, 3:13-CR-78, D.E. 12 ¶¶ 3(a)-(l); *United States v. Holden*, 3:13-CR-175, D.E. 7 ¶¶ 3(a)-(j) (E.D. Tenn.). Of course, each agreement contains a slightly different account of the facts; each conspirator has his own role to play. But they are all alike in this important way: They show that the government prosecuted Pilot employees for the same conspiracy in those cases that it is prosecuting Pilot employees for here.

It is true that the government discusses limiting the loss amount and victim population only in the seven other defendants' plea agreements, not the instant defendants' indictment. But that limit stems from a theory of punishment, not a theory of prosecution. To prosecute is "[t]o institute and pursue a criminal action against" someone. *Prosecute*, Black's Law Dictionary (10th ed.), Westlaw (database updated 2014). To institute and pursue a criminal action against someone for mail or wire fraud, the government must charge—then prove—that he "willfully participated in a scheme to defraud," used the mail or an interstate wire to carry out that scheme, and intentionally "deprive[d] a victim of money or property." *United States v. Rogers*, 769 F.3d 372, 376 (6th Cir. 2014) (quoting *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010)). Loss amounts and numbers of victims have nothing to

do with it, which explains why the government would not spend its time calculating these numbers in an indictment. To be sure, the government must calculate those numbers at *some* point. But that point comes after it proves its charges. Then it must recommend a sentence that accords with the Sentencing Guidelines, and one in particular: Guideline 2B1.1, under which a sentence must account for the loss amount and number of victims.

One might argue that a prosecutor's job does not stop until a defendant is behind bars, that "prosecution" thus extends through sentencing, and that theories of punishment are also theories of prosecution. An interesting semantic argument, but not one that needs addressing here. The courts that control this one have only gone so far as to hold—and many times they have merely assumed—that inconsistent prosecution theories imperil due process when the government uses them to *convict*. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful *conviction* as it is to use every legitimate means to bring about a just one.") (emphasis added); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 186–87 (2005) (finding no "prosecutorial inconsistencies," where the government accused two men of a shooting, since "the precise identity of the triggerman was immaterial to [the defendant's] *conviction* for aggravated murder" (emphasis added)); *United States v. Collins*, 799 F.3d 554, 582 (6th Cir. 2015) (finding no "inconsistent *criminal* theories" and no due-process violation (emphasis added)); *Coley v. Bagley*, 706 F.3d 741, 755 (6th Cir. 2013) (assuming for the sake of argument that "inconsistent theories of *culpability*" violate due process (emphasis added)). At most, then, the cases require the Court to keep an eye out for inconsistent theories about defendants' guilt, not their appropriate punishments.

Indeed, "the government has no obligation to stipulate to identical loss amounts with co-conspirators" at sentencing. *United States v. Coker*, 514 F.3d 562, 569 (6th Cir. 2008). After all, two conspirators can be equally culpable but still deserve different punishments. The alleged conspirators in this case, if it reaches sentencing, might well ask the government to show the same leniency as to their loss amounts as it showed to the seven plea bargainers. But if the Court accepted the argument they have advanced here, the government could not do so: According to them, it would be "entirely inconsistent"—and due-process violation— to convict someone for a conspiracy but then to punish him for only part of the conspiracy. R. 82 at 2. Lucky for them, the Court need not accept that argument. For present purposes, prosecution and punishment are distinct functions; the indictment serves the former, the plea agreements the latter. Thus, the indictment and plea agreements do not contradict each other. If anything, they talk past each other.

Moreover, even if the indictment and the pleas were both "prosecution" documents, they still do not contradict each other. There is nothing contradictory about saying that two people participated in a conspiracy but that one had a "quite limited" role, as the defendants put it. R. 82 at 2. Both people are guilty of the same *kind* of crime; only the degree changes. Courts rely on this distinction all the time, and the defendants do not argue that courts violate due process by applying the Sentencing Guidelines' role reductions or by complying with the rule that defendants are liable only for the "reasonably foreseeable consequence[s] of the conspiracy," not necessarily the entire conspiracy. *United States v. Anderson*, 333 F. App'x 17, 25 (6th Cir. 2009) (citing *United States v. Carver*, 470 F.3d 200, 246 (6th Cir. 2007)).

The defendants do argue that it is "inconsistent" to say in one document that someone committed a crime but to say in another that he committed a specific part of that crime.

R. 82 at 2. That is essentially what the government has said about the seven plea bargainers. But assuming that the second statement really contradicts—rather than clarifies—the first, this "inconsistency" does not violate due process. The rule against inconsistent theories is essentially a rule against bad faith. Due process prevents the government from saying, in one case, "the butler did it," then turning around and saying in another that it was the maid. Assuming only one of them did the deed, both statements cannot be true; the government would probably have to misrepresent the facts to prove both statements; and it would be bad faith on the government's part to "strike" such "foul [blows]" against the mansion staff. *Berger*, 295 U.S. at 88. Due process does not, however, prevent the government from saying "the butler did it *and* the maid did it" or "they conspired to do it, albeit to different degrees." The government would not have to misrepresent the facts; it would merely ask the jury to draw "different inferences" about the defendants from the facts. *Stumpf v. Robinson*, 722 F.3d 739, 749 (6th Cir. 2013) (en banc). And there is "[n]othing misleading or deceitful" about that. *Id*.

Indeed, it is unclear what the defendants think the deceit is here. Despite repeating, rather conclusorily, that the government's theories are "wholly inconsistent," R. 150 at 17, even they admit that the government prosecuted those seven other Pilot employees for their "role[s] in *the* conspiracy"—*i.e.*, the same conspiracy for which the government has charged the defendants here, R. 82 at 2 (emphasis added). In fact, the defendants "do *not* maintain that the [g]overnment [has] intentionally made a factual misrepresentation." R. 150 at 7 n.3 (emphasis added). The upshot of their argument, in the end, is that the government either "consciously or sub-consciously realized that it would be wrong to hold the seven [other employees] accountable for all relevant conduct" of the conspiracy, and that the government

8

should therefore have "re-evaluate[d] the soundness and justness of its sweeping conspiracy theory prior to drafting" the indictment for this case and presenting it to the grand jury. *Id*. But that is the government's choice. If the government chooses to bring an unsound case, it is the defense's job to point out the flaws. The Court's job is to uphold the Constitution. And the Constitution permits the government to argue that defendants participated in the same crime to different degrees.

**III. Conclusion**

Accordingly, it is **ORDERED** that the Court **ACCEPTS** Magistrate Judge Guyton's recommendation to deny the defendants' motions to dismiss, R. 141. For the reasons given here, those motions, R. 82, R. 100, are **DENIED**.

This the 25th day of May, 2017.

Signed By:
*Amul R. Thapar* AT
United States District Judge