IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:16-CR-20 |
| ) | JUDGES COLLIER / GUYTON |
| MARK HAZELWOOD, ) | |
| SCOTT WOMBOLD, ) | |
| HEATHER JONES, and ) | |
| KAREN MANN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE TESTIMONY OF GOVERNMENT'S DISCLOSED WITNESS DARREN SEAY**

**INTRODUCTION**

Defendant Scott Wombold, joined by co-movants Mark Hazelwood, Karen Mann, and Heather Jones (collectively, "Defendants"), moves this Court for an order excluding, pursuant to Federal Rule of Evidence 701, the proposed lay opinion testimony of Government witness Darren Seay.[1]

On March 29, 2017, the Government disclosed it may call Seay as a case-in-chief witness to offer lay opinion testimony based exclusively upon "particularized knowledge" Seay gained as an employee of Pilot Travel Centers LLC ("Pilot"). (*See* **Exhibit A** hereto.) The Government's disclosure explains that Seay's testimony "will not be offered as Rule 702 expert testimony." However, the Government avers that out of an abundance of caution it provided Seay's

---

[1] Defendants reserve their right to object at trial to Mr. Seay's testimony, if and to the extent that he is permitted to testify, on any ground other than Fed. R. Evid. 701.

1

qualifications and testimony summary pursuant to Rule 16(a)(1)(G). Presumably, the Government did so because it understood, correctly, that Seay's testimony looks like expert testimony rather than lay testimony. In any event, Seay's testimony has been offered only as lay testimony, and it is too late for the Government to change tack and offer it now as expert testimony. Because Seay's testimony can be offered only as lay opinion testimony, it is admissible, if at all, only under Rule 701.

Seay's proposed testimony should be excluded because it is not admissible under Federal Rule of Evidence 701. Seay's proposed testimony is, if anything, expert opinion testimony, not lay opinion testimony. Therefore, it cannot be admitted under Rule 701. Additionally, Seay's testimony is based on data and assumption for which he lacks personal knowledge.

A letter signed by Seay, attached hereto as **Exhibit B,** accompanied the Government's disclosure.[2] The letter provides a cursory overview of his "professional background at Pilot" and summarizes "the focus" of his proposed testimony: an explanation of the four summaries he prepared at the Government's behest and specifically for the Government's use at trial:

1. <u>Customer Discount Comparison Summaries</u>. These charts purportedly show, with respect to respect to selected particular Pilot customers, the difference between (a) the rebate amount a Pilot customer might have received during a specified time period using an assumed discount identified by the Government, and (b) the rebate amount the customer was allegedly paid during that same time period.[3]

---

[2] **Exhibits A and B** are collectively referred to as the "Government's disclosure."
[3] The Customer Discount Comparison Summaries are based in part on data found in the "Rebate Summary tab" of a "Power Pivot Manual Rebate Tool" and the "Invoice Summary tab" of a "Power Pivot Repricing Tool." As described in **Exhibit B**, the Power Pivot Manual Rebate Tool generates calculations based on information drawn from Pilot's Accounts Payable ("Lawson") and Accounts Receivables ("Ascend") databases, as well as data from the PC9PROD server and STORETRAN database, which provide the retail price per gallon of diesel fuel (by store and

2. <u>Customer Profit Summaries</u>. These charts purportedly summarize the net profits earned by Pilot for selected particular customers, over specified time periods, identified by the Government.

3. <u>Rebate Payment Request/Approval Summaries</u>. These charts purportedly depict details about rebate payment requests and approvals for selected particular customers, over specified time periods, identified by the Government.

4. <u>Commission-Related Summaries</u>. These summaries purportedly detail the relationship among specific members of the Pilot Direct Sales Team that are purportedly relevant to the amount of commissions earned by Defendants.

Based on the Government's disclosure, however, Seay's job responsibilities did not require him to regularly conduct customer-specific accounting, review rebate or discount payment logistics, or have any familiarity with the Direct Sales Team commission structure. His involvement with these matters had nothing to do with his personal duties or experience at Pilot. Rather, the Government asked Seay (via Pilot company counsel) to conduct an after-the-fact review of information relating to these matters *specifically for purposes of this prosecution*, even though these matters evidently were otherwise outside of his day-to-day employment responsibilities. Moreover, certain of Seay's findings rely on unverified information and assumptions supplied by the Government to Seay. In effect, Seay has no personal knowledge of

---

date) used to calculate the savings when a cost plus or cost minus discount is applied, and fuel transaction data from third-party provider PRS that is utilized by PriceFetch, Pilot's system that tracked the gallons by store purchased by each customer. Likewise, the Power Pivot Repricing Tool relied on data from the Ascend database and PriceFetch, as well as a Distribution SQL Server database. Notably, neither the provenance of the data contained in the various databases nor a chain of custody related to the data is provided to establish the reliability of the so-called "tools." Mr. Seay's report also does not describe the search terms or criteria he used to extract the data from these sources. Although the United States provided copies of the Lawson and Ascend databases, these complex systems cannot be accessed without specialized software which Defendants have not been given.

details that serve as the basis of his summaries, making his work product and derivative testimony that of, if anything, an expert, not a lay person. This means Seay's proposed testimony fails to meet Rule 701's requirements for lay opinion.

## ARGUMENT

A lay witness may offer opinion testimony under Federal Rule of Evidence 701 only when that testimony meets three conditions; it must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Seay's proposed testimony fails to meet the requirements of subsections (a) and (c) because it is based not on Seay's particularized, first-hand knowledge, but rather on an after-the-fact investigation that relies on his specialized knowledge, unverified data, and assumptions suggested by the government.

### A. Seay's Proposed Testimony Should Be Excluded Because It Is Not Based on His Particularized Knowledge

Seay's testimony is inadmissible under Rule 701 because it is not based on "particularized knowledge" he gained as a Pilot employee, as suggested by the Government's disclosure. Rather, the testimony necessarily relies on "specialized knowledge" or "technical" skill Seay otherwise possesses. Therefore, his proposed testimony is inadmissible under Rule 701(c). Arguably, the testimony could be admissible only under Rule 702 as expert testimony if the Government could satisfy that rule's heightened criteria. That possibility, however, is now foreclosed to the Government.

In 2000, Congress amended Federal Rule of Evidence 701 to include section (c), which requires that lay testimony "not [be] based on scientific, technical, or other specialized

4

knowledge within the scope of Rule 702," to "eliminate the risk that the reliability requirements set forth in Rule 702 [would] be evaded through the simple expedient of proffering an expert in lay witness clothing." *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519, 525 (6th Cir. 2004) (quoting Fed. R. Evid. 701, advisory committee's note (2000)). The advisory committee's notes for the 2000 Amendments clarify that testimony is lay testimony based on particularized knowledge, and not expert testimony based on "specialized knowledge," when it is learned through one's personal experience:

> For example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but *because of the particularized knowledge that the witness has by virtue of his or her position in the business*.

Fed. R. Evid. 701, advisory committee's note (2000) (emphasis added) (citation omitted).

Construing the advisory note, courts have permitted individuals who are not officers or owners to offer lay testimony based on particularized knowledge gained through their involvement in day-to-day business operations. *See Lativafter Liquidating Trust v. Clear Channel Commc'ns, Inc.*, 345 F. App'x 46, 51 (6th Cir. 2009) (finding that an investor and board member of a company was properly permitted to testify as a lay witness about the company's value and projected value); *United States v. Hill*, 643 F.3d 807, 841-42 (11th Cir. 2011) (concluding that the district court did not abuse its discretion when it permitted a bank employee to testify about whether the bank would have approved loans if it had known that loan applications were false); *United States v. Munoz-Franco*, 487 F.3d 25, 36 (1st Cir. 2007) (confirming that testimony of a savings and loan officer regarding accuracy of loan classifications was appropriate lay opinion testimony because of "his particular knowledge" about the loans in question).

5

On the other hand, when a weak relationship exists between the witness's testimony and his day-to-day business responsibilities, or when the subject matter is not known by the average lay person, courts are reluctant to find that purported lay testimony is based on particularized knowledge. *See United States v. White,* 492 F.3d 380, 403-04 (6th Cir. 2007) (finding that the district court abused its discretion by permitting employees to provide testimony under Rule 701 on a subject matter that exceeded the scope of their employment and related to a subject the average lay person would not know); *JGR, Inc.*, 370 F. 3d at 526 (concluding that the district court improperly admitted under Rule 701 the testimony of a lawyer and certified public account regarding a client's lost profits and loss of business because the witness lacked particularized knowledge); *DJIO, Inc., v. Hilton Hotels Corp.*, 351 F.3d 679, 686-87 (5th Cir. 2003) (concluding that the district court should not have admitted under Rule 701 a financial consultant's testimony regarding the company's lost profits despite being the primary contact at its lending facility).

The disconnect between Seay's duties at Pilot and the subject matter of the summaries in the Government's disclosure demonstrates that Seay's proposed testimony would not be based on particularized knowledge gained through his employment. Rather, clearly Seay's testimony is based on specialized knowledge and technical skills he has otherwise acquired, which requires the Government to demonstrate that the proposed testimony satisfies the requirements of Rule 702, not Rule 701. Seay has been a Pilot employee for 15 years. Except for a brief period immediately following the April 2013 raid when Seay temporarily reviewed the work of Pilot's audit team, apparently at no point during his 15-year tenure did his day-to-day business responsibilities require him to conduct the type of customer-specific analyses necessary to prepare the Customer Discount Comparison and Customer Profit summaries. By all appearances,

6
Case 3:16-cr-00020-CLC-HBG   Document 221   Filed 09/01/17   Page 6 of 15   PageID #: 5145

never during his 15 years did Seay review rebate or discount payment logistics, the kind of work required for preparing the Rebate Payment Request/Approval Summaries. Nor did Seay ever need to have any familiarity with the Direct Sales Team commission structure for his job, which is a skill required for preparing the Commission-Related Summaries.

In fact, during Seay's first ten years with Pilot he worked in the accounting department, and apparently his primary day-to-day responsibilities related to inventory analysis, fuel margin report and research, wholesale accounting, and fuel purchases. Since January 2012, Seay has been the Manager of Pilot's Business Intelligence and Decision Sciences team. In this role, he is primarily responsible for preparing data models and creating predictive and prescriptive science models to help accomplish the desired goals of business executives. None of these duties directly relate to Seay's proposed testimony.

Furthermore, cases where courts have permitted lay opinion testimony based on the "particularized knowledge" of a witness further highlight why Seay cannot properly give lay opinion testimony on the subjects outlined in the Government's disclosure. For example, in *United States v. Kerley*, the Sixth Circuit held that two lender representatives offered lay testimony when the officials testified how their respective institutions may have reacted to certain information. 784 F.3d 327, 339-40 (6th Cir. 2015). In that case, prosecutors charged two defendants with, among other things, conspiracy to commit wire fraud affecting a financial institution. *Id*. at 336. The trial court permitted a vice president of underwriting for SunTrust and a senior vice president of lending for Citizens Bank to opine as to whether their respective institutions would have underwritten mortgages if the banks had known about the defendants' alleged misconduct, despite the witnesses not having been involved in the transactions. *Id*. On appeal, the Sixth Circuit reasoned that these witnesses' testimony was properly allowed as lay

opinion. This is because the witnesses based the testimony on particularized knowledge of the underwriting guidelines and policies of their respective institutions gained as a result of their employment and involvement in day-to-day business affairs. *Id*. at 339 - 40.

The circumstances justifying the finding of "particularized knowledge" in *Kerley* lay in stark contrast to those surrounding Seay's proposed testimony. Unlike the testimony of the witnesses in *Kerley*, the focus of Seay's proposed testimony—the summaries prepared by Seay—is on subjects that he apparently has not dealt with during his employment at Pilot. Indeed, it is difficult to fathom circumstances that would have required Seay, Pilot's Manager of Business Intelligence and Design Sciences, to confront rebate approval logistics and commission breakdowns. Instead, the Government's disclosure strongly suggests that Seay's first – and only – experience with these matters came when the Government demanded that Pilot have these summaries prepared. Evidently, Pilot selected Seay specifically for this task even though Seay's job duties did not encompass these matters. Given the disconnect between Seay's experience and the subject-matter of the summaries he prepared, Seay's proposed testimony about those summaries cannot be said to be based on his particularized knowledge, as indicated by the Government's disclosure. Due to his unfamiliarity with the subject matter, Seay necessarily relied on independent specialized knowledge and technical skill to prepare the summaries, particularly the Customer Discount Comparison and Customer Profit summaries that required use of sophisticated "Power Pivot" tools.

In short, "particularized knowledge" that meets the requirements of Rule 701(c) includes only knowledge that the witness has by virtue of his or her position in the business—which was evidently not the case when Seay prepared the summaries. Accordingly, Seay's testimony is inadmissible under Rule 701(c).

### B. Even If It Were Within the Scope of Rule 701, Seay's Proposed Testimony Should Be Excluded Because It Is Not Based on His Personal Perception

As noted above, Seay's proposed testimony is inadmissible under Rule 701 because it is not based on "particularized knowledge" within the scope of Rule 701(c). Even if Seay's proposed testimony were within the scope of Rule 701, it would be inadmissible for failure to satisfy the requirements of subsection (a) because it impermissibly relies on unverified assumptions and data fed to him by the Government after the termination of the alleged conspiracy. The testimony is *not* based on Seay's first-hand knowledge. Admissible testimony under Rule 701(a), however, requires "that the witness has personal knowledge of the matter." *United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007) (quoting Fed. R. Evid. 602); *see also* Fed. R. Evid. 701, advisory committee's note (1972 proposed rule) (stating that requirement (a) pertains to "first-hand knowledge or observation").

Courts have found the requisite personal knowledge for lay witness testimony based on an after-the-fact analysis of documents and facts, if the testimony is derived from knowledge gained through one's participation in a business's day-to-day affairs. *See, e.g.*, *Munoz-Franco*, 487 F.3d at 35-36; *United States v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010). In *Kerley*, for example, the Sixth Circuit concluded that even though the witnesses were not involved in the loans at issue, they offered appropriate lay opinion testimony because they had personal knowledge "of their respective employers' underwriting and lending guidelines, policies and procedures" that were in place during the alleged misconduct and experience applying the guidelines to loans during that time. 784 F.3d at 338.

By contrast, as noted in the prior section, apparently Seay's day-to-day Pilot job duties never intersected with the subject matter of the summaries he prepared and any testimony he

may provide related thereto. Indeed, prior to preparing the summaries, Seay likely was no more familiar with their subject matter than any Pilot store clerk or Pilot's Chief Operating Officer; as far as Defendants can tell, Pilot could have chosen such other employees, instead of Seay, to prepare the charts and provide testimony as requested by the Government, provided they possessed sufficient specialized knowledge or technical skill. As a result, Seay lacks the requisite personal knowledge to offer the proposed lay testimony, so it should be excluded.

Additionally, the Sixth Circuit has indicated that to establish personal knowledge, a witness must be able to show a sound basis for his or her testimony. For example, in *JGR, Inc.*, the Sixth Circuit excluded lay opinion testimony when, among other things, the witness lacked a sufficient basis for his opinions. 370 F.3d at 526. In that case, a furniture retailer sued a furniture manufacture for breach of contract. At trial, the retailer called its certified public accountant and lawyer to offer lay witness testimony about lost profits and loss of business value. *Id*. at 524. Despite the witness's history of providing accounting services to the retailer, the court found that he should not have been permitted to offer lay testimony on those subjects because, among other things: (1) the information he relied upon for his analysis came primarily from the retailer; and (2) he did not independently verify the supporting documents he received. *Id*. at 525–26.

Seay's proposed testimony is similarly flawed. A portion of the documents relied upon by Seay for his analysis was pulled from databases collected by Pilot departments or third parties (e.g., PRS data), without any supervision or direction from Seay. Additionally, throughout the disclosure Seay notes that he based aspects of his calculations and summaries on "assumed discount[s]" or "assumed [time] period[s]" identified by the Government. Troublingly, Seay offers no indication that he made any effort to independently verify the basis for those Government-provided assumptions or to determine the provenance or accuracy of the supporting

documents. Thus, like the witness in *JGR*, Seay has no sound basis for offering his proposed lay testimony.

## CONCLUSION

The testimony at issue here is precisely what the 2000 Amendment to Rule 701 was designed to preclude: expert opinion testimony being disguised as lay opinion to avoid the increased scrutiny of Rule 702. The proposed testimony is outside the scope of Rule 701 and thus cannot be admitted thereunder. But even if the testimony did fit under Rule 701's umbrella, the proposed testimony does not meet that rule's requirements. This is because Seay relies on information for which he does not have personal knowledge, and he cannot establish an adequate nexus between his proposed testimony and his day-to-day function at Pilot.

If the Government desires trial testimony regarding the subject matter of Seay's proposed testimony, it should have timely designated an expert that could meet the requirements of Rule 702 to cover them. The Government had almost four years after its April 15, 2013 search of Pilot's headquarters (and over two and one-half years after Pilot entered into its "Criminal Enforcement Agreement") to do so. Alternatively, during this time it should have identified laypersons with personal knowledge—such as Pilot employees with job duties encompassing those matters—to testify about them. The Government cannot use Seay as a convenient substitute for such witnesses, because his testimony is not admissible under Rule 701.

Accordingly, Seay's testimony should be excluded.

Respectfully submitted,

*/s/ Robert K. Platt* _____
Robert K. Platt (Admitted *Pro Hac Vice*)
John E. Kelly (Admitted *Pro Hac Vice*)
BASS, BERRY & SIMS PLC
1201 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20004
(202) 827-2750 – Telephone
rplatt@bassberry.com
jkelly@bassberry.com

*/s/ Eli Richardson*
Eli Richardson (BPR #: 023443)
BASS, BERRY & SIMS, PLC
150 Third Avenue South Suite 2800
Nashville, Tennessee 37201
(615) 742-7825 – Telephone
(615) 742-0416 – Facsimile
erichardson@bassberry.com

**Attorneys for Defendant Scott Wombold**

*/s/ Russell Hardin, Jr. (with permission*
Anthony Douglas Drumheller
Derek S. Hollingsworth
Jennifer E. Brevorka
Russell Hardin, Jr.
RUSTY HARDIN & ASSOCIATES LLP
1401 McKinney Street, Suite 2250
Houston, TX 77010
(713) 652-9000 – Telephone
(713) 652-9800 -- Facsimile
rhardin@rustyhardin.com

**Attorneys for Defendant Hazelwood**

  */s/ Benjamin J. Vernia (with permission)*
Benjamin J. Vernia
THE VERNIA LAW FIRM
1455 Pennsylvania Avenue, NW
Suite 400
Washington DC 20004
(202) 349-4053 – Telephone
(866) 572-6728 -- Facsimile
bvernia@vernialaw.com

Cullen Michael Wojcik
LAW OFFICE OF CULLEN M. WOJCIK
422 S. Gay Street, Suite 302
Knoxville, TN 37902
wojciklaw@gmail.com

*Attorneys for Defendant Jones*

 */s/ Jonathan D. Cooper (with permission)*
Jonathan D. Cooper
WHITT, COOPER, TRANT & HEDRICK
607 Market Street, Suite 1100
Knoxville, TN 37902
(865) 524-8106 – Telephone
(865) 546-6637 -- facsimile
cooper@knoxdefense.com

Sara E. Compher-Rice
OBERMAN & RICE
550 West Main Avenue
Suite 730
Knoxville, TN 37902-2567
sara@tndui.com

*Attorneys for Defendant Mann*

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2017, a true and correct copy of the foregoing document was filed electronically with the U.S. District Court for the Eastern District of Tennessee. Notice of this filing was served via the Court's electronic filing system on all counsel listed below:

>David P. Lewen (david.lewen@usdoj.gov)
>F.M. Hamilton III (trey.hamilton@usdoj.gov)
>U.S. DEPARTMENT OF JUSTICE
>Office of U.S. Attorney
>800 Market Street, Suite 211
>Knoxville, TN 37902
>>*Attorneys for Plaintiff*
>
>Anthony Douglas Drumheller (adrumheller@rustyhardin.com)
>Derek S. Hollingsworth (dhollingsworth@rustyhardin.com)
>Jennifer E. Brevorka (jbrevorka@rustyhardin.com)
>Russell Hardin, Jr. (rhardin@rustyhardin.com)
>RUSTY HARDIN & ASSOCIATES LLP
>1401 McKinney Street, Suite 2250
>Houston, TX 77010
>>*Attorneys for Defendant Hazelwood*
>
>Benjamin J. Vernia (bvernia@vernialaw.com)
>THE VERNIA LAW FIRM
>1455 Pennsylvania Avenue, NW
>Suite 400
>Washington DC 20004
>
>Cullen Michael Wojcik (wojciklaw@gmail.com)
>LAW OFFICE OF CULLEN M. WOJCIK
>422 S. Gay Street, Suite 302
>Knoxville, TN 37902
>>*Attorneys for Defendant Jones*
>
>Jonathan D. Cooper (cooper@knoxdefense.com)
>WHITT, COOPER, TRANT & HEDRICK
>607 Market Street, Suite 1100
>Knoxville, TN 37902
>
>Sara E. Compher-Rice (sara@tndui.com)
>OBERMAN & RICE

550 West Main Avenue
Suite 730
Knoxville, TN 37902-2567
   *Attorneys for Defendant Mann*

                                            */s/ Eli Richardson*
                                            Eli Richardson