UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:16-CR-20 |
| MARK HAZELWOOD, *et al.*, | ) | Judge Collier |
| Defendants. | ) | |

**M E M O R A N D U M**

Before the Court is a motion in limine by Defendants Mark Hazelwood, Scott Wombold, Heather Jones, and Karen Mann to exclude the lay opinion testimony of Darren Seay, a potential witness for the United States (the "Government"). (Docs. 220, 221.) The Government responded in opposition (Docs. 234, 236), and Defendants replied (Doc. 242). The Court will **DENY** Defendants' motion in limine (Doc. 220).

I. **BACKGROUND**

Count One of the Amended Superseding Indictment (the "Indictment") (Doc. 182) charges Defendants, each of whom is a former employee of Pilot Travel Centers LLC ("Pilot"), with conspiring to commit mail fraud and wire fraud against customers of Pilot in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1341. (Doc. 182.) The Indictment alleges Defendants conspired to defraud trucking companies who bought fuel from Pilot by promising them discounts but not giving them the full benefit of those discounts and by sending false reports to lull those customers into thinking they were getting what they had been promised. Counts Two through

Six, Eight, and Ten charge Defendants Wombold, Jones, and Hazelwood with commission of various acts of wire fraud in violation of 18 U.S.C. § 1343.[1]

Mr. Seay is an accountant who has worked for Pilot since 2002, with previous job duties including "reporting, accounting, and research of store fuel margins, that is, the profit or loss earned by each Pilot travel center from the sale of fuel." (Doc. 234-15 [Seay Supp. Decl. on Prof'l Background] ¶ 2.) In 2013, after two federal government agencies searched Pilot headquarters as part of their investigation into the alleged fraudulent scheme that was eventually charged in the Indictment, Pilot conducted an audit of customer accounts that might have been affected by the alleged scheme. Mr. Seay was made a senior manager of Pilot's internal audit. In this role, he oversaw the creation of the "Power Pivot Manual Rebate Tool" and the "Power Pivot Repricing Tool," software programs to pull in Pilot data and calculate the difference between the discounts Pilot fuel customers received and the discounts they allegedly would have received if not for the scheme, so Pilot could repay its customers if it concluded repayment was appropriate. (Doc. 221-2 [Ltr. from Seay to Pilot Outside Counsel at Neal & Harwell (March 24, 2017)] at 2–4.) Mr. Seay's declaration states he became familiar with customer profit and loss statements and with the fuel discount approval process through his work on Pilot's internal audit. (Doc. 234-15 [Seay Supp. Decl. on Prof'l Background] ¶¶ 3–4.)

On March 29, 2017, the Government sent a letter to counsel for Defendants disclosing Mr. Seay as a potential expert witness. (Doc. 221-1.) The Government stated it intended to offer Mr. Seay's testimony as lay opinion testimony under Rule 701 of the Federal Rules of Civil

---

[1] Although not relevant to Defendants' motion, Counts Eleven through Thirteen charge Defendant Wombold with false statements in violation of 18 U.S.C. § 1001(1)(2), and Count Fourteen charges Defendant Hazelwood with witness tampering in violation of 18 U.S.C. § 1512(b)(3).

Procedure, not as expert testimony under Rule 702, but it was making the disclosure "as a precautionary measure."[2] (*Id.* at 1.) The disclosure covered Mr. Seay's expected testimony about three categories of analyses: (1) Customer Discount Comparison Summaries, opining on the difference between the discounts customers were promised and the ones they received (and calculated using the Power Pivot tools of which Mr. Seay oversaw the creation); (2) Customer Profit Summaries, opining on the profit Pilot received from fuel sales to certain customers; and (3) Rebate Payment Request/Approval Summaries, which purport to show who requested and approved certain discounts for fuel customers.[3]

## II. ANALYSIS

Rule 701 allows a lay witness to offer an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. As described by the Court of Appeals,

> Requirement (a) pertains to "first-hand knowledge or observation," and requirement (b) ensures that the proffered opinion is "helpful in resolving issues" and does not "amount to little more than choosing up sides." Fed. R. Evid. 701 advisory committee's note (1972 Proposed Rules). Requirement (c), added by the 2000 amendment to Rule 701, serves to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note (2000).

---

[2] The Government does not assert Rule 702 as an alternate ground for admission of Mr. Seay's testimony in connection with Defendants' motion in limine. (*See* Doc. 236 [Gov't Supp. Resp.].)

[3] The disclosure covered a fourth category, Commission-Related Summaries. The Government has since represented that it will not seek to introduce these summaries through Mr. Seay. (Doc. 234 [Gov't Resp.] at 3 n.2.)

*United States v. Kerley*, 784 F.3d 327, 337 (6th Cir. 2015).

Despite the reference in Rule 701(c) excluding opinions within the scope of Rule 702, "the drafters intended to preserve the practice of treating certain testimony based on particularized knowledge gained through personal experience as lay opinion." *Id.* at 339. The Advisory Committee's note specifically refers to the example of permitting an owner or officer of a company "to testify as to the value or projected profits of the business." Fed. R. Evid. 701 adv. comm. n. (2000), *quoted in Kerley*, 784 F.3d at 339. "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis." *Id. quoted in Kerley*, 784 F.3d at 339.

In *Kerley*, the Court of Appeals upheld the admission of lay opinion testimony from two bank employees who testified that if the banks had known the true facts of two property sales, the loans would not have been approved, even if the employees did not participate in underwriting the loans in question. 784 F.3d at 337. The court considered the foregoing advisory note and relevant in-circuit precedent in coming to its conclusion. For example, *Kerley* cited with approval an earlier unpublished Sixth Circuit case, *Lativafter Liquidating Trust v. Clear Channel Commc'ns, Inc.*, 345 F. App'x 46 (6th Cir. 2009). There, the court allowed lay opinion testimony on what a company's value would have been if the other party had not breached a contract. The lay witness in *Lativafter Liquidating* had personal, particularized knowledge of the company because as an investor, he "investigated [its] financials, retaining a market research firm to verify [its] market potential," and he later became a member of the company's board, receiving its monthly financial reports. 345 F. App'x at 50–51. The Court of

4

Appeals held the district court had not abused its discretion when it permitted the witness to testify about what the company's projected value would have been if the other party had not breached their contract. *Id.* at 51.

The *Kerley* court also examined and agreed with "a number of decisions from other circuits . . . permitt[ing] witnesses to give lay opinion testimony about a business's policies, practices, or procedures, based on an after-the-fact review or analysis of documents or facts, if the witness's testimony derived from personal knowledge gained through participation in the business's day-to-day affairs." *Id.* (citing *United States v. Munoz-Franco*, 487 F.3d 25 (1st Cir. 2007) (testimony of former bank officer about how a loan should have been classified was properly admitted where witness did not remember seeing the loan classifications at issue during his employment, but testimony was based on the knowledge of the classification system he acquired while employed); *United States v. Valencia*, 600 F.3d 389 (5th Cir. 2010) (sufficient foundation under Rule 701 where former chief risk officer analyzed various natural gas trading positions and how the company would have benefited from various changes in pricing, even though analysis was completed at government's request after he left the company, because the knowledge and skills he used to do the analysis were acquired through his employment at the company); *United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007) (witness could testify about what a company's related-party-receivables balance would have been if not for certain debt reclassifications, where witness's employment with the company included reviewing its accounting records and correcting its financial statements); *Burlington N.R.R. Co. v. Nebraska*, 802 F.2d 994 (8th Cir. 1986) ("Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony.").)

5

Defendants argue Mr. Seay's proposed testimony fails to satisfy two requirements of Rule 701. First, they argue it is not "rationally based on the witness's perception" as required by 701(a) because Mr. Seay's calculations include both (i) information from business records for which he is not directly responsible and (ii) assumptions provided to him by the Government about what the various fuel discounts should have been. Second, they argue his testimony is not based on particularized knowledge he gained as an employee of Pilot, but on the specialized knowledge and technical skill of an expert, which violates Rule 701(c)'s requirement that lay opinion testimony cannot be within the scope of Rule 702.

The Government argued in response that, under relevant precedent,

> proper testimony under Rule 701 includes analysis by a current or even former employee regarding an assumed course of conduct's effect on a business, regardless of whether the employee was involved in the transaction at issue, so long as the analysis is grounded in the employee's particularized knowledge obtained from the employee's position with the business and based upon the employee's personal review and perception of the materials relevant to the analysis.

(Doc. 234 [Gov't Resp.] at 17–18.) The Government filed two supplemental or amended declarations from Mr. Seay: one describing more specifically how the skills he used in developing his opinions arose out of his particularized knowledge as a Pilot employee, both in his work in fuel margins before the audit and in his work during the audit (Doc. 234-15), and the other describing in greater detail how he derived the information and conclusions in his summaries (Doc. 234-10). The Government also filed declarations of other Pilot employees to support the Government's position that all of the sources of data from which Seay's analysis pulled were Pilot business records. (Docs. 234-12, -13, -14, -16, -17, -18.) Finally, the Government asked for a ruling that the summary exhibits reflecting Mr. Seay's opinions will be admissible at trial.

6

Defendants' arguments against admission under Rule 701 are not persuasive. Their attempts to distinguish the present situation from relevant precedent underplay Mr. Seay's previous work with fuel center profits and his role in developing the Power Pivot tools.[4] They also discount the particularized experience Mr. Seay acquired through Pilot's audit as impermissible "after the fact" knowledge under Rule 701, rather than being part of his regular, "day-to-day" duties. Defendants fail to account for the fact that Mr. Seay worked on fuel store profits and losses before the audit, as his supplemental declaration makes clear. (Doc. 234-15.) Second, Mr. Seay's work on the audit was not undertaken on behalf of the Government or to advance this prosecution. Rather, it was assigned to him as part of new job duties in connection with his employment, because Pilot needed to know the scope of the wrongdoing for its own purposes. *See, e.g.*, *Valencia*, 600 F.3d 389 (analysis completed at government's request after witness left the company admissible as lay opinion testimony because the knowledge and skill the witness used to complete the analysis were acquired through his employment at the company).

Defendants rely on *United States v. Ganier*, 468 F.3d 920 (6th Cir. 2006), which held the testimony of a computer forensic expert could not be admitted under Rule 701. *Ganier* is inapposite, in that the witness whose testimony was excluded was a special agent from the Internal Revenue Service, not someone who had ever worked for a company involved in the case. Defendants' reliance on *United States v. Garcia*, 413 F.3d 201 (2d Cir. 2008), is similarly misplaced; there, the court rejected the admission of supposed lay opinion testimony by a Drug Enforcement Agency agent that the defendant was in charge of a criminal operation, where the

---

[4] The Court notes that the breadth of Mr. Seay's relevant and particularized experience at Pilot may not have been apparent until the Government filed its response.

agent's opinion derived from the compiled observations of all the investigators, and where the agent was, again, never an employee of a relevant company.

Defendants argue in their reply that the Government has abandoned its argument that Seay can offer lay opinion testimony on the second and third categories of summaries—the Customer Profit Summaries and the Rebate Payment Request/Approval Summaries—because the Government's response focuses on the admissibility of the first category of summaries—the Customer Discount Comparison Summaries. The Government's response does refer expressly to the Customer Discount Comparison Summaries, but its exhibits and declarations provide supporting facts for the admissibility of all three categories of summaries, and its request for a ruling on admissibility covers all three categories. The Government also expressly dropped a fourth category, but not the middle two. Most importantly, the same case law and reasoning supports the admissibility of all three categories of summaries. The Court concludes the Government has not abandoned its argument as to the Customer Profit Summaries or the Rebate Payment Request/Approval Summaries.

### III.     CONCLUSION

Under controlling precedent in the Sixth Circuit and persuasive precedent from other circuits, Defendants have not shown Mr. Seay's proposed testimony would not satisfy the requirements for lay opinion testimony under Rule 701. Excluding such testimony before trial is not warranted. The Court will **DENY** Defendants' motion in limine (Doc. 220). A ruling on the admissibility of the Government's proposed summary exhibits reflecting Mr. Seay's proposed lay opinions would be premature, and the Court declines to consider the Government's request.

**AN APPROPRIATE ORDER WILL ENTER.**

                                        **/s/**
                                        **CURTIS L. COLLIER**
                                        **UNITED STATES DISTRICT JUDGE**