UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| PLAINTIFF, | ) | |
| v. | ) | No. 3:16-CR-20 |
| | ) | JUDGES COLLIER / GUYTON |
| MARK HAZELWOOD, | ) | |
| SCOTT WOMBOLD, | ) | |
| HEATHER JONES, | ) | |
| and KAREN MANN, | ) | |
| DEFENDANTS. | ) | |

**DEFENDANT MARK HAZELWOOD'S SEALED RESPONSE TO GOVERNMENT'S MOTION TO INQUIRE INTO AND OFFER EVIDENCE AS REBUTTAL CHARACTER EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(a)(2)(A) AND 405**

The Government's motion to offer character evidence seeks to publicly assassinate Mark Hazelwood's character—the equivalent of bringing a nuclear weapon to a knife fight. The Government's pleading is a tortured attempt to marry after-hours recordings of Mr. Hazelwood's inflammatory and offensive racial epithets with narrowly-tailored trial testimony about customers and business decisions related to customers. The nuclear option—providing the Court with the most despicable recordings of Mr. Hazelwood in the Government's possession—fails to prove that defense counsel's questions opened the door to actual character traits. Nor does the Government's motion demonstrate that the purported traits in question—business judgment and "authentic humanitarian good will toward the entire community of over-the-road truck drivers"—are pertinent character traits to the mail and wire fraud charges faced by Mr. Hazelwood. Most importantly, the racially-charged transcripts and recordings the Government seeks to introduce include language so vile that no rational person could give Mr. Hazelwood a fair trial. Mr.

Hazelwood's utterances are beyond the pale. It would be absolutely impossible for any juror to look past these slurs and judge Mr. Hazelwood based on the facts in evidence.

The Government's motion attempts to show that Mr. Hazelwood is a racist. This character trait, however, has not been called into question by *any* testimony. This Court should deny the Government's request to elicit testimony about irrelevant and unfairly prejudicial character information with no probative value because the proposed evidence violates Federal Rules of Evidence 401 and 403. The proposed evidence is also prohibited under Rules 404 and 405 because Mr. Hazelwood's counsel did not elicit testimony from Brian Mosher related to recognized character traits. Furthermore, the purported trait *truly* in question—racism—does not in any way pertain to the wire and mail fraud charges against Mr. Hazelwood.

**I.     Background**

The Government's motion to enter inflammatory and unfairly prejudicial evidence rests on three assertions, which the record and the law belie. First, the Government purports that the cross-examination of Brian Mosher, a Government witness, opened the door to the character trait of sound business judgment. The Government erroneously contends character became a pertinent issue when Mr. Hazelwood's counsel asked whether lying to a small portion of Pilot customers and taking a fraudulent "approach to customers" was a "dumb idea" and a "dumb business decision." (November 30, 2017 Tr. at 103:24-105:13). Second, the Government contends that Mr. Hazelwood's counsel introduced the character trait of "authentic humanitarian good will toward the entire community of truck drivers." (Mot. 5-6). This allegedly occurred after the Government had repeatedly asked Mr. Mosher about Mr. Hazelwood's management style, and Mr. Hazelwood's counsel had then entered into evidence a training video, coupled with questions about Mr. Hazelwood's supervisory methods. Finally, the Government contends that a mere limiting

2

instruction to the jury would head off any unfair prejudice that would result from the inflammatory evidence. (Mot. at 10-11).

**II.   Under Federal Rules of Evidence 403 and 404, the Government cannot introduce unfairly prejudicial evidence by concocting fictitious character traits.**

**A.   Defense counsel did not offer character evidence by introducing a training video and asking questions about Mr. Hazelwood's management style.**

Mr. Hazelwood's counsel offered a training video, Joint Defense Exhibit (JDX) 86, only after the Government asked Mr. Mosher, on four different occasions, about Mr. Hazelwood's "management style." (Nov. 27, 2017 Tr. at 149:18; 162:25; 163:23; 175:4). The Government's questions focused on two exhibits: (1) Mr. Hazelwood's recounting of a trip he had just taken with Pilot's new CEO, John Compton, and (2) an email in which Mr. Hazelwood encouraged other employees to make aggressive discount offers to compete with two former Pilot employees. Both Government exhibits showed Mr. Hazelwood using profanity. In response to the prosecutor's questions, Mr. Mosher drew a distinction between Mr. Hazelwood's management style with "directors and above" and with "the lower level meetings." (Nov. 27, 2017 Tr. at 149:18-24).

Before offering JDX 86 (which came in without objection), Mr. Hazelwood's counsel asked foundational questions about the direct examination exchanges. (Nov. 28, 2017 Tr. at 167:4-171:15). The video and questions involved Mr. Hazelwood speaking to a group of approximately 1,100 Pilot employees. Assuming the persona of a truck driver, Mr. Hazelwood gave a presentation about all the ways in which company employees should think about the driver to ensure Pilot gets the drivers' business.

After playing the video, defense counsel asked Mr. Mosher follow-up questions about the exhibit showing another aspect of Mr. Hazelwood's management style. (*Id*. at 172:23-173:12).

3

Mr. Mosher did not testify about Mr. Hazelwood's character on either direct or cross-examination. He did not testify about Mr. Hazelwood's "humanitarianism." Mr. Mosher answered questions about a presentation by Mr. Hazelwood to 1,100 employees that focused on truck drivers and Pilot's business catering to these specific customers.

Mr. Hazelwood's counsel offered no pertinent character trait evidence through Mr. Mosher's testimony. If the Government truly believed that JDX 86 was improper and inadmissible evidence, it should have made a timely objection to the exhibit or <u>any</u> question asked by defense counsel. The Government cannot now suggest that the training video was evidence of an "authentic humanitarian good will toward the entire community of truck drivers" and, after allowing that exhibit into evidence, retaliate with improper evidence designed to show the defendant is a racist.

### B. Defense counsel's questions about the wisdom of cheating a small portion of Pilot's customers did not elicit character evidence.

Already excerpted in the Government's motion are the questions Mr. Hardin posed to Brian Mosher about "business judgment." (Mot 3-4). Those questions uniformly point to a single line of inquiry: Whether an intelligent business person would think cheating and lying to a small segment of the company's clientele is a good idea. (November 30, 2017 Tr. at 105:6-8). Mr. Mosher agreed that cheating and lying to customers was "dumb" and "bad business." (*Id*. at 104:12-19). When asked if Mr. Hazelwood was a good businessman—a question that followed the series of narrowly-tailored questions making the context of this question quite clear—Mr. Mosher responded, "For the most part, yes." (*Id*. at 105:3-5). To characterize this testimony as providing a character trait is elevating faint praise to new heights. Defense counsel's questions directly pertained to the alleged fraud and business decisions about specific Pilot customers. And, Mr. Mosher's responses bore no resemblance to character evidence.

4

### C. "Authentic humanitarian good will toward the entire community of truck drivers" and "sound business judgment" are not recognized character traits.

Under Fed. R. Evid. 404(a)(2)(A), a defendant may offer evidence of a "pertinent character trait" through opinion or reputation testimony under Rule 405(a). A character trait is "a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness." E. Cleary, McCormick on Evidence § 195, at 574 (3d ed. 1984). As pointed out in *Michelson v. United States*, 335 U.S. 469, 475 (1948), "honesty," "trustworthiness," and "law-abidingness" are all character traits that a defendant might offer into evidence through reputation or opinion testimony.

There are no such legally recognized character traits as "authentic humanitarian good will toward the entire community of truck drivers" or "sound business judgment." The Government has cited no case and no legal secondary source for such peculiar character traits. Indeed, the Sixth Circuit has noted that such concepts as "forgetfulness," "intelligence," or "poor ability to express oneself" are not considered character traits for purposes of Rule 404(a). *United States v. Nixon*, 694 F.3d 623, 636 (6th Cir. 2012) (quoting *United States v. West*, 670 F.2d 675, 682 (7th Cir. 1982) ("noting that although Rule 404(a)(1) does not define the term "character trait," the term more properly references "elements of one's disposition, such as honesty, temperance, or peacefulness," rather than one's "intelligence."). Thus, the purported traits the Government seeks to rebut are non-existent and should not serve as the basis for introducing Mr. Hazelwood's racist utterances.

### III. Under Federal Rules of Evidence 404 and 401, irrelevant racist slurs cannot rebut pertinent character traits for wire and mail fraud charges.

The Government seeks to admit Mr. Hazelwood's derogatory comments under Rule 404(a)(2)(A) and 405(a), alleging these rebut traits of "sound business judgment" and "authentic

humanitarian good will toward the entire community of truck drivers." These fictitious traits are not pertinent character attributes for a mail and wire fraud prosecution. Nor do these traits relate to racism and xenophobia, the only character evidence demonstrated by the Government's proposed transcripts.

    **A.    The Government's proposed evidence fails to meet Rule 404(a)'s requirement that the scope of character rebuttal evidence be limited to pertinent offense traits and character evidence introduced by the defense.**

A defendant's violence or peacefulness may be "pertinent" character traits when he is charged with a violent crime. Sexual morality may be a pertinent character trait in a sexual assault case, sobriety in a prosecution for DWI, honesty and truthfulness when the charge is theft, embezzlement, or fraud. *See generally Admissibility of Evidence of Pertinent Trait under Rule 404(a) of the Uniform Rules of Evidence*, 56 A.L.R. 402, § 2a (1987 & 2007 Supp.).

To be admissible, the character trait must be related to the charged offense or a defense thereof. *United States v. Washington*, 106 F.3d 983, 1000 (D.C. Cir. 1997) (in a corruption trial, evidence of the defendant's prior commendations were not admissible because his "dedication, aggressiveness and assertiveness" in investigating drug dealing and carjacking is neither 'pertinent' to nor an 'essential element' of his supposed lack of predisposition to engage in the corrupt criminal activity with which he was charged." ); *see also United States v. Jackson*, 588 F.2d 1046 (5th Cir. 1979) (truthfulness not pertinent to narcotics charges).

The reason that a "pertinent" character trait must be related to the crime charged is because this evidence is offered as circumstantial or indirect proof that the character trait is inconsistent with the offense charged and therefore makes it more probable that the accused did not commit the crime. *Michelson*, 335 U.S. at 476. Because having a supposed character trait of "authentic humanitarian good will toward the entire community of truck drivers" is not inconsistent with

conspiring to commit mail or wire fraud of trucking companies, it is not a "pertinent" character trait in this trial. *Id.* Similarly, being a smart businessman—something Mr. Mosher barely conceded applied to Mr. Hazelwood—is not germane to whether an individual had the intent to lie to customers and defraud them using the wires or mail.

Sometimes, a defendant may put his character for lawfulness and general good moral character in issue by relying upon testimony concerning his religious tendencies and activities, such as daily prayer or regular church attendance. *See, e.g., United States v. Moore*, 604 Fed. App'x 458, *461-62 (6th Cir. Mar. 17, 2015) (unpublished). Testimony of a blanket statement of good moral character opens the door to any rebuttal evidence that is inconsistent with a sterling character. Other equally broad statements of general good conduct which open the door to wide rebuttal testimony include "He's never been in trouble before" or "He's the best man I know." *Id., see generally*, 1 MUELLER & KIRKPATRICK, FEDERAL EVIDENCE § 4:23 (4th ed.2013)). That type of testimony, however, did not occur with Mr. Mosher.

> **B.    The Government's proposed evidence of racial insults and derogatory language is barred by Rule 401 because it is irrelevant to the testimony elicited from Mr. Mosher.**

Defense counsel's contested questions were limited to the business value of "lying to customers" who represented "such a small percentage of Pilot's overall business." (Nov. 30, 2017 Tr. at 105:6-8). The conversations proffered by the Government involving racist statements are not directed at trucking companies or truck drivers. The racist utterances are about a racist song playing in the background and a professional football team. Nor are the proffered discussions about Pilot's business models or practices, customers, or employees. In reaching for the nuclear option, the Government seeks to introduce irrelevant, yet deplorable language by Mr. Hazelwood

7

to rebut testimony about business practices toward Pilot customers. Such a move fails to meet Rule 401's relevancy standards.

Similarly, by purportedly seeking rebut questions about Mr. Hazelwood's management style with evidence of racism, the point made by the Government is inapposite to Rule 404's limits. JDX 86 was not introduced until *after* the Government asked Mr. Mosher on four different occasions about Mr. Hazelwood's "management style" during direct examination. Defense counsel laid the foundation for the video by asking a series of questions relating to Mr. Hazelwood's management style, and followed up after playing the video with additional questions that specifically pertained to Mr. Hazelwood's management style. Defense counsel introduced this evidence to rebut the Government's testimony, not to elicit character evidence.

The transcripts the Government seeks to shoehorn into evidence have no relation to Mr. Hazelwood's management style. Yes, Mr. Hazelwood's utterances occurred before subordinates. But, this after-hours conversation in a private home—where all parties were drinking heavily— included no business directives, instructions about work, or discussion about customers or Pilot business. Rule 404 requires that the Government can only introduce evidence to "rebut" or contradict a specific character trait offered by the Defense. The Government's motion and proposed evidence fails to meet this standard.

**IV. Under Rule 403, the evidence proposed by the Government lacks any probative value and is so unfairly prejudicial that its admission would result in a jury verdict founded on an improper basis.**

The Government proposes to question Mr. Mosher about racial epithets and insults that Mr. Hazelwood made in a private home, after business hours, during discussions with co-workers that involved no focus on Pilot business matters.[1] These transcripts, however, are exactly the type

---

[1] While the group discussed their boss, Jimmy Haslam, this discussion can, at best, be called office gossip.

of things that throw a skunk in the jury box and irrevocably pollute any hope of a fair verdict based on the actual evidence. Such evidence is absolutely barred by Rule 403 as its probative value is not just substantially outweighed by its unfair prejudicial effect, it is the end of the trial.

This trial should be based upon evidence concerning the innocence or guilt of the four defendants of conspiracy to commit mail or wire fraud, not upon racial epithets. Even if the evidence proffered by the Government were somehow construed as relevant to some issue in this fraud case, it is absolutely barred by Rule 403. The discussions by Mr. Hazelwood and other Pilot employees in the transcripts makes one's skin crawl. Most rational jurors would brand Mr. Hazelwood as unforgivable after reading the Government's proffered evidence. And, most rational jurors would judge Mr. Hazelwood based on this improper basis. This is precisely why the Government seeks to introduce the evidence. The Government's motion does not—and the Government cannot—point to any probative value for introducing such charged, unfairly prejudicial evidence. This is why Rule 403's standard requires keeping such character evidence out of the jury's purview. Any error in admitting this evidence would never be harmless.

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES LLP**

By: /s/ *Russell Hardin, Jr.*
    Russell Hardin, Jr. (*Pro Hac Vice*)
    Anthony D. Drumheller (*Pro Hac Vice*)
    Jennifer E. Brevorka (*Pro Hac Vice*)
5 Houston Center
1401 McKinney Street Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
rhardin@rustyhardin.com
adrumheller@rustyhardin.com
jbrevorka@rustyhardin.com

***Attorneys for Defendant Mark Hazelwood***

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties.

>  */s/ Anthony D. Drumheller*
> Anthony D. Drumheller