UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-CR-20 |
| ) | |
| MARK HAZELWOOD, *et al.*, ) | Judge Collier |
| ) | |
| Defendants. ) | |

## **M E M O R A N D U M**

On December 7, 2017, the Court issued an oral ruling allowing the Government to introduce into evidence three exhibits, later designated as Government Exhibits 529, 530, and 531, against Defendant Mark Hazelwood. Defendants Scott Wombold, Heather Jones, and Karen Mann (collectively, the "Codefendants") filed a sealed joint motion for the Court to reconsider or modify its ruling, and either exclude the evidence altogether or allow it only in a more limited form. (Doc. 401.) Defendant Hazelwood also filed a sealed motion asking the Court to reconsider the ruling and exclude the evidence. (Doc. 411.) Defendant Hazelwood joined the arguments made by the Codefendants in sections I through IV of their motion and made additional arguments. The United States (the "Government") filed a sealed consolidated response opposing both motions. (Doc. 417.) On January 10, 2018, the Court issued an oral ruling **DENYING** both motions to reconsider (Docs. 401, 411) and stating this written Memorandum would follow.

### I. BACKGROUND

Count One of the Amended Superseding Indictment (the "Indictment") (Doc. 182) charges Defendants, each of whom is a former employee of Pilot Travel Centers LLC ("Pilot"), with

conspiring to commit mail fraud and wire fraud against customers of Pilot in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1341. (Doc. 182.) The Indictment alleges Defendants conspired to defraud trucking companies who bought fuel from Pilot by promising them discounts but not giving them the full benefit of those discounts and by sending false reports to lull those customers into thinking they were getting what they had been promised. Counts Two through Six, Eight, and Ten charge Defendants Wombold, Jones, and Hazelwood with commission of various acts of wire fraud in violation of 18 U.S.C. § 1343.[1]

On December 5, 2017, following the eleventh day of trial, the Government requested leave to file under seal a motion to offer rebuttal character evidence against Defendant Hazelwood under Rules 404(a)(2)(A) and 405 of the Federal Rules of Evidence (the "Rules"). (Docs. 362, 363.) The Government based its motion on Defendant Hazelwood's opening statement and his cross examination of Government witnesses Janet Welch and Brian Mosher. Defendant Hazelwood requested leave to file his response in opposition under seal the next day. (Docs. 365, 366.) On December 7, 2017, the Court granted in part and denied in part the motions to seal. (Doc. 368.)

The evidence in question was three recordings made on October 25, 2012, at the lake house of a Pilot sales employee. A number of direct sales employees were there for a management meeting to plan a larger sales meeting and training at Pilot headquarters in November. Defendant Hazelwood arrived at the lake house in the evening. The Government had previously introduced

---

[1] Although not relevant to Defendants' motions, Counts Eleven through Thirteen charge Defendant Wombold with false statements in violation of 18 U.S.C. § 1001(1)(2), and Count Fourteen charges Defendant Hazelwood with witness tampering in violation of 18 U.S.C. § 1512(b)(3).

other parts of the recording into evidence, both from before and from after Defendant Hazelwood's arrival. The three recordings the Government's motion sought to introduce, since designated as Government Exhibits 529, 530, and 531, included Defendant Hazelwood and a number of his subordinates using racist epithets, listening to a song Defendant Hazelwood suggested be played containing racist and sexually explicit lyrics, and making various comments and jokes about sensitivity training, Pilot's human resources department, Pilot's board, and other subjects.

The Court conducted an *in camera* hearing on the Government's motion to introduce the evidence on December 7, 2017. (Doc. 375.) Following the hearing, the Court announced in open court that it would grant the Government's motion[2] on two alternative bases: one, to allow the Government to offer evidence to rebut Defendant Hazelwood's evidence of the character trait of sound business judgment under Rule 404(a)(2)(A), and the other, to allow the Government to introduce counterevidence under Rule 401, insofar as Defendant Hazelwood's evidence could also be fairly interpreted as being broader than character evidence.[3] The Court made detailed oral findings on the record, which the Court will not repeat in this Memorandum except as pertinent to the analysis below.

---

[2] Defendant Hazelwood's opening statement was not evidence, and the Court did not base any part of its analysis on the contents of Defendant Hazelwood's opening statement.

[3] Defendants characterize the Court's ruling as having rejected the Government's argument under Rule 404(a). As discussed further below, the Court considered both Rule 404(a) and Rule 401 to be alternative bases for admission of some or all of the Government's proposed evidence.

The Court provided counsel with copies of a proposed limiting instruction to be given to the jury prior to the introduction of the evidence. Following the Codefendants' oral statements that they wanted time to consider filing motions to sever and the Government's representation that it might then choose not to introduce the evidence at all, the Court amended its order on the motions to seal (Doc. 368), ordering the filings to be kept under seal pending the Government's final decision to offer the recordings into evidence. (Doc. 371.) The Government's motion and Defendant Hazelwood's response were both accordingly filed under seal at that time. (Docs. 372, 373.)

On December 21, 2017, the Codefendants sought leave to file under seal their joint motion to reconsider or modify the Court's ruling (Docs. 392, 393), and the Court granted leave on December 22 (Doc. 394). On December 29, Defendant Hazelwood sought leave to file his motion to reconsider under seal (Docs. 408, 409), which the Court granted on January 3, 2018 (Doc. 410.) The Government sought leave to file its response under seal on January 5, which the Court granted on January 8 (Doc. 416). On January 10, the Court issued an oral ruling denying both sealed motions to reconsider (Docs. 401, 411) and stating a written Memorandum would follow. (Doc. 424.)

## II. ANALYSIS

### A. Character Evidence Under Rule 404(a)(2)

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). In a criminal case, however, a defendant is allowed to "offer evidence of the defendant's

4

pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A).

The Government's motion sought to introduce evidence under Rule 404(a)(2) on the theory that Defendant Hazelwood had introduced evidence of his character for sound business judgment, in the sense that he would not participate in or allow dumb activities by his subordinates, such as lying to customers in a small part of the business, that would risk bringing down the business he had done so much to develop. (Doc. 372 at 2–4 (quoting Docs. 336, 361).) The Government argued its proposed evidence was relevant to rebut Defendant's character evidence because it showed Defendant Hazelwood participating in an activity that, if made public, would risk that type of result. In response, Defendant Hazelwood argued in part that his questioning had not gone to a character trait at all and there was no such character trait as "sound business judgment." (Doc. 373 at 3–5.)

Defendants believe the Court's oral ruling rejected the Government's Rule 404(a) argument. (Doc. 401 at 3 (arguing Codefendants could not litigate their arguments earlier because the Court granted the Government's motion on grounds other than Rule 404(a); Doc. 411 at 2 (arguing the Court ruled only on a basis unanticipated by the parties).) Defendants misunderstand the Court's ruling. The Court concluded the Government's theory was a plausible basis for introducing rebuttal evidence as to Defendant Hazelwood's alleged character for sound business judgment. (*See* Doc. 374 at 184.) The Court cited to authorities that would support such a conclusion. But the Court also went on to consider whether the evidence would be admissible even if, as Defendant Hazelwood argued, Defendant Hazelwood's evidence was not character evidence at all, or was more than character evidence. (*See* Doc. 374 at 184–85 ("[A] reasonable

5

person *could look at* this line of questioning as *not necessarily or primarily* character in nature. . . . *[I]f* one makes the inference . . . , *then* the evidence, rather than being character evidence, is merely 401 evidence . . . . So this *would* be pure contradiction." (emphasis added)).) The Court did not reject the Government's 404(a)(2) argument[4]; rather, it concluded there were two alternate grounds for admission of some or all[5] of the Government's proposed evidence. It is not uncommon in a trial for evidence to straddle or cover more than one ground for admissibility. The Court will next address Defendants' arguments for reconsideration of this alternate ground.

     **B.    Counterevidence Under Rule 401**

Relevant evidence is generally admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Defendants argue the Government's proposed evidence is not relevant because it does not relate to any of the elements of the crimes with which Defendant Hazelwood is charged. (Doc.

---

[4] The Court's statement that it did "not agree that the [G]overnment's efforts here are to show that Mr. Hazelwood is a racist," (Doc. 374 at 185), was not a rejection of the Government's Rule 404(a)(2) argument. Rather, it distinguished the Government's Rule 404(a)(2) argument from a theoretical Rule 404(a)(1) argument, under which the Government would somehow have been seeking to prove Defendant guilty of the conspiracy or wire fraud crimes charged in the Indictment because of an alleged racist character trait.

[5] Rule 405 sets limitations on the methods of proving character, depending on whether or not "a person's character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405. When a character trait is an essential element of a charge, claim, or defense, it may be proved by relevant specific instances of conduct. Fed. R. Evid. 405(b). Otherwise, it may be proved by testimony about the person's reputation or testimony in the form of an opinion, with testimony into specific instances allowable on cross-examination. Fed. R. Evid. 405(a).

401 at 8–9; Doc. 411 at 3 n. 2; *see also* Doc. 411 at 7.) But this is not what Rule 401(b) requires. To be relevant, evidence need only tend to make more or less probable a "fact . . . of consequence in determining the action." Fed. R. Evid. 401(b). By eliciting evidence that Defendant Hazelwood was too good a businessman and too good a company president to have participated in or tolerated the business risks inherent in discount fraud, Defendant Hazelwood has put these purported facts before the jury as a defense. The Government's evidence is relevant for that reason: it has some tendency to make these facts about Defendant Hazelwood less probable than they would be without the evidence, and Defendant Hazelwood has made these facts of consequence by bringing them into the case as part of his defense. This is so whether Defendant Hazelwood's evidence is or is not characterized as character evidence.

A simple but imperfect analogy is a defendant's alibi defense. If a crime is committed at location X, a defendant may introduce as part of her defense evidence she was instead at location Y at the relevant time. Counterevidence that the defendant was not actually at location Y at the relevant time then becomes relevant under Rule 401, despite the fact that not being at location Y is not an element of the crime.

Defendant Hazelwood also argues the evidence must be excluded because it is extrinsic evidence on a collateral issue, and as such is not allowed to impeach the testimony of Mr. Mosher. (Doc. 411 at 3–9.) This argument is misplaced. The Government is not seeking to impeach Mr. Mosher as to his credibility or otherwise; it is seeking to respond to a defense raised by Defendant Hazelwood.

C. **Other Acts Evidence Under Rule 404(b)**

All four Defendants argue in their motions to reconsider that the Government's evidence is not subject to either of the foregoing analyses—the character-evidence analysis of Rule 404(a) or the simple relevance analysis of Rule 401—but should instead be assessed under the other-acts analysis of Rule 404(b). (Doc. 401 at 16–20; Doc. 411 at 3 n.2.) The Government agrees Rule 404(b) is potentially applicable to its evidence and asks the Court to make threshold findings as to admissibility under Rule 404(b). (Doc. 417 at 8–11.) The Court accordingly considers the evidence with respect to Rule 404(b).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Rule 404(b) inquiry has three parts: (1) "a preliminary determination as to whether sufficient evidence exists that the prior act occurred"; (2) "a determination as to whether the 'other act' is admissible for a proper purpose under Rule 404(b)"; and (3) a determination of "whether the 'other acts' evidence is more prejudicial than probative under Rule 403." *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001); *see also United States v. Mandoka*, 869 F.3d 448 (6th Cir. 2017). With regard to the second requirement, past acts must be "substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985). The past bad act "need not duplicate exactly the instant charge, but need only be sufficiently analogous

to support an inference" consistent with the purpose for which the evidence is being offered. *See United States v. Benton*, 852 F.2d 1456, 1468 (6th Cir. 1988).

First, there is sufficient evidence in the record that the acts in question occurred. The Court has read the transcripts and heard the recordings submitted under seal. Testimony has also been introduced that Defendant Hazelwood was at the lake house that evening. No party has suggested what the Court heard was a fabrication or did not actually include Defendant Hazelwood's voice. On the contrary, the parties have all stipulated to the authenticity of other portions of the longer recording from which these recordings were taken. (*See* Doc. 245.)

Second, the recordings are admissible for a proper purpose under Rule 404(b). Defendants assert the Government has not advanced a purpose other than a propensity-based one. (Doc. 401 at 19; Doc. 411 at 3 n.2.) The Government submits "the contradiction and rebuttal of facts of consequence upon which a defendant constructs his defense" as its "permissible, non-propensity basis" for admission under Rule 404(b). (Doc. 417 at 9–10.)

The Government relies on *United States v. Johnson*, 634 F.2d 735 (4th Cir. 1980), a tax-evasion case, in which evidence of the defendant doctor's overbillings to Medicaid was admissible under Rule 404(b) to rebut her defense of inadvertence—that she had had nothing to do with preparing her tax returns because she did not care about money and instead spent her time on her patients. Like the Court of Appeals for the Sixth Circuit, the Court of Appeals for the Fourth Circuit recognizes that the list of permissible purposes in Rule 404(b) is "illustrative, not exclusive." *Johnson*, 634 F.2d at 737; *see also Blankenship*, 775 F.2d at 739. In holding evidence of the defendant's overstated Medicaid billings admissible, the *Johnson* court stated that

> where . . . a defendant in a criminal case by her own testimony and that of others has deliberately sought as the primary means of defense to depict herself as one

9

whose essential philosophy and habitual conduct in life is completely at odds with the possession of a state of mind requisite to guilt of the offense charged, that defendant may be considered in effect to have forfeited any protection that the first sentence of the Rule might otherwise have provided against the type of "other act" evidence here challenged. In such circumstances, testimony such as that [in question] may well be the only effective way to rebut evidence designed generally to plant in the jury's mind a reasonable doubt that such a person could have possessed the culpability of mind requisite to convict of the crime charged.

*Johnson*, 634 F.2d at 737–38.

The same reasoning applies here. The acts captured in the recordings are Defendant Hazelwood engaging in and promoting racist talk and entertainment during a work meeting, and both allowing and encouraging his subordinates to do the same.[6] Given the defense Defendant Hazelwood has put forward to date, these acts are sufficiently analogous to the crimes charged to support the inference advanced by the Government: that Defendant Hazelwood was not, in fact, too good a businessman and company president for Pilot to engage in conduct which, if it became known, would put Pilot at serious risk. As stated by the *Johnson* court, Defendant Hazelwood "has deliberately sought as the primary means of defense to depict [him]self as one whose essential philosophy and habitual conduct in life," namely his dedication and contributions to Pilot and his being a good businessman and company president, are "completely at odds with the possession of

---

[6] Defendant Hazelwood contests any connection between the recordings and his relationship to Pilot, characterizing his conduct as making "racial slurs with friends while drinking and watching a football game in a private home at night." (Doc. 411 at 6.) This characterization overlooks the evidence that all of the people present were Pilot direct sales employees, and they had gathered in that private home for the express purpose of conducting a Pilot management meeting and planning Pilot training activities. It also ignores the fact that Defendant Hazelwood was the company president and the other attendees were his subordinates. Defendant Hazelwood's presence, statements, and actions served as significant indicia of acceptable conduct to these subordinates.

a state of mind requisite to guilt of the offense charged," namely knowledge of and advancement of the fraudulent practices in which his former subordinates have testified they were engaging. *See id.*, 634 F.2d at 737. These acts are also more than reasonably near in time to the acts charged.

As to timing, the recordings were made during the span of the alleged conspiracy and on the same day as other conversations the Government has offered as proof of the conspiracy.

Third, the danger of unfair prejudice does not bar admission of the evidence under Rule 403, as discussed below.

### D. Balancing Test of Rule 403

Regardless of the grounds on which evidence may be held to be relevant, any evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court explained its balancing of the probative value of the evidence against the danger of unfair prejudice in the Court's oral ruling. Defendant Hazelwood argues the Court's balancing was mistaken and the danger of unfair prejudice to him substantially outweighs the probative value of the evidence. (Doc. 411 at 10–13.) Defendants also all argue the danger of unfair prejudice to the Codefendants, the danger of confusing the issues and misleading the jury, and the danger of delaying the trial and wasting time all substantially outweigh the probative value of the evidence. (Doc. 401 at 9–16; Doc. 411 at 3 n.2.)

11

### 1. Danger of Unfair Prejudice to Defendant Hazelwood

Defendant Hazelwood relies primarily on three cases involving racial slurs or racially biased evidence to support his argument that the danger of unfair prejudice to him substantially outweighs the probative value of the evidence.

In the first case, the Court of Appeals for the Sixth Circuit held evidence of racial slurs the defendant allegedly made towards an African American man should have been excluded under Rule 403. *United States v. Ebens*, 800 F.2d 1422 (6th Cir. 1986), *abrogated on other grounds by Huddleston v. United States*, 485 U.S. 681 (1988). As quoted by Defendant Hazelwood, the Court of Appeals stated: "It does not take much imagination to understand how such grossly biased comments would be viewed by the jury. We need not know the racial composition of the jury, for nearly all citizens find themselves repelled by such blatantly racist remarks and resentful of the person claimed to have uttered them." *Id.* at 1434 (quoted in part in Doc. 411 at 11). But *Ebens* does not stand for the proposition that racially biased comments by a defendant should usually be excluded under Rule 403.

The defendant in *Ebens* was charged with a civil rights violation in the death of a man of Chinese descent. The government introduced testimony that, eight or nine years earlier, a man with the same first name, hair color, and approximate height as the defendant had used racial slurs to an African American man and pressured the man to leave a bar. The Court of Appeals held admitting this testimony was reversible error because the incident was too remote in time from the crime of conviction and, more importantly, the identification of the defendant as the man who uttered the slurs was too indefinite to be probative. *Id.* at 1432–34. The victim of the remarks admitted he knew the defendant, but "steadfastly refused . . . to identify defendant Ebens as th[e]

same person" who made the remarks. *Id.* at 1434. The Rule 403 balance in *Ebens* differs from the one in this case not primarily because of the amount of danger of prejudice to the defendant from the evidence, but because of the vanishing probative value of the evidence, given the timing of the comments and the insufficient identification of the speaker in *Ebens*.

From the other two cases, Defendant Hazelwood draws the proposition that "[t]he most unfairly prejudicial and dangerous evidence in a trial is that of racial bias and prejudice." (Doc. 411 at 12–13 (citing *United States v. Doe*, 903 F.2d 16 (D.C. Cir. 1990) and *United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000)).) In each case, a court of appeals reversed a trial court's admission of racially biased evidence against the defendants. In *Doe*, in which two of the defendants were Jamaican, the government had introduced testimony about how Jamaicans generally had taken over the drug trade and what the typical methods of operation of Jamaican drug dealers were. *See Doe*, 903 F.2d at 17–18. In *Cabrera*, in which the defendants were Cuban, the government introduced repeated references to the defendants' national origin and what was allegedly typical of Cuban cocaine dealers. *See Cabrera*, 222 F.3d at 591–93. In each case, the appellate court employed strong language against allowing evidence that is prejudiced against a certain race or national origin to be brought to bear against a defendant of that race or national origin.[7] Neither case addressed evidence of a defendant's own racially biased remarks, however.

---

[7] *See, e.g.*, *Doe*, 903 F.2d at 21 ("[D]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice. . . . [W]e have engaged in unceasing efforts to eradicate racial prejudice from our criminal justice system. . . . [I]t is the jury that is a criminal defendant's fundamental protection of life and liberty against race or color prejudice.") (internal punctuation and citations omitted); *Cabrera*, 222 F.3d at 597 ("The fairness and integrity of criminal trials are at stake if we allow police officers to make generalizations about racial and

Defendant Hazelwood's arguments and authority against allowing racial prejudice in trials are eloquent, but they do not support his proposition: they do not show in what way the principles he describes would apply to a defendant seeking to prevent admission of evidence of his own racially prejudiced statements or conduct, rather than evidence that is racially prejudiced against him.

The evidence in question certainly carries a danger of unfair prejudice to Defendant Hazelwood. He is accordingly entitled to have the Court apply the balancing test of Rule 403 to see if the danger of the evidence substantially outweighs its probative value. The Court has done so, as explained in its oral ruling. The arguments and authorities in Defendant Hazelwood's motion to reconsider do not persuade the Court its original balancing under Rule 403 was incorrect.

### 2. Danger of Unfair Prejudice to Codefendants

Defendants argue any danger of prejudice to the Codefendants is unfair, because they did not introduce the evidence the Court held made evidence of the tapes relevant. The Court finds this argument unpersuasive for two related reasons.

First is the inapplicability of the authority Defendants cite on this point. In *United States v. White*, 887 F.2d 267 (D.C. Cir. 1989), one defendant in a fraud conspiracy introduced some exculpatory evidence: that his codefendant's lawyer had told him what they were doing was legal. The government in response introduced evidence that was directly inculpatory of his codefendant: that the codefendant's lawyer had later told the codefendant what they were doing could be illegal. That privileged communication would not normally have been admissible against the codefendant,

---

ethnic groups in order to obtain convictions. People cannot be tried on the basis of their ethnic backgrounds or national origin.").

14

and its admission required reversal of the codefendant's conviction. Similarly, in *United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995), a wife's diminished-capacity defense against tax-evasion charges involved putting in evidence of her codefendant husband's "adulterous, mentally abusive, and manipulating" character to blame him for the crime. The codefendant husband's conviction was reversed because this evidence, that was inculpatory as to him, would not have been admissible if he had been tried alone. And in *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court reversed a codefendant's conviction after the introduction of testimony about another defendant's confession, in which the allegedly confessing defendant said the two had committed the crime together.

In these cases, the evidence in question was only *introduced* because of another defendant, but the *content* was directly inculpatory of the codefendants. A limiting instruction was not enough to prevent prejudice under these circumstances. But in this case, the evidence introduced is not a confession by Defendant Hazelwood implicating Codefendants, or evidence of the Codefendants' bad character, or evidence that Codefendants were warned by counsel in a privileged communication about their actions. No matter how unpleasant is, it is inculpatory only as to Defendant Hazelwood.

This leads to the Court's second reason for finding Defendants' argument unpersuasive: the Court's instruction limiting the jury's permissible uses of the evidence. Here, the unusual nature of the evidence must be immediately apparent to the jury. The Court prepared a limiting instruction that clearly explains the reason why this unusual evidence is being admitted, the limited purpose for which it may be used as to Defendant Hazelwood, and that it must not be used at all against the Codefendants. The Court is confident the jury is capable of understanding and

following the Court's instruction on both points. And the Court is confident it will do so. *See United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011); *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000).

Finally, Defendants argue the Court's description of the evidence in its oral ruling—that the evidence, if known, could bring the company down through loss of customers, boycotts, and protests—is irreconcilable with the Court's conclusion that the danger of unfair prejudice does not substantially outweigh its probative value. They argue the jury, similar to the described potential reaction of the public, will be so horrified that it will make its decisions on an improper basis. But the Court cannot instruct the public on how to react to this information. The public at large is free to think, feel, do, or say anything within the bounds of the law in reaction to it. The jury, however, is obligated to follow the Court's instructions. The unusual nature of the evidence must be immediately apparent to the jury. The Court prepared a limiting instruction that clearly explains the reason why this unusual evidence is being admitted, the limited purpose for which it may be used as to Defendant Hazelwood, and that it must not be used at all against the Codefendants. The Court is confident the jury is capable of understanding and following the Court's instruction. The Court is confident that it will do so.

### 3. Confusing the Issues, Misleading the Jury, and Wasting Time

Defendants argue the danger of confusing the issues, misleading the jury, delaying the trial, and wasting time mitigate against admission of the evidence. They argue the evidence would "require the jury to reach consensus on the standards to which companies should be held for the private offensive speech of their executives, and then determine whether [Defendant Hazelwood's] conduct meets that standard." (Doc. 401 at 15.) They argue these are important societal questions,

16

but not relevant to the guilt or innocence of Defendants, and that they are especially confusing in this multi-defendant case.

The Court disagrees. The jury will not have to reach consensus on company standards as suggested; they will need to decide whether the evidence in question affects their assessment of a particular defense of Defendant Hazelwood. In addition, the jury has the Court's clear instruction of the way in which the evidence became relevant, the only permissible context in which they may consider the evidence, and the fact that it does not apply to the Codefendants at all. These dangers do not substantially outweigh the probative value of the evidence.

Defendants also argue the evidence will prolong an already lengthy trial. This concern does not substantially outweigh the probative value of the evidence.

### E. Alternative Methods of Introducing the Evidence

The Codefendants ask the Court in the alternative to limit the evidence. (Doc. 401 at 20–22.) Defendant Hazelwood does not join this part of the Codefendants' motion. (*See* Doc. 411 at 3 n.2.)

The Court agrees with the Government that it is inappropriate to allow the Codefendants, without Defendant Hazelwood's agreement, to control the method in which evidence that relates solely to him is presented.

More importantly, because the Court sees no error in allowing admission of the evidence, there is no basis on which to consider alternatives to its admission.

Even if alternatives were called for, the Codefendants' specific proposals are not appropriate. Their first request is for the Court to exclude retroactively the evidence that was found to have opened the door to the government's evidence. Defendant Hazelwood has not asked

to be allowed to withdraw this evidence. In addition, this alternative would create more problems for the jury than it would solve. As striking as the Government's evidence is, the Court concludes the jury will be able to understand the rationale of and the Court's limiting instruction on this matter more readily than it would be able to follow an out-of-the-blue instruction that it must wipe away all consideration of the potentially powerful argument that Defendant Hazelwood was too good a businessman to engage in such dumb fraudulent activities, all for a reason the Court would not be able to explain to them. Their other suggested alternative is to have a witness describe the conversations or to introduce only parts of the recordings. A description would leave the jury unsure of how to use the evidence in considering Defendant Hazelwood's relevant defense. It would also risk harming Defendant Hazelwood by leaving the jury to wonder if the evidence was worse than it is. Finally, admitting only part of the evidence would reduce its probative value, which unfortunately exists only because of the extreme contents of the recordings.

### III. CONCLUSION

For the foregoing reasons, the Court has **DENIED** the Codefendants' joint motion to reconsider (Doc. 401) and Defendant Hazelwood's motion to reconsider (Doc. 411).

**ENTER:**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**