```
 1              IN THE UNITED STATES DISTRICT COURT

 2               EASTERN DISTRICT OF TENNESSEE

 3                        AT KNOXVILLE
       --------------------------------------------------------
 4                                    :
       UNITED STATES OF AMERICA       :
 5                                    :
                 Plaintiff,           :
 6                                    :
       v.                             :          3:16-CR-20
 7                                    :
       MARK HAZELWOOD,                :
 8     SCOTT WOMBOLD,                 :
       HEATHER JONES, and             :
 9     KAREN MANN,                    :
                                      :
10               Defendants.          :
       --------------------------------------------------------
11                              Chattanooga, Tennessee
                                February 12, 2018
12

13          BEFORE:  THE HONORABLE CURTIS L. COLLIER
                     UNITED STATES DISTRICT JUDGE
14


15


16     APPEARANCES:

17                     FOR THE PLAINTIFF:

18                     F. M. HAMILTON, III
                       DAVID P. LEWEN, JR.
19                     Assistant United States Attorneys
                       U. S. Department of Justice
20                     Office of the United States Attorney
                       800 Market Street, Suite 211
21                     Knoxville, Tennessee  37902

22


23


24                         JURY TRIAL
                       TWENTY-FOURTH DAY OF TRIAL
25
```

1    APPEARANCES:   (Continuing)

2

3                      FOR DEFENDANT MARK HAZELWOOD:

4                      RUSSELL HARDIN, JR.
                       ANTHONY DOUGLAS DRUMHELLER
5                      JENNIFER E. BREVORKA
                       Rusty Hardin & Associates LLP
6                      1401 McKinney Street, Suite 2250
                       Houston, Texas  77010

7

8

9                      FOR DEFENDANT SCOTT WOMBOLD:

10                     JOHN E. KELLY
                       ROBERT K. PLATT
11                     Bass, Berry & Sims PLC
                       1201 Pennsylvania Avenue NW
12                     Suite 300
                       Washington, D. C.  20004

13

14                     ELI J. RICHARDSON
                       DAVID RIVERA
15                     Bass, Berry & Sims PLC
                       The Pinnacle at Symphony Place
16                     150 3rd Avenue South
                       Suite 2800
17                     Nashville, Tennessee  37201

18                     ANNIE TAUER CHRISTOFF
                       Bass, Berry & Sims PLC
19                     100 Peabody Place
                       Suite 1300
20                     Memphis, Tennessee  38103

21

22

23

24

25

1   <u>APPEARANCES</u>:  (Continuing)

2

3             <u>FOR DEFENDANT HEATHER JONES</u>:

4             BENJAMIN J. VERNIA
              ANDREW K. MURRAY
5             The Vernia Law Firm
              1455 Pennsylvania Avenue NW
6             Suite 400
              Washington, D. C.  20004
7

              CULLEN MICHAEL WOJCIK
8             Law Office of Cullen M. Wojcik
              422 S. Gay Street
9             Suite 302
              Knoxville, Tennessee  37902
10

11

12            <u>FOR DEFENDANT KAREN MANN</u>:

13            JONATHAN D. COOPER
              Whitt, Cooper, Trant & Hedrick
14            607 Market Street
              Suite 1100
15            Knoxville, Tennessee  37902

16            SARA E. COMPHER-RICE
              Oberman & Rice
17            550 West Main Avenue
              NationsBank Building
18            Suite 950
              Knoxville, Tennessee  37902-2567
19

20

21                       - - -

22

23

24

25

1          (Recess for deliberations.)

2          (The jury entered the courtroom, and the proceedings

3          continued, as follows:)

4          THE COURT:  Ladies and gentlemen, the Court notes

5    it's about five minutes after noontime, and that means that

6    it's your lunchtime.  Whenever you leave, it's necessary for

7    the Court to convene court and officially excuse you, for

8    lunch, or for breaks, or for the evening.  So that's what we're

9    going to do now.

10          We did receive your communication.  And if you have

11   not already received 11 additional copies of the indictment,

12   then we'll make sure that that is done.

13          The lawyers are looking at the second question that

14   you asked, and they will be getting with me as soon as

15   possible.  We'll try to get you an answer to that soon.

16          So you are released for lunch.  Why don't you plan

17   on taking about an hour or so.  Probably some of you will

18   decide to each lunch together.  And while you eat lunch

19   together, do not discuss the case.  Find something else to

20   talk about.  It's important that everyone hear what everyone

21   else has to say about the case.  If some of you start

22   discussing the case, you'll start forming some preliminary

23   conclusions, and that's not fair to the people who did not

24   have a chance to participate in that particular conversation.

25          When you come back from lunch, once the 12th person

1   has arrived, you can begin deliberating again.  Before that

2   12th person arrives, though, make sure you do not discuss the

3   case, for the same reasons.  If you start discussing the case,

4   you'll form some preliminary opinions or conclusions, and

5   that's not fair to the jurors who were not there to hear what

6   was said.  So you are now excused for lunch.  Come back in

7   about an hour, and you can begin deliberating again when the

8   12th person has arrived.  So the jury is now excused for

9   lunch.

10              (The jury exited the courtroom, and the proceedings

11              continued as follows:)

12              THE COURT:  Please be seated.

13              This is the first time that we've convened court

14   since last week.  And as we discussed last week, Mr. Wombold

15   is attending the funeral of his sister today.  So he's not

16   here.  We are not discussing anything of a factual matter.  So

17   I'm not sure that there is a requirement that he be here.  But

18   just for the sake of the record, I would like to get a

19   statement on behalf of all counsel that his presence can be

20   waived.

21              MR. KELLY:  Yes, Your Honor, we would agree with

22   that, pursuant to our discussion last week.  And we appreciate

23   the Court accommodating Mr. Wombold.

24              MR. VERNIA:  And, Your Honor, we agree with that, and

25   also note for the record that Ms. Jones, with the Court's

1   permission, is also absent today.

2           MR. COOPER:  Your Honor, we don't object to their

3   absence.

4           MR. DRUMHELLER:  No objection from Mr. Hazelwood,

5   Your Honor.

6           THE COURT:  Government?

7           MR. HAMILTON:  We have no objection.

8           THE COURT:  Okay.  I anticipate that they're going to

9   take all today.  I also expect, though, we'll be getting more

10  questions in the afternoon, especially once that first question

11  is answered.  We've received a response from Mr. Hazelwood.

12  And if other counsel give the benefit of their thoughts on it,

13  also, once I receive all your input, the Court will endeavor to

14  combine that into an answer that we can provide to the Court --

15  to the jury, we will circulate that again; and once we get your

16  comments, the Court will try to decide what's the appropriate

17  response to make.

18          MR. VERNIA:  Your Honor, do you want to hear them

19  now, or do you want to receive them in writing?

20          THE COURT:  No, why don't you do it in writing.

21  Okay?

22          Okay.  Is there anything--  Yes, sir.

23          MR. WOJCIK:  One other matter, Your Honor.  Just in

24  light of the defendants' joint objection initially to the

25  indictment being sent back to the jury, and then their request

1    for additional copies, we would simply request maybe a

2    one-sentence reminder be sent back with the indictments that

3    the indictments are not evidence themselves, they're merely

4    allegations.

5           THE COURT:  Any objection to that?

6           MR. HAMILTON:  We think that's already been

7    adequately covered by the instructions from the Court, and

8    would highlight something they -- I assume they have a copy of

9    the instructions back there.

10          THE COURTROOM DEPUTY:  (Moving head up and down.)

11          THE COURT:  Yeah, I don't see any harm in doing that.

12   So the Court will include a communication to the effect that,

13   "You requested additional copies of the indictment.  Here are

14   the additional copies.  Remember the earlier instruction that

15   the indictment is not evidence."

16          MR. WOJCIK:  That's fine.  Thank you, Your Honor.

17          THE COURT:  That's fine?  Okay.  Anything further?

18          (Brief pause.)

19          MR. DRUMHELLER:  Your Honor, I guess just a

20   logistical question.  I apologize that we keep coming to the

21   Court to ask this question, but I want to make sure for

22   purposes of predictability with our client and the rest of the

23   team, do we need to be here when the jury returns from lunch in

24   an hour, or just again at the end of the day?

25          THE COURT:  No, there is no requirement that we

1  convene court when they come back; it is only when they are

2  being dismissed.  I think that's mostly for the record, so the

3  record can show when they're not deliberating.  I think the

4  assumption is that other than what's said, they are

5  deliberating.  So the next time definitely will be about 5:00.

6  If there is another question, though, it may be necessary to

7  convene court, especially if there is some disagreement about

8  the communication that would go back.

9            MR. DRUMHELLER:  Thank you, Your Honor.

10           THE COURT:  Ms. Lewis.

11           (Luncheon recess.)

12           (Recess for deliberations.)

13           (The proceedings were held outside the presence of

14           the jury, as follows:)

15           THE COURT:  When we broke at lunch, the Court

16  announced that it would like to get a response from counsel

17  concerning the communication from the jury.  The Court has

18  received those communications now.  The Court has studied and

19  considered the responses from counsel, and the Court has

20  proposed an instruction the Court has distributed to counsel.

21           The first paragraph of the communication concerns

22  the request for copies of the indictment, and the Court

23  indicates that those copies will be provided.  It also tells

24  the jury that the indictment is not evidence of guilt, it is

25  just the formal way that the defendants are told the crimes

1   they're accused of committing.

2          The remainder of the proposed instruction concerns

3   the jury's request for a definition of voluntary.  And what

4   the Court does is to list the places in the instruction where

5   the word "voluntarily" is used, and then it tells them that

6   the word voluntary does not have a legal or technical meaning,

7   it should be considered in the way that they would use the

8   word in their common conversation, and then the Court provides

9   a dictionary definition, which is from *Webster's Third New*

10  *International Dictionary, Unabridged*.

11         Then the next paragraph connects the word with the

12  charge concerning the conspiracy, and informs the jury again

13  that a defendant must know the conspiracy's main purpose and

14  then the defendant must voluntarily join the conspiracy with

15  intent to help advance or achieve the conspiracy's goal or

16  goals.

17         Then, lastly, the draft instructs the jury that they

18  should consider all the instructions as a whole, and should

19  not focus on one particular part of the instruction or

20  anything in the instruction in isolation, that the best and

21  most accurate understanding comes from looking at the

22  instructions as a whole.

23         Mr. Hamilton, does the government have a position

24  with respect to the Court's draft?

25         MR. HAMILTON:  The United States has no objection to

1   the proposed draft from the Court.

2           THE COURT:  Thank you.

3           Mr. Hazelwood?

4           MR. HARDIN:  Your Honor, we still would hope that the

5   word -- the Court would add the word <u>intentional</u>.  That's our

6   only--  The language the Court has proposed, we don't object

7   to; but if we'd look at the second page, where it says -- I

8   guess it's the sixth line, "The instructions inform you that a

9   defendant must know of the conspiracy's main purpose and then

10  the defendant must --" and we would hope that <u>intentionally</u> --

11  <u>voluntarily</u> would be equated with <u>intentionally</u>, based on the

12  Tennessee District Court decision that we cited.

13          THE COURT:  So you want to strike out the word

14  "voluntarily" and put in <u>intentionally</u> there?

15          MR. HARDIN:  Yes, sir, or to -- I want -- if there is

16  a definition -- if the Court would put <u>intentionally</u> somewhere

17  in the "voluntarily" on the previous page, that would be fine.

18  We're still just asking that it be equated with <u>intentionally</u>.

19          MR. HAMILTON:  Your Honor, may the government be

20  heard on that?

21          THE COURT:  Okay.

22          MR. HAMILTON:  We responded to that in our response

23  to the Court where we addressed this argument that has been

24  raised by both Mr. Wombold as well as Mr. Hazelwood asking for

25  <u>intentionality</u> to be expressed as part of the definition of

1    voluntariness.  And as we pointed out, the Sixth Circuit has

2    already addressed this in the pattern jury instruction by

3    choosing to put "knowingly and voluntarily" rather than

4    knowingly and intentionally.  And that district court case came

5    before Dharma, which is the case that the United States cited,

6    which is also in the Sixth Circuit pattern jury instructions

7    for that particular charge.

8              THE COURT:  Is that correct, Mr. Hardin, that the

9    pattern instruction has taken out the word intentional with

10   respect to conspiracy?

11             MR. HARDIN:  I can't answer that, Your Honor.  I

12   don't know that.

13             THE COURT:  Well, let me--  I don't remember, either.

14   Let me look at that, then, and I will see.  If it is in the

15   pattern instruction, I will include it.

16             MR. HARDIN:  Thank you.

17             THE COURT:  If it's not, I will not.

18             MR. HARDIN:  Thank you.

19             THE COURT:  Mr. Wombold?

20             MR. RICHARDSON:  Thank you, Your Honor.

21             We agree, and are fine, with most of the proposed

22   language.  Did have a couple of concerns.  One is the notion,

23   at the top of the second page, after the Court has dealt with

24   the notion of voluntarily, which -- which we have no objection

25   to, then the Court proceeds to define the word voluntary.

1    And before addressing what a good definition of

2 voluntary might be, I would note that, of course, that --

3 unless I'm much mistaken, the word voluntary doesn't appear in

4 the instructions, the word "voluntarily" does.  And it does

5 raise the question of whether there needs to be a definition

6 of voluntary.

7    But I would say this.  In the next paragraph,

8 "With --" the language is -- with respect to Count 1, it says,

9 "The word was used in connection with the requirement that a

10 person knowingly join and participate in a conspiracy."  I

11 believe there that the reference there is meant to be to the

12 word "voluntarily," but the word voluntary was used

13 immediately above.  So I wonder if there might be some

14 confusion, just the way it's written, about whether we're

15 talking about the word voluntarily or talking about the word

16 voluntary.

17    THE COURT:  Why don't we just stick voluntarily in

18 after "word," then.

19    MR. RICHARDSON:  That would certainly work there, to

20 clarify that; I think that is correct, Your Honor.

21    Then that gets us back to the notion for a

22 definition of the word voluntary.  We think that if the Court

23 is inclined to provide a definition, that although the Court

24 has provided one definition from a reputable source, there

25 certainly are other definitions.  We used the one from the

1  recent --

2    THE COURT:  Are there better dictionaries than

3  *Webster's*?  I thought *Webster's* was the gold standard.

4    MR. RICHARDSON:  Well, it is certainly an excellent

5  one.  There are other ones as well.  I did read an article once

6  saying that there are certain people that don't happen to like

7  the way *Webster's* has done things over the years, but I can't

8  argue with the Court's identification of it as a reputable

9  source.

10    I would note that *Black's Law Dictionary*, of course,

11  is also, in legal circles, I think, a reputable source, and

12  therefore we had proposed a definition from the Tenth Edition

13  of *Black's Law Dictionary*.

14    THE COURT:  I recognize *Black's*.  Since we're telling

15  the jury that the word is used in the ordinary and common

16  meaning, I think if a lay person was going to refer to a

17  dictionary, they would refer to *Webster's* or one of the more

18  common dictionaries; I'm not sure they would go to *Black's*,

19  though.  I think we use *Black's*, but we're kind of a

20  specialized or technical...

21    MR. RICHARDSON:  That is true, Your Honor.  They may

22  not reach, as lay persons, for *Black's Law Dictionary*.  I do

23  think that the definition that *Black's* uses, though, does --

24  does happen to be as consistent with a commonsense notion as

25  would *Webster's*; but that's -- my personal opinion is that if a

1   juror was given the *Black's Law Dictionary* instruction, that

2   they would -- they would recognize it, it would comport with

3   their understanding.  We think it might be a little more

4   descriptive and therefore more appropriate.

5           THE COURT:  Is there anything in that definition, the

6   definition out of *Black's*, that's not covered by *Webster's*?

7           MR. RICHARDSON:  Your Honor, I think it has the

8   notion of doing things by design or intention that may be a

9   little bit more specific than -- than what *Webster's* is saying

10  in focusing on -- on choice, things coming from one's choice or

11  from one's will, so, in that sense, maybe a little more

12  specific, maybe a little more descriptive, in that sense maybe

13  a little more helpful.  That's not to say that there is

14  anything improper at all about the *Webster's* version, but we do

15  think this would be a good alternative.

16          I think, the other thing, if I look at the

17  *Merriam-Webster* definition as another possibility that we

18  happened to run just before coming over here, the notions that

19  were in the Court's proposed definition are in

20  *Merriam-Webster's* version, but it also provides a couple of

21  alternative definitions that are not included in what the

22  Court was saying.

23          So if we look at *Merriam-Webster's* definition,

24  Definition Number 1 is "proceeding from the will or from one's

25  own choice or consent," which definitely mirrors what the

1    Court has in the proposed instructions, but then it's got

2    second and third definitions, the second one being

3    "unconstrained by interference," and the third is "done by

4    design or intention."  Those also could be, I think, helpful

5    notions.  The third one matches what we were saying about

6    *Black's Law Dictionary*.  And I suppose that my point, in that

7    sense, is, whereas the *Webster* definition is certainly an

8    appropriate one, there are also additional definitions from

9    other sources that also made sense and that are also, I think,

10   reputable definitions.

11        So I can't say that the Court's definition is

12   incorrect in any way.  We would propose *Black's Law*

13   *Dictionary*, though, as one that may be a little more helpful,

14   a little more illustrative for the jury.  And, alternatively,

15   we don't disagree with counsel for Mark Hazelwood in their

16   proposed definition.

17        THE COURT:  Thank you.

18        MR. RICHARDSON:  Thank you.

19        MR. VERNIA:  Good afternoon, Your Honor.

20        THE COURT:  Good afternoon.

21        MR. VERNIA:  Very briefly.  On behalf of Heather

22   Jones, we have no objection to the majority of the instruction;

23   and it does incorporate, I think, our concerns, for the most

24   part.  I'm speaking only with respect to the last sentence of

25   the second-to-last paragraph, and actually the last few words,

1   where it says "to help advance or achieve the conspiracy's goal
2   or goals." And my only concern about that, sir, is, I think
3   that we had submitted "goal," singular -- I'm sorry, "goals,"
4   plural. And the reason for that was, in part, because of
5   *United States vs. LaPointe*, 690 F.3d 434, 442, Sixth Circuit
6   decision in 2012, which essentially dealt with a situation
7   where there are multiple objectives of a conspiracy.
8           And I guess my only concern is, you know, there are
9   a number of goals of the conspiracy listed in the indictment
10  which, you know, were certainly not criminal acts, you know,
11  or were not criminal objectives, you know, for example,
12  increasing fuel sales. And I think the language "goal or
13  goals" may permit the jury to conclude that if Ms. Jones
14  intended to help increase fuel sales, for example, for a
15  noncriminal purpose, that may be sufficient to find her
16  guilty. So my only suggestion, Your Honor, would be to strike
17  the "goal or" from that last sentence. Thank you, sir.
18          THE COURT: And what would we substitute there? I
19  don't know it would be a sentence if we took that out. We
20  would have to put something in place of "goal or goals."
21          MR. VERNIA: I think it would be fine if it was "to
22  help advance or achieve the conspiracy's goals," plural.
23          THE COURT: Plural?
24          MR. VERNIA: Yes, sir.
25          THE COURT: Mr. Hamilton, any objection?

1           MR. HAMILTON:  No, sir, not to that part.

2           THE COURT:  Okay.

3           MR. HAMILTON:  May I add on the point I had about the

4 pattern jury instructions, just to make -- to advise the Court

5 of what the pattern jury instruction said?  I want to make

6 sure--  Because the Court didn't have the instructions in front

7 of it, may I just add a few comments to that, please?

8           THE COURT:  Yes.

9           MR. HAMILTON:  I looked up the -- while I was sitting

10 here, I looked that up, to make sure.  And so here is what the

11 committee says, is that the committee recognized litigation and

12 the case law regarding the use of the term willfulness, and

13 what the -- what the committee decided was--  Excuse me.  I got

14 the wrong document.  Here we are.  It says that "to avoid

15 confusion, the committee has substituted the word voluntarily

16 for willfully."  So -- and when you look at the litigation

17 surrounding that, particularly -- and I said -- I think I said

18 *Dharma*, *Dharma*.  It's actually *Damra*, *United States v. Damra*.

19 It's a 2010 Sixth Circuit decision that followed the district

20 court's decision that was cited by Mr. Hazelwood.  He pointed

21 out -- in that decision it pointed out how that willfulness is

22 larger than voluntariness, and it signaled that voluntariness

23 does not necessarily always include willfulness and

24 intentionality.

25           And you can -- and when you look at the pattern jury

instructions and you look at the commentary related to it, it

is clear from the use notes that a great deal of thought has

been given to how to formulate this instruction and that

particular element, particularly the phrase "to avoid

confusion, the committee has substituted the word voluntary

for willfully."

And it's based on that premise, that analysis in the

use notes, that the United States submits that staying tied to

the pattern jury instructions is the appropriate thing to do

in this context.

MR. HARDIN:  May I be heard briefly?

THE COURT:  You may.

MR. HARDIN:  That's what, I mean, I didn't know.  I

wasn't aware that there had been a definition of voluntarily

that was taken out.  What I understand the government to be

saying now I have no quarrel with, and that is that willful is

different than intentional and is different than voluntarily.

And so as to the--  The process he's describing there I don't

disagree with.  My own view——and I believe I'm right about

this——is that there is no pattern jury charge, in the past or

future, definition of voluntarily.

So you're writing on a clean slate except for those

cases in which sometimes the court has said——and we just cited

a district court opinion, not a court of appeals opinion——that

it can mean intentional.  I am only asking that there be one

1  of the definitions in the -- I didn't bring it back up, but I

2  can -- on the top paragraph on the second page, that as you

3  describe what it can be, you give several different meanings,

4  and we're only asking that one of those meanings can be

5  intentional.

6       THE COURT:  As the Court said earlier, it will look

7  at that.  We'll look at the pattern instructions.

8  *Merriam-Webster* and other dictionaries may do this, also, but

9  what *Webster's* does is, has a list of definitions, and the

10 first definition is the most generally recognized, the most

11 common understanding of the word; the second definition is the

12 next most commonly understood; and it goes down until it gets

13 to very unusual or very specific definitions.

14      And what I try to do is to limit myself either to

15 the most common one or the definition that might apply in the

16 particular circumstances.  And I think here it's probably

17 the-most-commonly-understood-by-the-American-people

18 definition.  So there are -- in *Webster's*, I'm looking back,

19 there must have been eight or nine definitions.  And the Court

20 confined itself to the first one; the Court did not go to the

21 second, third, fourth, or fifth.

22      MR. HARDIN:  Thank you, Judge.

23      MR. COOPER:  Your Honor, on behalf of Karen Mann, I

24 would just note that it appears that the jury's question about

25 the definition of voluntary brings into sharp focus the

1    objection that we lodged regarding the second full paragraph on

2    Page 24 with regard to the defendant's connection to the

3    conspiracy.  And so we have no objection to the proposed

4    language by the Court.  We accept that instruction.  But we

5    wish to remain -- or wish to renew on the record our original

6    objection to that paragraph on Page 24.  Thank you.

7              THE COURT:  Thank you.

8              The Court appreciates the time and the attention

9    given to this matter.  The Court has agreed to put the word

10   voluntary in the first full paragraph between the word "word"

11   and the word "was."  And then at the end of that paragraph,

12   the Court has agreed to take out the words "goal or."

13             And then with respect to the definition, the Court

14   has agreed to look at the pattern instructions to see how it

15   deals with the word -- or the concept of intent.  And the

16   Court will take another look at *Black's* definition.  And I

17   think that the definition in *Merriam-Webster's* that includes

18   intent is also one of the lesser definitions provided in

19   *Webster's*, which is the dictionary that the Court used.

20             Once the Court has done that, the Court will make a

21   decision, the Court will include that in the communication,

22   recirculate that to the parties.  If the -- if the objection

23   is already stated, then there is no need to state it again,

24   it's already preserved.  If there is a new objection, then let

25   the Court know, and we'll reconvene and discuss it.  If there

1    are no new objections, then the Court will affix its signature

2    to the instruction and send it back to the jury.

3           We're going to let the jury go at 5:00.  So that's

4    about 35, 40 minutes from now.  So we'll reconvene at 5:00,

5    unless we reconvene earlier, and let the jury go for the day.

6           Mr. Hamilton?

7           MR. HAMILTON:  May I just clarify one thing, Your

8    Honor?  When you were going over what the Court intended to do

9    to address the question, I heard the Court say "the definition

10   of intent," and I just --

11          THE COURT:  I think one of the definitions of

12   voluntarily includes something like "intentionally done," or

13   "done with intent," something like that.

14          MR. HAMILTON:  Yes, sir.

15          THE COURT:  That's in *Black's* dictionary, I take it.

16          MR. HARDIN:  That's correct.

17          THE COURT:  And perhaps it's one of the definitions

18   included in *Merriam-Webster's*.

19          MR. HAMILTON:  Thank you, Your Honor, for helping to

20   clarify that.  I just wanted to make sure if there were any

21   questions about what the Court was expressing on the record, it

22   was made clear.  That's what I thought.  I just wanted to make

23   sure.  Thank you.

24          THE COURT:  Okay.

25          MR. HAMILTON:  And if I could just make one more

1   observation as relates to the *Black's Law Dictionary* point made

2   by counsel for Mr. Wombold, it's just to reiterate what we made

3   in our submission by way of e-mail to the Court, that the

4   "unconstrained" portion of that would, in fact, undermine the

5   portion that's on Page 24 as it relates to -- that following

6   the direction of an employee -- of a supervisor does not make

7   something involuntary.  That was the last observation from the

8   government.  Thank you, Your Honor.

9           THE COURT:  Thank you.

10          Ms. Lewis.

11          (Recess for deliberations.)

12          THE COURT:  Ladies and gentlemen, it's about six or

13  seven minutes after 5:00, so we're running a little bit over

14  time.  I'm going to let you go.  I'm going to ask you to come

15  back tomorrow.

16          Again, you'll remember that I tell you this each

17  time.  While you're away from court, do not discuss the case

18  with anyone, do not allow anyone to discuss the case with you,

19  don't watch anything on television, listen to anything on the

20  radio, or read anything in the papers or on the Internet

21  concerning this case.

22          Come back tomorrow morning at 9:00, and, just as you

23  did when you came back from lunch, go back to the jury

24  deliberation room.  Do not begin deliberating, though, until

25  the 12th person has arrived.  Once that person has arrived,

1  you can start deliberating again.  Be safe, eat a good dinner,

2  get a good night's sheep, and we'll see you tomorrow morning

3  at 9:00.

4          Ms. Lewis.

5          (Evening recess.)