UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:16-CR-20 |
| | ) | (Collier/Guyton) |
| MARK HAZELWOOD, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MOTION FOR EVIDENTIARY HEARING AND ORAL ARGUMENT ON MARK HAZELWOOD'S MOTION FOR NEW TRIAL

With this Court's permission, we filed a Motion for a New Trial on June 25, 2018 (Doc. 566). On July 10, 2018, we filed a Motion for Leave to File a Supplemental Brief (Doc. 579) and have since filed three briefs in further support of that motion (Doc. 587, 605, and 656).

According to the Court's preference regarding oral arguments on motions, "[i]f a party believes oral argument would be of particular benefit on a motion, the party may file a separate motion that explains why oral argument should be scheduled." *Judicial Preferences*, http://www.tned.uscourts.gov/content/curtis-l-collier-senior-united-states-district-judge. Pursuant to this rule, we respectfully move the Court to hold oral argument on Hazelwood's motion for new trial, and we also respectfully move for a hearing on that motion.

To prevail on a motion for hearing, the moving party must establish he has a plausible claim. *Robinson v. United States*, 2009 WL 3048459, at *10 (E.D. Tenn. Sept. 17, 2009) (citing *United States v. Tarricone*, 996 F.2d 1414, 1416 (2d. Cir. 1993) (remanding case for an evidentiary hearing on claim of ineffective assistance of counsel); *see also Levinson v. United States*, 32 F.2d 449 (6th Cir. 1929) ("Allegations of misconduct by public officers, though denied, affected public

1

interest and required remand for hearing on motion for new trial."), *United States v. Matos*, 905 F.2d 30, 34 (2d Cir. 1990) (remanding case, "in the interest of justice," for an evidentiary hearing to develop a factual record on the issue of ineffective assistance).[1]

Here, Hazelwood's post-trial motions set forth viable claims of a miscarriage of justice, ineffective assistance of counsel, and prosecutorial misconduct. These claims all cast serious doubt on the validity of Hazelwood's convictions. As the Court is aware, this case involves a complex record; an evidentiary hearing and oral argument will aid the Court by allowing the parties to respond to any inquiries the Court may have and explore the serious issues raised in Hazelwood's Rule 33 motion. Further, additional argument is necessary because Hazelwood has not had the opportunity to fully brief the issues.

Notably, on Count Fourteen, one of the government's two alternative theories presented to the jury was based on Sherry Blake's false or mistaken testimony—that Hazelwood called Blake on June 9, 2014, because he knew Pilot's outside investigators were scheduled to interview Blake two days later on June 11, 2014. In fact, new exculpatory evidence shows that Blake created a calendar entry in Hazelwood's calendar for an interview on June 9, 2014, with Pilot's outside investigators, a subject about which we believe we should have the opportunity to examine Blake. Thus, even assuming Hazelwood noticed the calendar entry (a fact never proved by the government at trial), he would have been calling Blake too late to influence her statements. We hope the Court recognizes, and takes umbrage to, the government's (a) failure to accept responsibility for advancing this theory as a ground for conviction (*see* Resp. in Opp'n to Def. Hazelwood's Rule

---

[1] We will not misuse the sentencing hearing, scheduled for September 26, 2018, to develop any proof with respect to our motion for a new trial. We expect the government will likewise limit its arguments and we hope the Court will not allow the government to question witnesses at sentencing to rebut our Rule 33 arguments.

2

33 Mot. for New Trial (Doc. 578) at 20 (asserting, for the first time, that "the [trial] testimony made clear that Hazelwood's June 9, 2014, phone call was *not* prompted by his knowledge that Steptoe wished to interview Blake.") (emphasis added); and (b) weak claim that the jury was entitled to assume that some other calendar entry existed and was available to Hazelwood, showing that the interview date was on June 11th instead of June 9th. (*see id.* at 23) (acknowledging "[t]he government is not now, nor has it ever been, in possession of the hard-copy calendar that Hazelwood took with him when he left Pilot" but arguing "the jury was free to credit Blake's testimony that…the interview date was on the paper calendar that Hazelwood took with him."[2] Justice Sutherland has said, "[a prosecutor] may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 79, 88 (1935). Here, the government is acting neither fairly nor appropriately in the arguments they advance.

Moreover, we have illustrated that the government's bribery theory was utterly unfounded, as Hazelwood made the decision to gift $20,000 to Blake before knowing she would be interviewed by Pilot's counsel. The government retorts that "[a]t no time did the government even suggest that the Hazelwoods' $20,000 gift in April 2014 was a 'bribe'" and that the evidence of the $20,000 gift was offered "solely to provide context for Blake's testimony that she felt 'used and betrayed.'" Resp. in Opp'n to Def. Hazelwood's Rule 33 Mot. for New Trial (Doc. 578) at 20. But these

---

[2] In addition, the government mistakenly argued that Blake testified she told Hazelwood that her Steptoe interview was on June 11, 2014. *Id.* But Blake only testified that, in April 2014, she placed the Steptoe interview in Hazelwood's calendar and "told Mark that I would be out of the office that day and that it was put on his calendar." 1/29/18 Tr. at 275:15–20. "That day" refers to the day on which the interview was placed in Hazelwood's calendar—June 9th, not June 11th.

3

claims ring hollow for three reasons. First, they are fundamentally at odds with what the government told the Court at trial. During redirect examination of Blake, the government represented that it was attempting "to establish the potential connection between [what Blake told investigators about Hazelwood's review of trip reports] and the payments in April of 2014." 1/29/18 Tr. at 273:5–13. Second, the trial record taken as a whole made clear to the jury that the government portrayed the payment as a bribe. The government, mistakenly, connected the timing of the payment to the call between Hazelwood and Blake, focused on the size of the payment, and focused on the fact that the payment was "different" and "unique" because the payment was divided into two checks, one of which came from Mrs. Hazelwood. *See* 1/29/18 Tr. at 148:2–8, 272:6–17; 2/5/18 Tr. at 179:1–22. None of these issues has any bearing on Blake's alleged feeling of "betrayal." Third, providing "context" for Blake's alleged feelings of betrayal is neither a relevant nor admissible purpose, and the government never advanced that purpose to the Court or to the jury in any event. The Court should see it for what it is: an after-the-fact justification, intended to protect a wrongful conviction. These serious issues with the witness tampering conviction call into question Hazelwood's convictions on all other counts due to a prejudicial spillover effect, as the jury easily could have understood this evidence to show Hazelwood's consciousness of guilt with respect to the other counts of the indictment.

On Count Eight, we have demonstrated that Hazelwood never intended to commit fraud by implementing differential pricing, which is a wholly legitimate practice. Among other proof, we have shown that the government truncated the critical recording on this count, eliminating a statement from Hazelwood that suggests he believed differential pricing was fair to customers. We doubt the Court is so naïve to believe this was accidental—it was clearly a tactical decision, which the defense team utterly missed. In fairness, we should have the opportunity to examine the

4

federal agent or prosecutor who made the decision to truncate the recording. And, again, rather than accepting responsibility for its actions—and explaining why it withheld a critical portion of the recording from the jury—the government offers after-the-fact justifications, claiming that the words mean something different than their obvious and plain meaning. After all, if, as the government argues, the omitted portion of the tape were actually incriminating—contrary to the plain meaning of the words spoken by Hazelwood—it begs the question as to why the government decided to exclude that portion from the trial exhibit. The government's silence on this point speaks volumes.

On Count One, we have provided reliable, forensic support for Hazelwood's argument that he was not, or very rarely, reviewing trip reports, thus undercutting the government's assertion to the jury that Hazelwood learned of cheating from those reports. The government—without offering the forensic evidence in its possession, which shows that Hazelwood viewed *none* of the trip reports with references to fraudulent conduct from his Dropbox account—sought repeatedly to leave the impression that Hazelwood was closely reviewing those reports. Moreover, we have now confirmed that—even though the government directed Pilot to turn over all exculpatory evidence to the defense (an outsourcing of its *Brady* obligations that we believe is inappropriate and, if given the opportunity, would be prepared to brief)—Pilot never disclosed the event/user logs from Hazelwood's Dropbox account. That the event/user logs were never disclosed is not only important on Count One, but also on Count Fourteen, as the logs would show Hazelwood was actually being truthful with Blake when he said he was not reading the reports. These serious issues are deserving of a full evidentiary hearing, including testimony from our expert and from Pilot's head of IT, who would have knowledge of the Dropbox event/user logs.

The problems cited above are only examples of the numerous issues raised in Hazelwood's post-trial briefs—all of which could have been avoided but for prosecutorial misconduct and/or ineffective assistance of counsel. Given the scant evidence supporting the convictions, the many pieces of exculpatory evidence brought to light in the last few months, and the viable claims of prosecutorial misconduct and ineffective assistance of counsel, a hearing on the motion for new trial, and oral argument, is warranted.

Despite our view that prudence would dictate a delay of sentencing until after a hearing on our Rule 33 motion, we do not make this motion in an effort to delay sentencing; rather, we ask the Court to hold such a hearing after the sentencing proceeding.

Date: September 10, 2018

        Respectfully submitted,

        /s/ Jim Walden
        Jim Walden
        Georgia Winston
        WALDEN MACHT & HARAN LLP
        1 Battery Park Plaza, 34th Floor
        New York, NY 10004
        (212) 335-2030- Telephone
        (212) 335-2040- Facsimile
        jwalden@wmhlaw.com
        gwinston@wmhlaw.com
        ***Attorneys for Defendant Hazelwood***

        /s/ Bradley L. Henry
        Bradley L. Henry (BPR # 025447)
        BREEDING & HENRY, LLC
        900 South Gay Street, Suite 1950
        Knoxville, Tennessee 37902
        (865) 670-8535- Telephone
        (865) 670-8536- Facsimile
        brad@breedinglaw.com
        ***Attorneys for Defendant Hazelwood***