IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> Plaintiff ) <br> ) <br> vs. ) <br> ) <br> MARK HAZELWOOD et al., ) <br> Defendant ) | No. 3:16-CR-20 <br> (Collier/Guyton) |

## MOTION TO RESET TERMS OF RELEASE

Mark Hazelwood, through counsel, files this motion requesting that the Court modify the terms of his release. The United States Court of Appeals for the Sixth Circuit has reversed Mr. Hazelwood's conviction and remanded for a new trial. Thus, we respectfully request that the Court restore the pretrial conditions of release, which this Court set (with the government's consent) on February 9, 2016: we request that the Court (a) free Mr. Hazelwood of location restriction and monitoring; (b) remove the property bond on his residence; and (c) return him to his pretrial travel conditions.

Mr. Hazelwood has been on pretrial release for four years and 250 days. In that protracted time, he has never violated the conditions of his pre-trial or post-conviction release. Indeed, since the jury verdict, he has been under extremely strict conditions of release and has continued to abide by them unfailingly. Thus, he has been largely constrained to his home for a total of 974 days.

Mr. Hazelwood's conviction has now been vacated and he is again presumed innocent. Accordingly, the bail conditions that were initially imposed upon Mr. Hazelwood in February 2016 (and with which he was entirely compliant) are appropriate again now. Indeed, those conditions were imposed in 2016 without the additional evidence now available to this Court: Mr. Hazelwood's over four-and-a-half years of categorical compliance. Accordingly, restoration of his former pretrial conditions of release is plainly warranted. As should now be obvious, Mr.

Hazelwood has no intention or inclination to flee and is resolute in pursuing a new trial to clear his name, as is his right.

**Procedural History**

In September of 2018, Mr. Hazelwood appealed his conviction and sought to continue the terms of his release pending his appeal, which the Court denied at his September 26, 2018 sentencing hearing. Sentencing Hr'g Tr. 232:22–234:11, Sept. 26, 2018, ECF No. 733.

On November 13, 2018, the Sixth Circuit granted Mr. Hazelwood's subsequent motion for release on bail pending appeal, "subject to such reasonable terms and conditions as the district court may fix in its discretion." Order 2, Nov. 16, 2018, ECF No. 787. The Court determined pursuant to the Sixth Circuit's order that Mr. Hazelwood should remain on pretrial release under the strict conditions of home incarceration and location monitoring. *See* Order 2, Nov. 20, 2018, ECF No. 791.

Since then, this Court has issued numerous orders, within the scope of its jurisdiction, modifying the terms of Mr. Hazelwood's release.

On October 14, 2020, the Sixth Circuit reversed Mr. Hazelwood's convictions and remanded for a new trial. Op. and J., Oct. 14, 2020, ECF No. 953. The Sixth Circuit's order has entered the Court's docket; accordingly, such changed circumstances warrant the Court's revising Mr. Hazelwood's release conditions, as set forth below.

**Factual Background**

On February 9, 2016, two years prior to Mr. Hazelwood's trial and jury verdict, Judge H. Bruce Guyton granted him pretrial release under a personal recognizance bond—subject to the conditions of restricted travel, save for unrestricted business travel with timely notice to the United States Probation Office. Order Setting Conditions of Release, Feb. 9, 2016, ECF No. 15. The

government and defense agreed to Mr. Hazelwood's conditions of release. *See* Criminal Mins., Feb. 9, 2016, ECF No. 14. After his conviction, when reconsidering the terms of his release, Judge Guyton categorically observed that Mr. Hazelwood "complied with all conditions of pretrial release," "[had] no violations of his release conditions," "appeared in Court when required," and travelled extensively, always "return[ing] as promised." Report and Recommendation 4, Feb. 21, 2018, ECF No. 497; *see also* Detention Hr'g Proceedings Tr. 94:5–14, Feb. 16, 2018, ECF No. 525.

Mr. Hazelwood's release pending sentencing and then appeal has been subject to the far more restrictive conditions of home incarceration and location monitoring, with a property bond on his Knoxville residence. Order Setting Conditions of Release 2, Feb. 16, 2018, ECF No. 491; Order 1–2, ECF No. 791. Judge Guyton imposed this new stringency by reasoning the jury's determination had changed "the landscape," noting that the standard for release following conviction is higher and that the burden had shifted to the defendant. Report and Recommendation 2, ECF No. 497. Recognizing this heightened standard and the shift in the burden of proof, Judge Guyton required "more extensive conditions" to reasonably assure Mr. Hazelwood's appearance. *Id.* at 4; Detention Hr'g Proceedings Tr. 29:19–30:7, ECF No. 525 ("[T]his is not the same situation as the original release . . . The ante has been raised . . ..")

Under these new conditions, Mr. Hazelwood has continued to abide by the terms of his release and every directive of the Probation Department. In at least a tacit recognition of that compliance, the Court has permitted Mr. Hazelwood to leave his home on a number of occasions for medical, legal, and personal reasons over the last two-and-a-half years, all without incident. This has amounted to permitted travel more than 30 times, with Mr. Hazelwood each time honoring the terms of his release, including, but not limited to:

- On **February 15, 2018**, Mr. Hazelwood was permitted to return post-verdict to Knoxville from Chattanooga, unescorted, and spend the night in his residence.

- On **February 16, 2018**, Mr. Hazelwood traveled freely to the Knoxville courthouse for his bail hearing, learned the terms of his release, returned freely to his residence, and did not receive a monitoring device that was transmitting until over seven hours later.

- On **February 18, 2018**, Mr. Hazelwood was permitted to leave his residence to attend the funeral of a close friend.

- On **June 15, 2018**, Mr. Hazelwood was interrupted during Father's Day weekend to go to the courthouse and have the battery for his monitoring device changed, which he did willingly. The trip took 45 minutes and his monitoring device was turned off for an hour and a half.

- Mr. Hazelwood was permitted to travel—unmonitored and unescorted—to and return from his **September 26, 2018** sentencing proceeding in Chattanooga.

- On **November 5, 2018**, the U.S. Marshals Service directed Mr. Hazelwood to appear in their office to sign a prison designation form. The Marshals gave him a total of 90 minutes away from his home to make the round trip; he did it in 42 minutes.

- Between **March 5, 2019** and **March 11, 2019**, the Court permitted Mr. Hazelwood to travel to Nashville for his wife's medical procedure and recovery.

- The Court granted Mr. Hazelwood's request to attend Easter services at his church on **April 21, 2019**. Order, Mar. 27, 2019, ECF No. 865.

- The Court granted Mr. Hazelwood's request to attend a multi-day arbitration proceeding on **June 24–28, 2019** from 8:00 a.m. through 6:00 p.m. every day. Order, June 18, 2019, ECF No. 879.

- The Court granted Mr. Hazelwood's request to attend church services for three hours on **December 25, 2019**. Order, Dec. 17, 2019, ECF No. 911.

- From **August 4, 2020 to August 8, 2020**, Mr. Hazelwood was permitted to attend an arbitration proceeding in downtown Knoxville. He attended for five days straight from 7:30 a.m. to 5:00 p.m. Order, July 21, 2020, ECF No. 933.

- On **various dates in 2018, 2019, and 2020**, Mr. Hazelwood was permitted to visit his daughter's grave for three hours. *See, e.g.*, Order, Aug. 28, 2018, ECF No. 652; Order, Jan. 24, 2019, ECF No. 845; Order, Aug. 22, 2019, ECF No. 894; and Order, Dec. 17, 2019, ECF No. 911.

- Mr. Hazelwood has attended more than 10 medical appointments with permission from his Pretrial Services Officer.

In all this time, Mr. Hazelwood has never skirted his obligations. To the contrary, he has been an exemplary releasee, scrupulously following the terms of his release, even going beyond what was required of him. When his equipment locator malfunctioned, which happened a number of times, Mr. Hazelwood promptly and proactively notified the Probation Officer and cooperated in efforts to restore it. *See generally* Sentencing Hr'g Tr. 229, ECF No. 733. When the U.S. Probation Office and U.S. Marshals Service did not seek to render inoperable his airplane and boat, which was an anticipated part of the terms of his release, Mr. Hazelwood himself voluntarily rendered them inoperable, and he has now sold his airplane and put his boat up for sale. *See* Order Setting Conditions of Release, ECF No. 491. Since Thanksgiving of last year Mr. Hazelwood has been permitted to leave his home several days a week for exercise and recreation, and he has dutifully been in constant communication with his Probation Officer as a result. Order, Nov. 27, 2019, ECF No. 905. Such has been his resolve to abide by his release conditions.

## Applicable Legal Standard

The Bail Reform Act of 1984 generally requires the pretrial release of a defendant pending trial.[1] *See* 18 U.S.C. § 3142(b). Release for a pretrial defendant must be on personal recognizance or unsecured appearance bond, unless those cannot reasonably assure the appearance of the defendant or endanger the safety of other persons, in which case the judicial officer shall order a pretrial release subject to further least-restrictive conditions. *See* 18 U.S.C. § 3142(b)–(c). The Bail Reform Act's "default position . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

---

[1] We have consulted with the government on this motion, and it declines to revisit Mr. Hazelwood's conditions of release until the Solicitor General's determination on whether to seek further review.

In considering whether pretrial release reasonably assures the appearance of the defendant and the safety of the community, the Court must take into account: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence; (iii) the history and characteristics of the defendant; and (iv) the nature and seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g). However, these factors may not be construed to modify or limit the presumption of innocence. 18 U.S.C. § 3142(j). Moreover, unlike the convicted defendant awaiting sentencing or appeal, the pretrial defendant does not bear the burden of proof. *See* Fed. R. Crim. P. 46(c). Finally, even if the standards for release pending appeal were applied, the Sixth Circuit has found that Mr. Hazelwood meets the requirements, and the new circumstance—the reversal of his convictions—makes it no longer necessary to impose the stricter conditions which Judge Guyton found warranted by those convictions.

### Request to Reset Terms of Release to Pretrial Conditions

When the Sixth Circuit has reversed a conviction and remanded for new trial, the Eastern District of Tennessee and other courts in this Circuit have typically ordered pretrial release subject to the same or less restrictive conditions as the original pretrial release. *See, e.g.*, Order, *United States v. Tullock*, No. 2:11-CR-81 (E.D. Tenn. Oct. 1, 2014), ECF No. 795 (ordering pretrial release on bond subject to "those same conditions upon which [defendant] was originally allowed"); *compare* Order, *United States v. Jenkins*, No. 2:07-CR-20039 (W.D. Tenn. May 4, 2010), ECF No. 98 (releasing the defendant on a lesser bond than originally ordered) *with* Order Setting Conditions of Release, *Jenkins*, No. 2:07-CR-20039, Feb. 15, 2007, ECF No. 13; *compare* Appearance Bond, *United States v. Simmons*, No. 2:12-CR-20081-SHM (W.D. Tenn. Sept. 24, 2015), ECF No. 924 (releasing the defendant on the same bond amount as originally ordered) *with* Order Setting Conditions of Release, *Simmons*, No. 2:12-CR-20081-SHM, Apr. 17, 2012, ECF

6

No. 107. In *Tullock*, the court restored a defendant to his pretrial release conditions under circumstances far less deserving than Mr. Hazelwood's. Tullock was charged with narcotics-trafficking offenses, which trigger a heightened risk of nonappearance under the Bail Reform Act. The government opposed his pretrial release, as it did prior to his original conviction on the grounds that his drug addiction made him a risk of flight and a danger to the community. *Compare* Tr. of Detention Hr'g 3:18–5:7, *Tullock*, No. 2:11-CR-81, June 20, 2013, ECF No. 749, *with* Criminal Mins.: Bond Hr'g/Scheduling, *Tullock*, No. 2:11-CR-81, Oct. 1, 2014, ECF No. 794; *see also* Resp. to Def's. Mot. To Modify Conditions of Release, *Tullock*, Jan. 3, 2012, No. 2:11-CR-81, ECF No. 391. Over the government's objection, the court ordered pretrial release with no location restrictions. Order Setting Conditions of Release, *Tullock*, No. 2:11-CR-81, Sept. 20, 2011, ECF No. 97; Order, *Tullock*, No. 2:11-CR-81, Oct. 1, 2014, ECF No. 795.

Unlike in *Tullock*, here the government readily consented to Mr. Hazelwood's original pretrial release, and his charges, which are economic in nature, do not invite heightened scrutiny under the Bail Reform Act. Mr. Hazelwood is an upstanding member of his community, central to his family's emotional and financial health, and active with his church. In Mr. Hazelwood's case, it was the jury's verdict that Judge Guyton believed necessitated greater stringency in his release conditions. Report and Recommendation 2–4, ECF No. 497; Detention Hr'g Proceedings Tr. 29:19–31:16, ECF No. 525. With the reversal, Mr. Hazelwood is returned to his pretrial status; no longer sentenced, he enjoys the presumption of innocence and should have his pretrial conditions of release restored. Before trial, well-tailored travel restrictions reasonably assured Mr. Hazelwood's presence as required. *See* Criminal Mins., ECF No. 14. In the intervening years, the circumstances for evaluating his pretrial release have matured further in his favor.

### A. The charged offenses carry no presumption of flight.

While the charges against Mr. Hazelwood are certainly serious, they are not the kind of offenses that the Bail Reform Act identifies as implicating a heightened risk of nonappearance or danger to the community (such as crimes involving terrorism, violence, controlled substances, sex trafficking, or a minor victim). *See* 18 U.S.C. § 3142(g)(1). Because Mr. Hazelwood's charges do not involve such offenses, the nature and circumstances of the charges weigh in favor of imposing less restrictive conditions of release. *See United States v. Israel*, No. 17-cr-20366, 2017 WL 3084374, at *4 (E.D. Mich. July 20, 2017) (granting defendant's motion for bond in part because his charges were "entirely economic in nature").

### B. The government's case was not overwhelming and will now be even weaker.

Courts may consider the quantity and quality of the evidence in weighing a defendant's risk of flight or danger to the community. *See United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (evaluating government's evidence to assess whether "there are conditions which will assure the appearance of the accused and safety of the community"); *Israel*, 2017 WL 3084374 at *4–5 (same); *Stone*, 608 F.3d at 948–50 (same).

This Court correctly noted the absence of evidence that Mr. Hazelwood devised or intended to devise the alleged scheme to defraud. Trial Tr. 2/5/18 at 25:18–23, 27:19–23. Of the several cooperating witnesses who testified against Mr. Hazelwood, only one said he had a discussion with Mr. Hazelwood to advise him of the fraud and get his consent. Three other witnesses offered only rank speculation that Mr. Hazelwood was knowledgeable about the fraud based on an errant and ambiguous comment. On cross examination, each of these witnesses was forced to concede that Mr. Hazelwood never directed any fraudulent activities and that they were unaware of whether he knew about the fraud. Trial Tr. 11/21/17 at 194:12–198:16 (Radford); Trial Tr. 11/8/17 at

210:6–211:4, 218:20–219:12 (Welch); Trial Tr. 1/10/2018 at 188:4–189:13; 198:3–23 (Clark). There was very little testimony as to instruction or direction given by Mr. Hazelwood relating to the alleged fraud. *See, e.g.*, Trial Tr. 11/9/17 at 114:17–115:13 (Ralenkotter testifying that he acted on his own without instruction from others). Brian Mosher, the sole witness to testify that Mr. Hazelwood purportedly approved of the fraud, later admitted that when discussing "manual rebates" with Mr. Hazelwood, "no one said anything about cheating the customer" or "anything about cutting a deal and not telling a customer," and it was just his "interpretation" that Mr. Hazelwood's manual-rebate references were fraud. Trial Tr. 11/28/17 at 129:5–23.

Although the government produced thousands of hours of tape recordings made by a then-confidential informant, that informant never obtained a single confession or admission from Mr. Hazelwood. From the very few tapes on which Mr. Hazelwood's voice appears, the government cherry-picked excerpts which, taken out of context, were offered as circumstantial evidence of guilt. However, after the trial, the new defense team discovered that the government had redacted one of the tapes to eliminate Mr. Hazelwood's directive that customers be advised of any changes to fuel prices. Thus, far from engaging in fraud, Mr. Hazelwood supported pricing changes but demanded transparency.

The government will no doubt disagree on the strength of its case, but the Sixth Circuit, without any dissent on this issue, ruled that the government's case against Mr. Hazelwood at the first trial was "not overwhelming." Op. and J. 20–21, ECF No. 953 ("[T]he government's evidence was not ironclad…. [A]t least as to Hazelwood, many of the fraudulent invoices could have appeared legitimate….") Moreover, the quantity and quality of the exculpatory information the defense has now uncovered (some of which has been set forth in previous filings in this Court),

not to mention new impeachment material concerning some of the cooperating witnesses, is likely to result in Mr. Hazelwood's exoneration, which is his only goal.

### C. Mr. Hazelwood is not a risk of flight.

Under the Bail Reform Act, courts should also assess a defendant's history and characteristics, including whether the defendant has complied with prior orders of the court. *See Israel*, 2017 WL 3084374 at *4–5. Other factors to consider include Mr. Hazelwood's character, family ties, community ties, financial resources, past conduct, and criminal history. *See* 18 U.S.C. § 3142(g)(3)(A).

Mr. Hazelwood has consistently complied with the terms of his release and has scrupulously abided by the restrictive terms of home incarceration, which has resulted in him remaining in his home for nearly 1,000 days. He has no past criminal history. Financially, he has not undertaken any suspicious activities with respect to his savings or transfers of his assets, nor has he acquired assets or property abroad since he was released after his initial appearance.

His character is intertwined with devotion to his family, community, faith, and sense of right and wrong. He is the pillar of his close-knit immediate and extended family in Tennessee, cultivates business and community relationships by employing many in the Nashville area, and maintains wholehearted support from his circle of friends, including many of his former customers, who believe in his innocence. *See* Detention Hr'g Proceedings Tr. 81:4–83:24, 94:5–25, ECF No. 525. He enjoys a close relationship with his local pastor, which was formed at the passing of his daughter. *Id.* at 33:20–34:5. He could never be far from his daughter's mausoleum at Highland Memorial Cemetery in Knoxville, which he visits ritually to pray and be with her. *Id.* at 82:18–83:24. His ties to Tennessee are inextricable and forged over many years.

At his detention hearing, Mr. Hazelwood's colleagues, family, and pastor testified to his steadfast and unwavering character, with each one noting the same quality: his deeply ingrained commitment to seeing a challenge through to the end. *Id.* at 35:24–36:9, 38:9–39:6 (Pastor Doebler: "The kind of person that Mark is, he makes a commitment, he'll do that"), 43:18–44:9 (Jeffrey Farrington: "[H]e is full force ahead and will take everything as it comes"), 52:5–53:3 (Darren Ming: "Mark doesn't run from any challenges"), 70:7–71:5 (Peter Breazeale: "I think he'll make a point to want to be there because that's the right thing to do and that's what he'll do"). These appraisals have been borne out by Mr. Hazelwood's exemplary conduct with this Court and his well-established respect for its authority both before and after the jury verdict.

Throughout the last four years, Mr. Hazelwood has fought to clear his name within the criminal justice system. He maintains his innocence, as he has throughout these proceedings. He has invested significant resources in his trial, appeal, and investigative work for his eventual retrial. The Sixth Circuit's remand has validated Mr. Hazelwood's absolute determination to prove his innocence and has reinforced his keen desire to do so fairly within the channels of the law. Now more than ever—when his motivation has already been consistently and demonstrably strong—he is fully dedicated to honoring the Court's orders and the law's expectations of him.

### D. <u>Mr. Hazelwood poses no risk of danger to the community.</u>

The government has conceded without question that Mr. Hazelwood poses no danger to any person or to the community. Detention Hr'g Proceedings Tr. 17:22–18:1, ECF No. 525. And Judge Guyton imposed Mr. Hazelwood's post-verdict conditions of release based solely on finding a risk of flight given his lengthy anticipated sentence, which has now been vacated. *Id.* at 29:19–31:16; Report and Recommendation 2–3, ECF No. 497. Even if the Court were now to entertain the idea that Mr. Hazelwood might reoffend, as it suggested in its November 20, 2018 order, there

has been no evidence or suggestion of impropriety during the two-and-a-half years Mr. Hazelwood has been confined.

## Conclusion

In the period between February 16, 2018 and today, Mr. Hazelwood has served 974 days in home incarceration, for which he will receive no credit in the unlikely event he is convicted. Home incarceration should now come to an end and its cessation is fully justified by Mr. Hazelwood's scrupulous adherence to the exacting terms of his post-verdict release. Before his trial, Mr. Hazelwood merited pretrial release without location-restricting conditions. He has since further proven himself to be a model of reliability, and the successful remand of his case has only bolstered his already considerable resolve to see the course of justice through. Taken together, the law and the relevant facts mandate his pretrial release.

**WHEREFORE,** Mr. Hazelwood respectfully requests that this Honorable Court enter an Order resetting his terms of release to his pretrial conditions.

Dated: October 17, 2020

Respectfully submitted,

| | |
|---|---|
| s/ Jim Walden | s/ Bradley L. Henry |
| Jim Walden | Bradley L. Henry (BPR # 025447) |
| Georgia Winston | MICHELMAN & ROBINSON LLP |
| WALDEN MACHT & HARAN LLP | 800 Third Avenue, 24th Floor |
| One Battery Park Plaza, 34th Floor | New York, NY 10022 |
| New York, New York 10004 | (212) 730-7700 |
| (212) 335-2030 | bhenry@mrllp.com |
| jwalden@wmhlaw.com | *Attorneys for Mark Hazelwood* |
| *Attorneys for Mark Hazelwood* | |