IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff | ) <br> ) <br> ) | |
| vs. | ) <br> ) | No. 3:16-CR-20 <br> (Collier/Guyton) |
| MARK HAZELWOOD et al., <br> Defendants | ) <br> ) | |

## REPLY TO GOVERNMENT OPPOSITION TO
## MOTION TO RESET TERMS OF RELEASE

Mark Hazelwood, through counsel, files this reply to the Government's submission dated October 30, 2020 (ECF No. 955), which temporarily opposes Mr. Hazelwood's Motion to Reset Terms of Release, filed on October 17, 2020 (ECF No. 954) (the "October 17 Motion"). The Government concedes that "[i]n the event the United States does not seek rehearing of the panel's decision…the panel's decision would vitiate the rationale supporting Hazelwood's home confinement…." ECF No. 955 at 2. Yet the Government asks for home confinement to remain in place while it engages in a "deliberative process" concerning whether to seek rehearing. *Id.* at 1. Notably, the Government makes no argument as to why a decision on bail should await the outcome of its deliberative process. For four reasons, the Court should reject the Government's request and promptly restore Mr. Hazelwood to his pre-conviction terms of release: (1) the statistical chances of en banc review are exceedingly small; (2) Mr. Hazelwood has no motivation to flee, as flight now would upend the reversal and obliterate all the work done to secure a new trial; (3) the Government effectively concedes that Mr. Hazelwood has been a model releasee; and (4) the law requires this result.

### A. En Banc Review is Rare, and Review by the Supreme Court is Rarer Still

The Government posits that the "greater incentive to flee []when a defendant faces the 'certainty' of 'incarceration'" urdergirds its request. *Id*. Obviously, Mr. Hazelwood faces no such certainty here, and, absent a conviction at a retrial, he will not face that "certainty" unless the en banc Sixth Circuit or the U.S. Supreme Court accepts the case and changes the outcome that the panel reached. However, the Government faces at least three serious obstacles to restoring the conviction: (1) the Solicitor General must approve seeking review, which is not a given in light of his important role as the courts' gatekeeper;[1] (2) either the Sixth Circuit must agree to rehear the case en banc or the Supreme Court must issue a writ of certiori, both of which are even more rare; and (c) one of those courts must reverse the panel. We focus on the second hurdle here.

Between 2001 and 2009, the Sixth Circuit granted en banc review in only .13% of all cases on appeal.[2] Between 2011 through July 2016, the Sixth Circuit granted only 17 rehearings en banc

---

[1] Stephen Wermiel, *SCOTUS for law students: What does the Solicitor General do? (sponsored by Bloomberg Law)*, SCOTUS blog (May 2, 2012), https://www.scotusblog.com/2012/05/scotus-for-law-students-what-does-the-solicitor-general-do-sponsored-by-bloomberg-law/ ("As gatekeeper for the Court…[t]he Court relies on the Solicitor General for an honest assessment of when a question of federal law or sometimes of constitutional rights really merits the Court's attention."); *see also* Drew S. Days, No Stripe Pants and Morning Coat: The Solicitor General in the State and Lower Federal Courts, 11 GA ST. U. L. REV. 645, 649 ("The Solicitor General serves as a 'screen'…it is the Solicitor General's job…to take serious the concern of federal appellate courts that en banc review not be sought routinely.").

[2] Ryan Vacca, *Acting Like an Administrative Agency: The Federal Circuit En Banc*, 76 MO. L. REV. 733, 738 (2011).

out of thousands of cases.[3] In 2018, the Sixth Circuit issued only two decisions en banc.[4] In 2019, it issued only five decisions en banc.[5]

We need not spill much ink exploring the rarity of Supreme Court review. We will simply quote the Government: "Review by the Supreme Court is not automatic and the odds of having a case accepted for review are very low."[6] Thus, while we fundamentally disagree with with the Government's core argument—that its "deliberative process" for seeking review be equated with any "certainty" of incarceration—the likelihood of restoring the conviction is remote.

### B. The Fugitive Disentitlement Doctrine is a Powerful Deterrent to Flight

The fugitive disentitlement doctrine is a more-than-sufficient deterrent that will ensure Mr. Hazelwood's appearance at any future proceeding, including a new trial. "It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993) (citing *Smith v. United States*, 94 U.S. 97, 97 (1876)); *see also Bonahan v. Nebraska*, 125 U.S. 692, 692 (1887); *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970). This appellate court

---

[3] Martin Flumenbaum and Brad Karp, *The Rarity of En Banc Review in the Second Circuit*, NEW YORK LAW JOURNAL (Aug. 24, 2016), https://www.paulweiss.com/media/3679578/24august2016flumenbaumkarp.pdf; United States Courts, U.S. Court of Appeals - Judicial Caseload Profile, FEDERAL COURT MANAGEMENT STATISTICS, March 31, 2016, at 15, https://www.uscourts.gov/sites/default/files/data_tables/fcms_NA_appprofile0331.2016.pdf.

[4] Michael R. Williams, *2018 Sixth Circuit En Bank Opinions*, MICHIGAN BAR JOURNAL (May 2019), http://www.michbar.org/file/barjournal/article/documents/pdf4article3661.pdf.

[5] Michael R. Williams, *2019 Sixth Circuit En Banc Opinions*, MICHIGAN BAR JOURNAL (July 2020), http://www.michbar.org/file/barjournal/article/documents/pdf4article3964.pdf.

[6] Cases That Are Appealed, U.S. Attorney's Office for the Western District of Wisconsin (July 16, 2015), https://www.justice.gov/usao-wdwi/victimwitness-program/cases-are-appealed.

authority is known as the "fugitive disentitlement doctrine." *See, e.g.*, *Degen v. United States*, 517 U.S. 820, 823 (1996); *United States v. Genoa*, 47 F.3d 1171, 1171 (6th Cir. 1995).

Mr. Hazelwood is well aware of the fugitive disentitlement doctrine and its consequences—if Mr. Hazelwood were to abscond, he would see his appeal dismissed. Mr. Hazelwood would not—after all this work—now sabotage his appeal and the promise of a new trial.

### C. The Government Concedes Mr. Hazelwood Has Been in Full Compliance with His Release Terms

Without restating Mr. Hazelwood's unblemished track record of—not mere compliance with—scrupulous and careful cooperation with Pretrial Services, the Government's submission cites no instances of even small violations. None exist. Mr. Hazelwood has earned the trust of the Pretrial Services officers, and the facts surrounding his compliance over such a long period should weigh heavily toward restoration of his pre-conviction release conditions. Prior to the reversal, the Government had consented to an application (which we had not yet filed) to release Mr. Hazelwood on two additional days each week. The position it now takes is inconsistent with that consent, which was based in large measure on Mr. Hazelwood's long record of cooperation with Pretrial Services.

### D. The Law Requires the Least Restrictive Release Conditions Based on the Current Facts

We have cited numerous cases in this Circuit in which a reversed conviction resulted in restoration of the same—and in some instances, more lenient—terms. The Government cites no authority for the proposition that its decision to engage in a "deliberative process" should in any way impact the Court's decision as to the terms of Mr. Hazelwood's release.

4

*United States v. Streinz* provides another instructive example of a decision to grant release pending appeal after the court of appeals reversed the defendant's conviction and remanded for new trial. *United States v. Streinz*, No. 10-cr-550, 2015 WL 4139120, at *1 (M.D. Fla. July 8, 2015). There, after a three-month trial, a jury convicted Streinz of conspiracy to commit wire fraud and making false statements to an FDIC-insured bank. *United States v. Cavallo, et al.*, 790 F.3d 1202, 1210 (11th Cir. 2015). Streinz was sentenced to 60-months imprisonment and ordered to pay $2,322,676 in restitution. *Id*. Streinz appealed to the Eleventh Circuit, which reversed his conviction and remanded for a new trial. *Id*. at 1240. Before the Eleventh Circuit issued its mandate, Streinz moved the district court for release pending appeal, and the district court granted that motion pursuant to 18 U.S.C. § 3143(b)(1). *Streinz*, 2015 WL 4139120, at *2.

### E. Conclusion

We ask your Honor to recall a May 11, 2014 article in the *Chattanooga Times Free Press*. The article states: "People facing lengthy sentences allowed to remain free on bond show up for their trials, usually on their own. They do that, Collier said, because they have confidence in the court system."[7] It is Mr. Hazelwood's steadfast confidence in the court system that motivates him to continue to fight to clear his name. Based on the above, and simple principles of fairness, we respectfully ask the Court to restore Mr. Hazelwood to his pre-conviction terms of release.

---

[7] Todd Smith, *U.S. District Judge Curtis Collier has traveled a long road*, CHATTANOOGA TIMES FREE PRESS (May 11, 2014), https://www.timesfreepress.com/news/local/story/2014/may/11/us-district-judge-curtis-collier-has-traveled-long/139926/.

Dated: November 2, 2020

Respectfully submitted,

| | |
|---|---|
| \_\_\_\_\_/s/\_\_\_Jim Walden_____ | \_\_\_\_/s/\_\_Bradley\_\_Henry_____ |
| Jim Walden | Bradley L. Henry (BPR # 025447) |
| Georgia Winston | MICHELMAN & ROBINSON LLP |
| WALDEN MACHT & HARAN LLP | 800 Third Avenue, 24th Floor |
| One Battery Park Plaza, 34th Floor | New York, NY 10022 |
| New York, New York 10004 | (212) 730-7700 |
| (212) 335-2030 | bhenry@mrllp.com |
| jwalden@wmhlaw.com | ***Attorneys for Defendant Hazelwood*** |
| ***Attorneys for Defendant Hazelwood*** | |

6