UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No. 3:16-CR-20 |
| | ) | |
| MARK HAZELWOOD and | ) | Judge Collier |
| SCOTT WOMBOLD | ) | |
| | ) | |

## OPPOSITION TO DEFENDANTS WOMBOLD AND HAZELWOOD'S
## MOTIONS TO DISQUALIFY [Docs. 1006, 1009]

A panel of neutral observers examined the Court's conduct in this case and found nothing but "unwavering dedication to the integrity of the criminal justice process." *United States v. Hazelwood*, 979 F.3d 398, 415 (6th Cir. 2020). So the central question here—whether a reasonable person with knowledge of all of the circumstances would question the Court's impartiality—has already been answered. This Court should reject the defendants' untimely and meritless attempt to relitigate that determination now.

### ARGUMENT

"It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Liteky v. United States*, 510 U.S. 540, 551 (1994). "The burden is not on the judge to prove that he is impartial." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007). Rather, "a judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise." *Id.* (quotation marks and citation omitted); *accord Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

1

The defendants have failed to meet that burden here. Their recusal motions cite two statutory provisions, 28 U.S.C. § 455(a) and 28 U.S.C. § 144. (*See* Doc. 1007, Memorandum at 22762-63; Doc. 1010, Memorandum at 22780.) Section 455(a) requires disqualification if the judge's "impartiality might reasonably be questioned," while § 144 applies only if the judge "has a personal bias or prejudice" concerning a party. 28 U.S.C. §§ 445(a), 144. In other words, § 455(a) covers the appearance of partiality, not just actual bias or prejudice, and § 144 "seems to be properly invocable only when § 455(a) can be invoked anyway."[1] *Liteky*, 510 U.S. at 548. "Accordingly, it is not necessary for [this Court] separately to address § 144." *Bell v. Johnson*, 404 F.3d 997, 1004, n.7 (6th Cir. 2005). Whether recusal is required in this case hinges on whether "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990)).

"Although a judge is obliged to disqualify himself when there is a close question concerning his impartiality, he has an equally strong duty to sit where disqualification is not required." *United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) (citations omitted). As the ABA Model Code of Judicial Conduct explains, "[u]nwarranted disqualification may bring public disfavor to the court and to the judge personally." Model Rules of Jud. Conduct

---

[1] The grounds for recusal in § 144 are also "entirely duplicated" by § 455(b)(1), which likewise requires a judge to disqualify himself if "he has a personal bias or prejudice concerning a party." *Liteky*, 510 U.S. at 548. The primary difference between the § 455(b)(1) and § 144 is that § 455(b)(1) "made [the grounds for recusal in § 144] applicable to *all* justices, judges, and magistrates (and not just district judges), and . . . placed the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recusal only in response to a party affidavit." *Id.* (emphasis original).

2

R. 2.7 cmt.[2] "The dignity of the court, the judge's respect for fulfillment of judicial duties, and a proper concern for the burdens that may be imposed upon the judge's colleagues require that a judge not use disqualification to avoid cases that present difficult, controversial, or unpopular issues." *Id.* In other words, "a judge has a duty not to recuse when there is not a reason for it." *United States v. Parker*, 837 F. App'x 341, 345 (6th Cir. 2020).

Hazelwood suggests that the "duty to sit" was abolished in 1974 (Doc. 1010, Memorandum at 22788), but that's not quite right. Before 1974, "a judge, faced with a close question on disqualification, was urged to resolve the issue in favor of a 'duty to sit.'" H.R. Rep. 93-1453, 1974 U.S.C.C.A.N. 6351, 6355. Congress eliminated the duty to sit *in close cases* by amending § 455 to require recusal when a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *accord, e.g.*, *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) ("Where the question is close, the judge must recuse himself."). But Congress also cautioned that "the new test should not be used by judges to avoid sitting on difficult or controversial cases." H.R. Rep. 93-1453, 1974 U.S.C.C.A.N. 6351, 6355. Thus it remains true that "there is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. University of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (quotation marks omitted). That rule avoids delay, respects the burdens of other judges, and discourages improper judge-shopping.

Whether recusal is required here is not a close question. The defendants' attempts to disqualify the Court are untimely, inconsistent with the Sixth Circuit's adjudication of the same issue, and meritless. They should be denied.

---

[2] Available at https://www.americanbar.org/groups/professional_responsibility/ publications/model_code_of_judicial_conduct/model_code_of_judicial_conduct_canon_2/rule2_ 7responsibilitytodecide/commentonrule2_7/.

### 1. The motions to disqualify are untimely.

"Both § 144 and § 455 require that disqualification motions be timely; that requirement is explicit in the former section and implicit in the latter." *In re City of Detroit*, 828 F.2d 1160, 1167 (6th Cir. 1987), *overruled in part on other grounds by In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1140-43 (6th Cir. 1990) (en banc). Because a judge has a duty to disqualify *himself* if appropriate under § 455, untimeliness may not be dispositive under that section, but it nonetheless "undercuts [a defendant's claim] significantly." *Bosley v. 21 WFMJ Television, Inc.* 245 F. App'x 445, 455 (6th Cir. 2007). A disqualification motion is timely if it is submitted "at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for such a claim." *In re Nat'l Prescription Opiate Lit.*, No. 19-3935, 2019 WL 7482137, at *1 (6th Cir. Oct. 10, 2019) (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987)); *accord Scott*, 234 F. App'x at 352.

The defendants here did not submit their motions at the earliest possible moment. Their purported grounds for disqualification include previous sentencing decisions of this Court, admission of the Recordings, post-trial rulings, statements made at sentencing, and an alleged delay when modifying the conditions of Hazelwood's release. (*See* Doc. 1007, Memorandum at 22770; Doc. 1010, Memorandum at 22787-99; Doc. 1010-3, Hazelwood Aff. at 22845.) But the defendants filed their motions:

- 4 months after the Sixth Circuit issued its mandate and this Court last modified Hazelwood's conditions of release (Doc. 984);

- 31 months after the defendants were sentenced (Docs. 712, 728) and the Court denied the Hazelwood's motion for a new trial (Doc. 701);

- 40 months after the Recordings were played to the jury (Doc. 424); and

- almost 4 *years* after this case was reassigned to the Hon. Curtis L. Collier (Doc.179).

4

The defendants offer no explanation for the delay. Consider, for example, the Recordings, which Hazelwood claims were "extrajudicial sources" that threatened "to taint the Court's thinking." (Doc. 1010, Memorandum at 22791-92). If that were true, Hazelwood should have sought recusal promptly after the Court heard them. Instead, he waited—through trial, through post-trial motions, and through sentencing. Each milestone offered Hazelwood a shot at a favorable outcome, and he was content to take those shots in this Court. Having done so, he should not be heard to say that the Court was biased all along.

It's the same story with the other purported "extrajudicial source" on which Hazelwood relies. (Doc. 1010, Memorandum at 22790.) The most recent prior decision Hazelwood cites as evidence of alleged bias against white-collar defendants was issued in 2015, years before trial. *See United States v. Carter*, No. 1-15:cr-36 (E.D. Tenn. Aug. 13, 2015) (cited by Doc. 1010-1, Walden Aff. at 22809-10.) Hazelwood's motion doesn't say when his counsel became aware of those cases, but they have been publicly available since they were decided, and he could have raised them as grounds for recusal as soon as this case was reassigned. (*See* Doc. 179.) Yet neither Hazelwood's trial counsel nor his current counsel previously mentioned them as potential grounds for disqualification. Even the most recent thing about which Hazelwood complains—a supposed delay in modifying the conditions of his release (Doc. 1010-3, Hazelwood Aff. at 22845)—could have been raised as grounds for recusal months ago. So could Wombold's claim regarding statements made at his sentencing. (*See* Doc. 1007, Memorandum at 22770.)

Wombold, for his part, makes no attempt to show that his motion is timely. (*See generally id.*) Hazelwood asserts that his motion is timely because it "comes before any substantive activity on remand" (Doc. 1010, Memorandum at 22802), but that is incorrect. It has been months since the Sixth Circuit issued its mandate, Hazelwood's fine and special assessment

have been returned, a new trial date has been set, and briefing is already underway on the defendants' change-of-venue motion. (Doc. 982, Mandate; Doc. 994, Order Returning Fine; Doc. 1004, Scheduling Order; Doc. 1011, Motion to Change Venue.) The defendants cannot claim bias while simultaneously asking the Court to decide such a substantive issue.

Nor is it an answer that the defendants asked the Sixth Circuit to reassign the case on remand. (*See* Doc. 1010, Memorandum at 22801-02.) That does not explain why the defendants waited until *after* the verdict, the post-trial motions, and sentencing to raise the issue of bias. Nor does it explain why they waited four months since the mandate issued to seek recusal.

In short, the defendants did not bring their disqualification motions at the earliest possible moment, nor even reasonably close to the events on which their motions are based. That should weigh heavily against their claims under § 455 and should preclude Hazelwood's claim under § 144 outright.

### 2. The Sixth Circuit has already determined that recusal is not necessary.

Even if the defendants' motions were timely, they would not be well taken. The Sixth Circuit has already weighed in on this issue by rejecting the defendants' request to reassign the case to a different judge on remand. *Hazelwood*, 979 F.3d at 415. Specifically, the Sixth Circuit found that "nothing in the record suggests that the district court would have substantial difficulty in setting aside previously expressed views" and that "the record demonstrates the district court's unwavering dedication to the integrity of the criminal justice process." *Id.* Those findings definitively answer the question of whether "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Sammons*, 918 F.2d at 599.

6

Wombold does not mention the Sixth Circuit's findings.  (*See generally* Doc. 1007, Memorandum.)  Hazelwood suggests in a footnote that those findings don't matter (Doc. 1010, Memorandum n.2 at 22787), but none of his reasons are sound.

*First*, Hazelwood asserts that the Sixth Circuit "did not have before it a full recitation of the relevant facts" (*id.*), but the Court did not confine its review to the facts mentioned by the defendants.  To the contrary, the Court found that "*nothing in the record* suggests that the district court would have substantial difficulty in setting aside previously expressed views" and that "*the record* demonstrates the district court's unwavering dedication to the integrity of the criminal justice process."  *Hazelwood*, 979 F.3d at 415 (emphasis added).  The panel's views therefore reflect those of "a reasonable, objective person, knowing all of the circumstances."  *Sammons*, 918 F.2d at 599.

In any event, the defendants *did* raise on appeal almost all the facts they cite in their motions.  They discussed, for example, the admission of the Recordings, this Court's statements at sentencing, rulings regarding loss amount, the denial of the defendants' Rule 33 motions, and even this Court's initial decision to deny Hazelwood's motion for release pending appeal.  *See generally* Hazelwood Brief, *United States v. Hazelwood*, No. 18-6023, Doc. 31 (6th Cir. Jan. 10, 2019); Wombold Brief, *United States v. Wombold*, No. 18-6102, Doc. 38 (6th Cir. Feb. 13, 2019).  Further, Hazelwood concedes that a request for reassignment was "the proper procedure to press the issue" (Doc. 1010, Memorandum at 22801-02), so any points that the defendants omitted from their request for reassignment can fairly be said to have been waived.  At the very least, any omission suggests that those points are not, in fact, particularly compelling grounds for recusal.

*Second*, Hazelwood asserts that some of the Court's statements and rulings identified in his motion post-date the filing of his appeal (Doc. 1010, Memorandum n.2 at 22787), but it appears that the only Court action that post-dates the Sixth Circuit's review of the record is the most recent modification of his conditions of release. (*See* Doc. 1010-3, Hazelwood Aff. at 22844-45.) This Court granted Hazelwood the relief he sought two business days after the Sixth Circuit issued its mandate. (*See* Doc. 984.) No reasonable, objective person would question the Court's impartiality on that basis.

*Third*, Hazelwood argues that the Sixth Circuit "did not consider the applicability of § 455 or § 144" (Doc. 1010, Memorandum n.2 at 22787), but there is no way to reconcile the Sixth Circuit's holding with a need for recusal. To determine whether reassignment is necessary, the Sixth Circuit considers, among other things, "whether reassignment is advisable to preserve the appearance of justice." *Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014) (discussing § 455 as part of the reassignment inquiry); *accord Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 580 (6th Cir. 2013). So the Sixth Circuit's refusal to reassign the case was necessarily a holding that this Court may keep it without compromising the appearance of justice. And if there were any doubt about that, the Sixth Circuit's specific findings would dispel it. The defendants' assertion that this Court holds a "fixed view" (*e.g.* Doc. 1010, Memorandum at 22795) or a "fixed opinion" (Doc. 1007, Memorandum at 22767) of the case or the parties runs into the teeth of the Sixth Circuit's finding that "nothing in the record suggests that the district court would have substantial difficulty in setting aside previously expressed views." *Hazelwood*, 979 F.3d at 415. And neither Hazelwood nor Wombold explains why recusal is required when the Court has demonstrated "unwavering dedication to the integrity of the criminal justice process." *Id.*

8

*Finally*, even if the Sixth Circuit's opinion does not "preclude" this Court from recusing itself (Doc. 1010, Memorandum n.2 at 22787), the opinion establishes that there is no reason to exercise that authority here. The Sixth Circuit looked at the record in this case and saw nothing that caused it to question this Court's impartiality. The defendants therefore cannot meet their burden under either § 455 or § 144, and their motions should be denied.

### 3. In any event, no reasonable person with knowledge of all the circumstances would question the Court's impartiality.

A "significant (and often determinative)" factor governing the appropriateness of recusal is whether the judge's alleged predisposition stems from an "extrajudicial source." *Liteky*, 510 U.S. at 554-55. Although an extrajudicial source is not "the *only* basis for establishing disqualifying bias or prejudice," it is "the only *common* basis." *Id.* at 551 (emphasis original). A favorable or unfavorable predisposition that springs from a non-extrajudicial source—*i.e.*, "from the facts adduced or the events occurring at trial"—will not be characterized as "bias" or "prejudice" unless "it is so extreme as to display clear inability to render fair judgment." *Id.*

Two conclusions flow from this "extrajudicial source" doctrine. "First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555. That's because, in and of themselves, "they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* "Almost invariably, they are proper grounds for appeal, not for recusal." *Id.*

"Second, opinions formed by the judge on the basis of facts introduced in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgement impossible." *Id.* "Thus, judicial remarks during the course of a trial that are critical

or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*

Both Wombold and Hazelwood assert that the Court made statements or rulings during the first proceedings that expressed a "fixed" view of the issues or the parties. (*See* Doc. 1007, Memorandum at 22767-70; Doc. 1010, Memorandum at 22793-99.) Those statements and rulings are not a proper basis for recusal unless they were motivated by an extrajudicial source or they displayed the kind of "deep-seated favoritism or antagonism" that appears "only in the rarest circumstances." *Liteky*, 510 U.S. at 555. Neither of those conditions are true here.

### a. The defendants rely exclusively on judicial sources, which are almost never enough to warrant recusal.

Neither the Recordings nor this Court's sentencing decisions in other white-collar cases qualifies as an extrajudicial source of bias. (*Contra* Doc. 1010, Memorandum at 22790-93.)

Start with the Recordings. Because the Recordings were adduced at trial, they are not "extrajudicial." *See Liteky*, 510 U.S. at 551. Any opinions formed on the basis of those Recordings were necessarily formed "on the basis of facts introduced or events occurring in the course of . . . prior proceedings," and thus "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.

Hazelwood's characterization of the recordings as an extrajudicial source is premised on a number of inaccuracies. (*See* Doc. 1010, Memorandum at 22791-93.) For example, the government did not offer the recordings "to taint the Court's thinking" or "to characterize this white-collar defendant as a racist." (*Id.* at 22791.) Indeed, this Court has already explained that it "does not agree that the government's efforts here are to show that Mr. Hazelwood is a racist." (Doc. 374, Trial Tr. at 9973.) And although the Sixth Circuit concluded that the Recordings

10

should not have been admitted, it did not suggest that the government harbored a nefarious purpose in offering them.[3]  *See Hazelwood*, 979 F.3d at 405-06 (describing the government's arguments for offering the Recordings).

Likewise, the government did not promise that it would never play the recordings. (*Contra* Doc. 1010, Memorandum at 22792.)  As the government said at the time, it had no intention of playing the recordings before trial but decided to offer them in response to a defense that emerged at trial.  (Doc. 375, Doc. 508., Unsealed Trial Tr. at 10015 ("The United States . . . advised Mr. Hardin that this was something that we were not planning on pursuing; however, we could not decide what we were going to do until we heard the proof at trial."); *accord* Doc. 424, Trial Tr. at 10448.)  And the government's *in camera* statement was consistent with its pretrial representations.  When designating various recordings as trial exhibits, the government specifically noted that "all designations . . . have been made in good faith for the purpose of complying with the Court's scheduling order (R. 69), but have been made without knowing how defendants intend to defend the superseding indictment.  Accordingly, the government reserves the right to supplement its designations with additional non-designated material, including recordings and transcripts, produced in discovery in response to defenses raised by defendant." (Ex. 1, June 15, 2017 Government Letter to Defense Counsel.)  Even Hazelwood's counsel now appears to concede that the government "never promised that they wouldn't use the Recordings." (Doc. 1015, Supplement at 23775 (brackets omitted; quoting Rusty Hardin).)

---

[3] Hazelwood cites colloquy from oral argument (Doc. 1010, Memorandum at 22791), but "it is well-established that . . . questions and commentary at oral argument have no legal effect." *Fox Television Stations, Inc. v. FilmOn X LLC*, 150 F. Supp. 3d 1, 17 (D.D.C. 2015) (quotation marks and citation omitted).  If the Sixth Circuit believed that the recordings threatened to taint this Court's thinking, it would have said so in its opinion; instead, it found the opposite and denied the defendants' request for reassignment.

Case 3:16-cr-00020-CLC-HBG   Document 1019   Filed 06/07/21   Page 11 of 23   PageID #: 23794

Most importantly, the Sixth Circuit's conclusion that the Recordings were inadmissible does not imply that the recordings were "wrongfully before the Court." (Doc. 1010, Memorandum at 22792.) Holding that the *jury* should not have heard the evidence is far different from holding that the *Court* should not have heard the evidence. It is the Court's duty to rule on the admissibility of evidence during a jury trial, and it is axiomatic that the Court must hear the evidence to make that determination.[4] The Court's knowledge of the Recordings was "properly and necessarily acquired in the course of the proceedings" and in fact was "necessary to completion of the judge's task" *Liteky*, 510 U.S. at 551. As discussed above, it is "normal and proper for a judge to sit in the same case upon its remand," and evidence adduced at the first trial—even evidence later held to be inadmissible—is precisely the type of judicial source that will create bias only in extraordinary cases.[5] *Id.*

This Court's previous white-collar sentencing decisions likewise do not constitute an extrajudicial source. (*Contra* Doc. 1010, Memorandum at 22790.) "[P]rior proceedings" are *judicial* sources of information, *Liteky*, 510 U.S. at 555, and a judge "is not only entitled to draw upon his experience when sentencing defendants, but should be encouraged to do so." *United States v. Ford*, 889 F.2d 1570, 1572-73 (6th Cir. 1989). Far from being a source of bias, prior

---

[4] Hazelwood insinuates that the Court should not have "seriously entertain[ed]" the government's motion to admit the Recordings. (Doc. 1010, Memorandum at 22782.) It is both the duty and the practice of the Court to seriously entertain *all* motions. And Judge Donald's dissent—and this Court's own thoughtful rulings on the matter—shows why the government had reason to believe the motion was justified. *See Hazelwood*, 979 F.3d at 416 (Donald, J. dissenting).

[5] Hazelwood asserts that this rule—which comes straight from *Liteky*—would allow the government to present character evidence at trial and then oppose recusal "[e]ven if that evidence created actual bias." (Doc. 1010, Memorandum n.6 at 22792.) Not so. A predisposition "so extreme as to display clear inability to render fair judgment" is grounds for recusal "even though it springs from facts adduced or the events occurring at trial." *Liteky*, 510 U.S. at 551. But the defendants have established no such predisposition here.

12

sentencing experience is "an institutional advantage" of district courts, and sentencing decisions are properly informed by the Court's "vantage point and day-to-day experience in criminal sentencing." *Koon v. United States*, 518 U.S. 81, 98 (1996).

Moreover, Hazelwood has failed to establish anything improper about this Court's prior sentencing decisions. He asserts that the Court has expressed certain views about white-collar offenders—many of them positive—but he provides no evidence to suggest that those views are wrong as a general matter or inflexibly applied regardless of circumstance. (*See* Doc. 1010, Memorandum at 22790; Doc. 1010-1, Walden Aff. at 22811-12.) And the sentences imposed at the proceedings he mentions do not suggest any bias against white-collar defendants. He cites nine sentencing proceedings involving twelve defendants. (Doc. 1010-1, Walden Aff. at 22807-12.) Of those twelve defendants, six received below-Guidelines sentences[6] and five received within-Guidelines sentences.[7] Only one received an above-Guidelines sentence, and that was in a revocation proceeding.[8] Further, eleven of the defendants either did not appeal or had their

---

[6] *United States v. Brown*, 1:13-cr-107 (E.D. Tenn. Apr. 2, 2015), Doc. 73 at 2012; *United States v. Dobson*, No. 1:12-cr-42 (E.D. Tenn. May 29, 2014), Doc. 204 at 3517, 3606 (Defendants Gott and Dobson); *United States v. Parkes*, 1:09-cr-38 (E.D. Tenn. Dec. 10, 2009), Doc. 112 at p. 203; *United States v. Donesky*, 1:07-cr-132 (E.D. Tenn. May 1, 2008), Doc. 20 at 89, 103 (Defendants Donesky and Bird).

[7] *United States v. Carter*, No. 1:15-cr-36 (E.D. Tenn. Aug. 13, 2015), Doc. 30 at 389, 417-18; *United States v. Askew*, No. 1:02-cr-187 (E.D. Tenn. June 20, 2013), Doc. 444 at 2253, 2263; *United States v. Cardin*, No. 1:11-cr-93 (E.D. Tenn. Apr. 11, 2013), Doc. 90 at 3412, 3453; *United States v. Donesky*, 1:07-cr-132 (E.D. Tenn. May 1, 2008), Doc. 20 at 89, 106 (Defendant Nash); *United States v. Dowlen*, No. 1:11-cr-5 (E.D. Tenn. Nov. 3, 2011), Doc. 49 at 540.

[8] *United States v. Brock*, No. 1:06-cr-75 (E.D. Tenn. Dec. 15, 2011), Doc. 74 at 152.

13

sentences affirmed on appeal.[9]  The Sixth Circuit reversed in only one case—and that was for insufficiency of the evidence, not any sentencing error.[10]

In short, Hazelwood would have this Court recuse itself from this case—and by implication all future white-collar cases—based on a dozen prior sentencing decisions that resulted almost exclusively in within- or below-Guidelines sentences and not one of which has been reversed as procedurally or substantively unreasonable.  No objective observer would look at that record and conclude that this Court is biased against white-collar defendants.

> **b.**    **The defendants have failed to establish the deep-seated antagonism required to mandate recusal.**

In the absence of an extrajudicial source, the defendants must show a predisposition "so extreme as to display clear inability to render fair judgment."  *Liteky*, 510 U.S. at 551.  They have failed to do so.

As the Sixth Circuit found, the record demonstrates the Court's unwavering commitment to the impartial administration of justice.  Consider, for example, the admission of the Recordings.  This Court admitted the Recordings only after carefully balancing their probative value against their prejudicial effect in the context of a lengthy and complicated trial.  It considered the issue three times, each time issuing a lengthy explanation for its decision.  (*See* Doc. 374, Trial Tr. at 9963-78 (orally admitting recordings); Doc. 455, Memorandum, 11695-712 (denying motions to reconsider); Doc. 701, Memorandum, 19561-608 (denying Hazelwood's motion for new trial).)  As the Court explained after trial, "granting the Government's motion to admit the evidence was never a foregone conclusion.  The Court

---

[9] *See United States v. Brown*, 636 F. App'x 640 (6th Cir. 2016); *United States v. Dobson*, 626 F. App'x 117 (6th Cir. 2015) (Defendants Gott and Dobson); *United States v. Cardin*, 577 F. App'x 546 (6th Cir. 2014); *United States v. Dowlen*, 514 F. App'x 559 (6th Cir. 2013).

[10] *See United States v. Parkes*, 668 F.3d 295, 307 (6th Cir. 2012).

14

invested significant time, research, and analysis into the question and had to consider a number of countervailing factors." (Doc. 701, Memorandum, 19585-86.) Although the Court overruled the defendants' objections to the Recordings, it did not deny the defendants fair consideration of their arguments. Further, the Court has already explained that the Recordings have not prejudiced the Court against the defendants: "I have heard much, much worse. I've heard people direct things at me in the courtroom. So that's not going to have any effect at all on my handling of this case or, if the jury finds against a client, in the Court's decision on what should be done. It's just another evidentiary matter to me. That's all it is." (Doc. 375, Doc. 508, Unsealed Trial Tr. at 10008.) Hazelwood's trial counsel assured the Court that he would "never . . . suggest" that the Recordings might bias the Court. (*Id.*)

Or consider Hazelwood's sentencing hearing. The Court kept an open mind to the end, noting that it "does not make a decision on what the appropriate sentence is until the Court has had a chance to look at and hear from the defendant and the defendant's lawyers and counsel." (Doc. 733, Sent. Tr. at 20317-18.) The Court explained that, before the hearing, it had been "considering a sentence significantly above" the sentence it ultimately imposed. (*Id.* at 20317.) But "all the letters, all the arguments" had "a tremendous impact on the Court's decision." (*Id.* at 20318.) So this is not a case in which the Court made up its mind that the defendant deserved a harsh sentence regardless of the evidence, nor a case in which the Court displayed "deep-seated favoritism or antagonism that would make fair judgment impossible*." Liteky*, 510 U.S. at 555.

Wombold's sentencing hearing was likewise free of bias. Wombold highlights a colloquy in which the Court asked Wombold's counsel whether the Court, having found a particular sentence to be justified by the facts, could impose the same sentence on remand if the Sixth Circuit found that a lower Guidelines range applied. (Doc. 1007, Memorandum at 22765-

66 (quoting Doc. 741, Sent. Tr. at 20787-89).) But context is important: the Court was weighing the merits of release pending appeal, and Wombold's counsel had just asserted that the appeal was likely to result in a sentence less than the length of the appeal. (Doc. 741, Sent. Tr. at 20785-87.) The Court was appropriately testing that assertion. The Court did *not* suggest that it was "determined to sentence Mr. Wombold to 72 months' imprisonment . . . irrespective of the Sixth Circuit's rulings on the scope of relevant conduct, the use of relevant conduct under the Sentencing Guidelines, or even the facts or evidence that might be adduced during a retrial." (Doc. 1007, Memorandum at 22770.)

Hazelwood recites a long list of statements and rulings with which he disagrees (*e.g.*, Doc. 1010, Memorandum at 22793-98; Doc. 1010-3, Hazelwood Aff. at 22822-45), but none of them reflect the kind of deep-seated antagonism that would require recusal. The record speaks for itself, so it is not necessary to address each of Hazelwood's assertions. A representative sample is enough to illustrate the weakness of his arguments.

Take the statements he references from his sentencing hearing. (Doc. 1010, Memorandum at 22794; Doc. 1010-3, Hazelwood Aff. at 22827-34.) The Court did not, as Hazelwood asserts, "completely discount[]" Hazelwood's "devotion to family, humble beginnings, and good deeds." (Doc. 1010-3, Hazelwood Aff. at 22828.) To the contrary, the court acknowledged that Hazelwood was "a loving and supportive father," "built the truck stop chain from the ground up," and "engaged in philanthropic, benevolent, and charitable activities" (Doc. 733, Sent. Tr. at 20289), and those points, along with others, convinced the Court not to impose a higher sentence. (*Id.* at 20317-18.) Nor did the Court unfairly compare Hazelwood to Bernie Madoff (Doc. 1010-3, Hazelwood Aff. at 22828-30); rather, the Court discussed Madoff "merely to point out that people engaged in white-collar crimes often are also involved in

charitable pursuits, they're good family people, . . . they work their way up from the bottom."
(Doc. 733, Sent. Tr. at 20296.)  And it is not true that there was "no evidence" that employees
joined the conspiracy because Hazelwood approved of the fraud.  (Doc. 1010-3, Hazelwood Aff.
at 22831.)  Katy Bibee, for example, testified, "I thought, . . . this must be okay.  I work at
Pilot. . . . [I]t feels like I was semi-brainwashed into thinking that these things were ok . . . .  I
trusted the people that had worked there for 20-plus years and had all the experience, and for a
company that I was so proud to work for."  (Doc. 522, Trial Tr. at 13942.)

       It is likewise incorrect to say that there was "literally no evidence" to support the Court's
conclusion that Hazelwood abused a position of trust in the trucking industry (Doc. 1010-3,
Hazelwood Aff. at 22832); the trial was replete with evidence that the fraudulent scheme
identified and exploited customers who were unlikely to notice if the discounts they received did
not match what they had been promised.  (*See, e.g.*, Doc. 520, Trial Tr. at 13506 ("Let's sneak a
penny to the plus numbers . . . I am not telling the customers.  These are ones that I don't think
they will notice.").)  The Court's observation that Hazelwood was likely driven by ego and
hubris (Doc. 1010-3, Hazelwood Aff. at 22834) followed logically from trial testimony that
Hazelwood cared about the company's success, had "great ideas," and was responsible for "just
about every major innovation that led to the growth of th[e] company."  (Doc. 336, Trial Tr. at
7470.)  And the Court's statement that "all roads lead to Mr. Hazelwood" was not unsupported
(Doc. 1010-3, Hazelwood Aff. at 22833-34); to the contrary, Hazelwood's supervision of and
control over the direct-sales division was undisputed.  (*E.g.,* Doc. 520, Trial Tr. at 13351
(Hazelwood opening statement: "Hazelwood would never deny that [the sales division] was
under his supervision").)

Hazelwood's assertion that the Court "took on the role of advocate" by "reject[ing] the government's rationale" for admitting the Recordings and "instead create[ing] a new one" is also wrong. (Doc. 1010, Memorandum at 22796.) This Court has already explained that it did not reject the government's rationale when ruling on the admissibility of the Recordings. (*See* Doc. 455, Memorandum at 11697, n.3.) Nor did the Court always rule in the government's favor. As Hazelwood himself points out, the Court refused to allow evidence the government offered as related to Hazelwood's reputation for industriousness. (Doc. 1010, Memorandum at 22782; *accord* Doc. 338, Sealed Trial Tr. at 7769.) Further, it was not improper for the Court to expand and clarify its analysis when asked to reconsider its evidentiary ruling. (*See* Doc. 455, Memorandum.) Nor was it improper for the Court to discuss the merits of Hazelwood's Rule 33 motion as an alternate basis for denying the motion; Hazelwood asked for as much by filing the motion. (*Contra* Doc. 1010, Memorandum at 22796-97; *cf.* Doc. 701, Memorandum at 19583.) And the Court's memorandum denying that motion shows that it did not "ignore[] exculpatory evidence" or dismiss anything "out-of-hand." (Doc. 1010, Memorandum at 22796-97; *see generally*, Doc. 701.)

Nor did the Court unreasonably refuse to modify the conditions of Hazelwood's release pending appeal. (*Contra* Doc. 1010, Memorandum at 22797.) To the contrary, the Court often granted Hazelwood's requests to modify those conditions. (*E.g.*, Doc. 652, 680, 865, 868, 869, 871, 874, 877, 879, 885, 894, 901, 902, 905, 906, 908, 911, 917, 919, 921, 924, 926, 929, 930, 933, 937, 939, 941.) Further, the Sixth Circuit found that home confinement was "the least restrictive means of assuring Hazelwood's appearance as required." (Doc. 835, Sixth Circuit Order at 21886.) Maintaining those conditions was not unreasonable, let alone evidence of unwarranted favoritism.

Finally, Hazelwood asserts that "the retrial will focus much more on members of the Haslam family than in the original trial." (Doc. 1010, Memorandum at 22803, n.8.) It is not clear why that should be so, and Hazelwood does not explain. In any event, he merely asks the Court to "*consider* whether any relationship or connection between the Court and Governor Haslam merits recusal." (*Id.* (emphasis added).) He does not appear to argue that recusal is *required* on that basis, and for good reason: the "connections" he identifies only relate to the Court's presence at two public ceremonies. (*See id.*)

In short, the Court has not said or done anything that would suggest a "deep-seated favoritism or antagonism that would make fair judgment impossible*." Liteky*, 510 U.S. at 555. "Adverse rulings against a party do not in themselves provide a basis for disqualification*," United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006), and that is all that the defendants have identified here.

### c.    This case is unlike other cases in which recusal has been required.

This case stands in stark contrast to the cases cited by the defendants in which recusal has been required. More than one of those cases involved racial bias against a party. Recusal was required, for example, where the judge said, in the context of a World War I espionage case, "One must have a very judicial mind, indeed, not to be prejudiced against the German-Americans in this country. Their hearts are reeking with disloyalty." *Berger v. United States*, 255 U.S. 22, 28-29 (1921). Recusal was likewise required where a defendant charged with violating the Selective Service Act characterized himself as a "black militant" and the judge had previously said that he had a policy of sentencing Selective Service violators to 30 months in prison "if they are good people" but had sentenced "a black militant . . . to four and one-half"

19

years. *United States v. Thompson*, 483 F.2d 527, 528 (3rd Cir. 1973). Nothing so antithetical to the administration of justice is present in this case.

Other cases involve judges who expressed a strong preference for a particular outcome. In *United States v. Antar*, 53 F.3d 568 (3rd Cir. 1995), the judge said, "My object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others." *Id.* at 573. Similarly, the judge in *In re United States*, 572 F.3d 301 (7th Cir. 2009), suggested a specific plea bargain (thus violating the prohibition in Fed. R. Crim. P. 11(c)(1) on becoming involved in plea negotiations), questioned the government's decision to prosecute, and suggested that the case "was an embarrassment to the justice system and an inefficient allocation of taxpayer resources." *Id.* at 311-12. And in *Fairley v. Andrews*, 423 F. Supp. 2d 800 (N.D. Ill. 2006), the court recused itself in part because it told the parties that they were wasting taxpayer money and equated their decision to proceed in the case to public corruption. *Id.* at 819. In contrast, the Court here has never expressed a desire for this case to be resolved a particular way.

Finally, in *Roberts v. Bailar*, 625 F.2d 125 (6th Cir. 1980), the judge knew a person "intimately connected" with most of the relevant personnel decisions in an employment discrimination case, and the judge stated that the person was "an honorable man and I know he would never intentionally discriminate against anybody." *Id.* at 129, 127. Here there is no allegation that the Court has vouched for the reputation of a key witness in the case.

None of these cases are analogous to the situation here. Recusal is not required—nor appropriate.

### 4. Disqualification is not required under 28 U.S.C. § 144.

Because recusal is only required under § 144 where it would also be required under § 455(a), *see Liteky*, 510 U.S. at 548, that provision is not an "independent" basis for recusal. (*Contra* Doc. 1010, Memorandum at 22780.)  Moreover, § 144 imposes strict procedural requirements—requirements that Hazelwood has failed to meet.

"Although § 144 on its face appears to require automatic disqualification once the affidavit is filed, a district court judge has a duty to examine the affidavit to determine whether it is timely and legally sufficient." *In re City of Detroit*, 828 F.2d at 1163 n.2 (citing *Berger*, 255 U.S. at 32).  As discussed above, Hazelwood's affidavit is not timely, and it should be denied on that basis.  *See, e.g.*, *United States v. Cribbs*, No. 87-5393, 1987 WL 38143, at *1 (6th Cir. Oct. 9, 1987) (affirming denial of § 144 motion in part because it was untimely).  Further, Hazelwood's affidavit is not legally sufficient.

To be legally sufficient, the affidavit "must give fair and adequate support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *United States v. Story*, 716 F. 2d 1088, 1090 (6th Cir. 1983) (quoting *Berger*, 255 U.S. at 33).  In other words, the facts in the affidavit must "be such as would convince a reasonable man that a bias exists." *Id.* (quotation marks omitted).  The facts in the affidavit must be accepted as true, but the Court "may only credit facts that are sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." *Scott*, 234 F. App'x at 352 (quoting *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004)).  And the Court is "not bound to accept the conclusion that the movant would draw from those facts." *Id.*  Further, "[t]he focus is on *objective* appearance or evidence of bias, not on the subjective view of a party." *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988) (emphasis original).  Thus "the

judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." *Sammons*, 918 F.2d at 599 (quoting *Browning*, 837 F.2d at 279.)

Hazelwood's affidavit sets out his subjective view of the case. (Doc. 1030-3, Hazelwood Aff.) He says, for example, that "[t]he Court *seemed* to be doing whatever it could to make sure the government was permitted to use the Recordings (*id.* at 22824); that "[i]t *seemed* as if the Court took everything good about me and twisted it" (*id.* at 22831); that "the Court . . . *seemed* determined to side with the government" (*id.* at 22838); and that "[i]t *seemed* as if the Court wanted to keep me locked in my house as punishment" (*id.* at 22842).[11] (Emphasis added to all.) Those may be accurate statements of Hazelwood's beliefs, but they are not objective facts upon which recusal may be based.

Stripped of its editorial content, the affidavit contains the same basic facts that underpin Hazelwood's § 455 motion—indeed, the same facts that failed to convince the Sixth Circuit that reassignment was necessary. As discussed above, those facts would not be enough to cause an objective observer to question the Court's partiality, let alone "convince a reasonable man that a bias exists." *Story*, 716 F.2d at 1090. The affidavit is therefore legally insufficient, and Hazelwood's § 144 motion should be denied.

---

[11] *See also, e.g.*, Doc. 1030-3, Hazelwood Aff. at 22824 ("the Court now thought I was a racist and was determined to help the prosecution convict me"); *id.* at 22835 ("the Court put all the responsibility on me not because the evidence required it, but because the Court was biased against me"); *id.* at 22836 ("the Court was literally taking over the role as prosecutor"); *id.* at 22844 ("the only explanation . . . is the Court's bias against me and bias in favor of the government"); *id.* at 22846 ("The Court simply invented a way to make it apply in my case, facts and evidence aside.").

# CONCLUSION

For the foregoing reasons, the defendants' motions to disqualify (Docs. 1006, 1009) should be denied.

Respectfully submitted,

FRANCIS M. HAMILTON III
ACTING UNITED STATES ATTORNEY

By: */s/ David P. Lewen, Jr.*
David P. Lewen, Jr., AL Bar # 2658I68L
David.Lewen@usdoj.gov
Perry H. Piper, TN Bar # 013384
Perry.Piper@usdoj.gov
Brian P. Samuelson, AK Bar # 1403015
Brian.Samuelson@usdoj.gov
Assistant United States Attorneys
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167